BAKER MARQUART LLP
Ryan Baker (Bar No. 214036)
  rbaker@bakermarquart.com
Donald Pepperman (Bar No. 109809)
  dpepperman@bakermarquart.com
Scott M. Malzahn (Bar No. 229204)
  smalzahn@bakermarquart.com
Teresa L. Huggins (Bar No. 263257)
  thuggins@bakermarquart.com
777 S. Figueroa St., Suite 2850
Los Angeles, California 90017
Telephone: (424) 652-7800
Facsimile: (424) 652-7850

*Attorneys for Defendant*
*Carsten Breitfeld*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BYTON NORTH AMERICA CORPORATION, a Delaware corporation; and BYTON LIMITED, a Hong Kong company,<br><br>            Plaintiffs,<br><br>      v.<br><br>ICONIQ MOTORS NORTH AMERICA, INC., a California corporation; CARSTEN BREITFELD, an individual; and DOES 1 through 10, inclusive,<br><br>            Defendants. | Case No.: 2-19-cv-10563-DMG-JEM<br><br>**DEFENDANT CARSTEN BREITFELD'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FOURTH, FIFTH, SIXTH, SEVENTH AND EIGHTH CAUSES OF ACTION**<br><br>[Concurrently filed with the Declaration of Teresa L. Huggins; and [Proposed] Order]<br><br>Date: February 28, 2020<br>Time: 9:30 a.m.<br>Ctrm.: 8C |

## NOTICE OF MOTION AND MOTION

TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 28, 2020, at 9:30 a.m., or as soon thereafter as the matter may be heard in the courtroom of the Honorable Dolly M. Gee, located in the United States Courthouse, 350 West 1st Street, Los Angeles, California 90012, defendant Carsten Breitfeld ("Defendant") will and hereby does move to dismiss Plaintiffs Byton North America Corporation and BYTON Limited's (together, "Plaintiffs'") fourth, fifth, sixth, seventh and eighth causes of action, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on December 16, 23, and 31, 2019. (Declaration of Teresa Huggins ¶¶ 2- 6.)

This Motion is made on the grounds that Plaintiffs have failed to state a claim for intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, and intentional interference with contractual relations. In addition, Plaintiffs' claims for conversion and violation of the Unfair Competition Law ("UCL"), Bus. Prof. Code §§ 17200, *et seq*., are preempted by their claim under the California Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426, *et seq*. Plaintiffs' UCL claim also fails because Plaintiffs have an adequate remedy at law that precludes relief under that statute.

This Motion is based on this Notice, the attached memorandum of points and authorities, the declaration of Teresa Huggins, the pleadings, papers and records in this action, any matters of which this Court shall take judicial notice, and such further evidence or argument as Defendant may present prior to or at any hearing on this Motion.

///

///

///

BAKER MARQUART LLP
777 S. FIGUEROA ST., SUITE 2850
LOS ANGELES, CALIFORNIA 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

1   Dated: January 3, 2020                    BAKER MARQUART LLP

2

3                                     By:    /s/ Ryan G. Baker
                                            Ryan G. Baker
4                                           Donald Pepperman
                                            Scott M. Malzahn
5                                           Teresa L. Huggins
                                            *Attorneys for Defendant Carsten Breitfeld*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BAKER MARQUART LLP**
777 S. Figueroa St., Suite 2850
Los Angeles, California 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

# **TABLE OF CONTENTS**

**Page(s)**

I.   INTRODUCTION .................................................................................... 1

II.  FACTUAL BACKGROUND ................................................................... 2

    A.   The Parties ..................................................................................... 2

    B.   Plaintiffs' Claims in this Action .................................................... 4

        1.   The Alleged Poaching of BYTON Employees ........................... 4

        2.   The Alleged Breaches of Confidentiality Agreements ................ 5

        3.   The Alleged Misappropriation of Trade Secrets and Other
           Confidential Information ............................................................ 6

III. LEGAL STANDARD ............................................................................. 7

IV.  ARGUMENT ......................................................................................... 7

    A.   Plaintiffs Fail to State a Claim for Intentional Interference with
       Prospective Economic Advantage (Fourth Cause of Action) ................ 7

        1.   Plaintiffs Fail to Allege a Prospective Relationship with which
           Defendant Purportedly Interfered .............................................. 8

        2.   Plaintiffs Fail to Identify a Specific Relationship with which
           Defendant Purportedly Interfered .............................................. 9

        3.   Plaintiffs Fail to Allege Independently Wrongful Conduct ........ 10

    B.   Plaintiffs Fail to State a Claim for Negligent Interference with
       Prospective Economic Advantage (Fifth Cause of Action) ................... 12

    C.   Plaintiffs Fail to State a Claim for Intentional Interference with
       Contractual Relations (Sixth Cause of Action) .................................... 12

        1.   Plaintiffs Fail to Identify Any Specific Contract with which
           Defendant Purportedly Interfered .............................................. 12

        2.   Plaintiffs Fail to Allege Causation ............................................ 14

3.   The Agreements Alleged As the Basis of Plaintiffs' Interference

Claims Are Illegal, in Violation of Business and Professions Code

section 16600 ...................................................................................15

D.   Plaintiffs Fail to State a Claim for Conversion and Violation of the UCL

(Seventh and Eighth Causes of Action) ...................................................18

1.   CUTSA Preempts Plaintiffs' Conversion and UCL Claims.........18

2.   Plaintiffs' UCL Claim Also Fails Because Plaintiffs Have an

Adequate Remedy at Law............................................................21

V.   DISMISSAL WITH PREJUDICE........................................................................21

VI.   CONCLUSION ...................................................................................................22

BAKER MARQUART LLP
777 S. Figueroa St., Suite 2850
Los Angeles, California 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Action Learning Sys., Inc. v. Crowe*,
   No. CV 14-5112-GW(SHx), 2014 WL 12564011 (C.D. Cal., Aug. 11,
   2014) ................................................................................................. 16, 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................... 7

*Buxbom v. Smith*,
   23 Cal. 2d 535 (1944) ........................................................................... 11

*Celebrity Chefs Tour, LLC v. Macy's Inc.*,
   16 F.Supp.3d 1141 (S.D. Cal. 2014) ................................................. 14, 15

*In re Centerstone Diamonds, Inc.*,
   2:09 bk-23945-PC, 2014 WL 1330186 (C.D. Cal., April 2, 2014) ...................... 12

*Continental Car–Na–Var Corp. v. Moseley*,
   24 Cal.2d 104 (1944) ............................................................................ 11

*Dowell v. Biosense Webster, Inc.*,
   179 Cal. App. 4th 564 (2009) ................................................................ 17

*Dryden v. Tri-Valley Growers*,
   65 Cal. App. 3d 990 (1977) ................................................................... 14

*Edwards v. Arthur Andersen LLP*,
   44 Cal. 4th 937 (2008) .......................................................................... 16

*Green Crush v. Paradise Splash I, Inc.*,
   SACV 17-01856-CJC(JDEx)
   2018 WL 4940825 (C.D. Cal 2018) ................................................. 9, 10, 13

*Heighley v. J.C. Penney Life Ins. Co.*,
   257 F.Supp.2d 1241 (C.D. Cal. 2003) ..................................................... 21

*Jardin v. Datallegro, Inc.*,
   10–CV–2552–IEG WVG, 2011 WL 1375311 (S.D. Cal., Apr.12,
   2011) ................................................................................................. 19

BAKER MARQUART LLP
777 S. FIGUEROA ST., SUITE 2850
LOS ANGELES, CALIFORNIA 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

*K.C. Multimedia, Inc. v. Bank of America Tech. & Operations, Inc.*,
   171 Cal. App. 4th 939 (2009) ..................................................................... 18, 20

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal.4th 1134 (2003) .................................................................................... 11

*Mattel, Inc. v. MGA Entertainment, Inc.*,
   782 F.Supp.2d 911 (C.D. Cal. 2011) ......................................................... 16, 20

*MedioStream, Inc. v. Microsoft Corp.*,
   869 F. Supp. 2d 1095 (N.D. Cal. 2012) ......................................................... 19

*Metro Traffic Control, Inc. v. Shadow Traffic Network*,
   22 Cal. App. 4th 853 (1994) ..................................................................... 11, 18

*Moss v. Infinity Ins. Co.*,
   197 F.Supp.3d 1191 (N.D. Cal. 2016) ............................................................ 21

*National Funding, Inc. v. Commercial Credit Counseling Services, Inc.*,
   CV 18-6437-MWF, 2018 WL 6444899 (C.D. Cal., November 6,
   2018) ........................................................................................................... 14, 15

*Nestlé USA, Inc. v. Crest Foods, Inc.*,
   2019 WL 2619635 (C.D. Cal., March 8, 2019) ............................................... 12

*Redfearn v. Trader Joe's Co.*,
   20 Cal. App. 5th 989 (2018) ............................................................................ 10

*Reeves v. Hanlon*,
   33 Cal. 4th 1140 (2004) ............................................................................. 11, 15

*The Ret. Grp. v. Galante*,
   176 Cal. App. 4th 1226 (2009) ....................................................................... 16

*Robinson v. Managed Accounts Receivable Corp.*,
   654 F. Supp. 2d 1051 (C.D. Cal. 2009) ............................................................ 7

*Silvaco Data Systems v. Intel Corp.*,
   184 Cal. App. 4th 210 (2010) ......................................................................... 19

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) ............................................................................. 7

*SOS, Inc. v. E-Collar Technologies, Inc.*,
   2017 WL 5714716 (C.D. Cal., October 17, 2017) .......................................... 8, 9

BAKER MARQUART LLP
777 S. Figueroa St., Suite 2850
Los Angeles, California 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

*SunPower Corp. v. SolarCity Corp.*,
  No. 12–CV–00694–LHK, 2012 WL 6160472 (N.D. Cal., Dec. 11,
  2012) ...................................................................................................... 7, 9, 10, 19

*TransWorld Airlines, Inc. v. Am. Coupon Exch., Inc.*,
  913 F.2d 676 (9th Cir. 1990) ..................................................................... 7

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*,
  117 F.Supp.3d 1092 (C.D. Cal. 2015) .......................................... 12, 13, 14

*Vogel v. Waldorf Restaurant Group Centinela, LLC*,
  CV 13-09420-R, 2014 WL 12769385 (C.D. Cal., April 11, 2014)...................... 21

*Waymo LLC v. Uber Tech., Inc.*,
  256 F. Supp. 3d 1059 (N.D. Cal. 2017)................................................... 19

*Western Air Charter, Inc. v. Schembari*,
  No. 2:17-cv-00420-AB (KSx), 2017 WL 7240775 (C.D. Cal., Dec.
  14, 2017) ............................................................................................... 17

*Westside Center Assoc. v. Safeway Stores 23, Inc.*,
  42 Cal. App. 4th 507 (1996) ..................................................................... 9

## Statutes

Bus. & Prof. Code § 16600...............................................................*passim*

Bus. & Prof. Code §§ 17200, *et seq*. ...................................................4, 6

Cal. Civ. Code § 3426.1(d) ...............................................................6, 16

California Uniform Trade Secrets Act, Cal. Civ. Code § 3426, *et seq*. ...................2, 6

Federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq*.....................................6

BAKER MARQUART LLP
777 S. Figueroa St., Suite 2850
Los Angeles, California 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I.    INTRODUCTION**

Dr. Carsten Breitfeld ("Dr. Breitfeld") is a world-renowned expert in electric mobility with an unparalleled track record in the industry.  Dr. Breitfeld is largely responsible for the design and production of the BMW i8, a groundbreaking industry advance, completed in a mere 38 months.  Following this tremendous success, Dr. Breitfeld was recruited to co-found BYTON Limited ("BYTON"), where he was initially appointed to serve as Chairman and CEO.  Unfortunately, serious management and other issues arose almost immediately at BYTON.  Ultimately, after the BYTON board removed Dr. Breitfeld as CEO based largely on false pretenses, Dr. Breitfeld elected to leave BYTON to join Iconiq Motors North America, Inc. ("Iconiq").  Dr. Breitfeld was at Iconiq for only four months, before becoming Global CEO at Faraday Future, a California-based global shared intelligent mobility company focused on the development of electric vehicles.  At Faraday Future, Dr. Breitfeld currently heads the executive leadership in charge of the production of the company's luxury FF 91 electric vehicle, and will manage the final development of its FF 81 mass market electric vehicle.

Now, for apparent strategic reasons, BYTON and its subsidiary Byton North America Corporation (together, "Plaintiffs") have brought this action against Dr. Breitfeld and Iconiq (together, "Defendants").  None of Plaintiffs' claims have merit, and several of the claims are not properly alleged.

Plaintiffs' intentional interference with prospective economic advantage claim fails because Plaintiffs allege that Dr. Breitfeld interfered with existing employee relations, not with prospective economic relationships.  The claim also fails because Plaintiffs allege Dr. Breitfeld recruited and solicited unnamed "former employees" to work for Iconiq but fail to name a single employee whose economic relations with Plaintiffs Dr. Breitfeld purportedly disrupted.  Moreover, soliciting employees from a former employer is not an independent wrong, which is required to state a claim

under the tort.  Plaintiffs' claim for negligent interference with prospective economic relations fails for the same reasons.

The contract interference claim is also fatally deficient.  Plaintiffs rely on conclusory allegations which fall woefully short of the basic pleading requirements necessary to state interference with contract.  For example, Plaintiffs fail to allege a specific contract, the parties thereto, the substance or the date thereof.  Plaintiffs also fail to allege causation, as they must – no allegation indicates that but for Dr. Breitfeld's actions the purported former employees would not have breached their alleged contracts with Plaintiffs.  To the contrary, the allegations indicate the unnamed former employees acted of their own volition, which they are expressly permitted to do under California law.  Moreover, the contracts, as alleged, are an illegal restraint on employee mobility and void under California law.  Accordingly, these contracts cannot be the basis of an interference claim.

Plaintiffs' claims for conversion and unfair competition are preempted by their California Uniform Trade Secrets Act, Cal. Civ. Code § 3426, *et seq*., claim. Plaintiffs are barred from bringing an unfair competition claim for the additional reason that they have an adequate remedy at law.

Because several of Plaintiffs' claims are not alleged or simply not permitted, Dr. Breitfeld respectfully requests that the Court grant this motion and dismiss the fourth, fifth, sixth, seventh and eighth causes of action of the Complaint.

## II. FACTUAL BACKGROUND

### A. The Parties

Defendant Carsten Breitfeld is a car company executive and a "designer and manufacturer of 'smart' electric vehicles."  (Compl. ¶ 1.)  Dr. Breitfeld spent 20 years at BMW as Group Vice President and Head of the i8 vehicle program, which gave birth to the game-changing i8 luxury plug-in hybrid model.  His leadership and introduction of a revolutionary development process helped launch the BMW i8 successfully in 38 months. The model surpassed all vehicle standards in performance,

materials used and efficiency of development, setting new benchmarks in the auto industry.  Through his efforts, innovative sales and customer service techniques and systems were established to market the BMW i8.  In addition to the i8 program, Dr. Breitfeld led a range of key engineering divisions for BMW within chassis development, powertrain development and corporate strategy.

In 2016, Dr. Breitfeld co-founded BYTON, a Hong Kong company based in China that "designs, develops, and manufactures electric vehicles."  (*Id*. ¶¶ 2, 12.)  He served as BYTON's Chief Executive Officer, Chief Technology Officer, and Chairman of the Board of Directors.  (*Id*. ¶ 12.)

Dr. Breitfeld also served as an officer and director of Byton NA, a BYTON subsidiary that "serves as [the company's] North American headquarters."  (*Id*. ¶¶ 3, 12.)  "Byton NA is a Delaware corporation with its principal place of business in Santa Clara County, California."  (*Id*. ¶ 3.)   It allegedly "provides research and development and software design for the technology that will be used for BYTON vehicles, as well as develops and tests the autonomous-driving technology for the vehicles."  (*Id*.)

BYTON had serious management issues, and, in the spring of 2019, Dr. Breitfeld was effectively forced out of his positions as an officer and director of BYTON and Byton NA.  Having been unfairly removed from the company he had only recently co-founded, Dr. Breitfeld looked elsewhere to pursue his vision of designing and producing revolutionary electric vehicles.  Because of his reputation and success in the industry, he was heavily recruited.  According to the Complaint, on or about April 16, 2019, Dr. Breitfeld "announced at an automobile show in Shanghai" that "he had become the Chief Executive Officer" of Tianjin ICONIQ NEV Co., Ltd. ("TINC").  (*Id*. ¶ 13.)  TINC, a Chinese-based company, allegedly "is a lesser-known competitor of Byton" "in the early stages of designing its own electric vehicles."  (*Id*. ¶ 4.)

BAKER MARQUART LLP
777 S. Figueroa St., Suite 2850
Los Angeles, California 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

According to the Complaint, Dr. Breitfeld began working for a subsidiary of TINC, Iconiq Motors North America Inc. ("Iconiq"). (*Id.* ¶ 1.) Iconiq serves as "TINC's U.S. headquarters." (*Id.* ¶¶ 1, 4.) It was incorporated in California in April 2019, and has its principal place of business in Los Angeles. (*Id.* ¶ 4.)

About four months after joining Iconiq, Dr. Breitfeld left that company to take on the role of Global CEO at Faraday Future, a California-based global shared intelligent mobility company focused on the development of electric vehicles. In his current role, Dr. Breitfeld is developing production of the company's ultra-luxury FF 91 electric vehicle, and will manage the final development of its FF 81 mass market electric vehicle.

**B. Plaintiffs' Claims in this Action**

In this action, Plaintiffs BYTON and Byton N.A. assert eight causes of action against Defendants Iconiq and Dr. Breitfeld. Plaintiffs' claims arise out of allegations that Defendants poached Plaintiffs' employees, caused former employees to breach confidentiality agreements, and misappropriated Plaintiffs' trade secrets and other allegedly confidential information.

**1. The Alleged Poaching of BYTON Employees**

Plaintiffs' third, fourth, fifth, sixth and eighth causes of action allege that Dr. Breitfeld and Iconiq interfered with BYTON's business by causing BYTON employees to terminate their employment relationships with the company. (Compl. ¶¶ 38, 45-47, 51-54, 63-66, 74.) The Complaint alleges that – after Dr. Breitfeld announced on or about April 16, 2019 that he had become the CEO of TINC – "a number of other high-level BYTON employees resigned from BYTON and went to work for TINC." (*Id.* ¶ 14.) Based on this allegation, Plaintiffs assert claims for intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, intentional interference with contractual relations, breach of fiduciary duty and violation of the unfair competition law, Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"). (*Id.* ¶¶ 38, 45-47, 51-54, 63-66, 74.)

BAKER MARQUART LLP
777 S. FIGUEROA ST., SUITE 2850
LOS ANGELES, CALIFORNIA 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

The Complaint does not name any of the employees Defendants purportedly poached.  Instead, it generally alleges that Defendants interfered with an unspecified number of BYTON's employment relationships with both employees working on an at-will and contract term basis.  In the fourth and fifth claims for intentional and negligent interference with prospective economic advantage, the Complaint generally alleges that Defendants solicited employees who worked for BYTON on an "at-will" basis to leave BYTON and work for Iconiq instead.  (*Id*. ¶¶ 42-57.)  The sixth claim for intentional interference with contractual relations alleges that Defendants solicited "employees [who] had employment contracts with BYTON that specified a term of employment" to resign from BYTON before the expiration of their contracts.  (*Id*. ¶¶ 63-66.)

Additionally, the Complaint does not identify any specific wrongful conduct committed by Defendants that caused any BYTON employees to resign from their employment and accept employment with Iconiq instead.  It only alleges in a conclusory fashion, "[o]n information and belief," that "Dr. Breitfeld led efforts to recruit these employees to work for TINC and Iconiq while still employed by and a director of Byton[.]"  (*Id*. ¶ 14.)  The Complaint does not describe what Dr. Breitfeld actually did to recruit any BYTON employees, identify the poached employees, explain why those employees would not have terminated their employment with BYTON but for the alleged solicitation, or provide any other details of the alleged solicitation.

### 2.  The Alleged Breaches of Confidentiality Agreements

In addition to alleging that their employees were poached, Plaintiffs allege in support of their sixth claim for intentional interference with contractual relations that Defendants caused BYTON's former employees to divulge purportedly confidential information in violation of alleged confidentiality agreements.  (Compl. ¶¶ 59-62.)

The Complaint does not attach the confidentiality agreements at issue, nor does it describe the terms of those purported agreements.  The Complaint generally alleges

BAKER MARQUART LLP
777 S. Figueroa St., Suite 2850
Los Angeles, California 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

that BYTON has "trade secrets and other confidential and proprietary information", which it claims "includes, without limitation, the structural, aesthetic, safety, and hardware design and software source codes for all aspects of vehicles that Byton is designing and manufacturing" as well as "manufacturing and logistics plans and strategies, business procedures and techniques, distribution channels, marketing plans and strategies, and contact and business information for business partners, vendors, suppliers, and service providers."  (*Id*. ¶¶ 9, 23.)

The Complaint alleges that "former employees breached their confidentiality agreements by disclosing BYTON's confidential information to TINC or Iconiq." (*Id*. ¶¶ 59, 62.)  However, the Complaint does not describe what confidential information the agreements allegedly covered or what confidential information was allegedly disclosed.  Nor does it allege any specific facts to support the general allegation that Dr. Breitfeld caused former BYTON employees to breach their agreements.  The Complaint also does not identify the names of any former employees who purportedly breached such agreements.

### 3.  The Alleged Misappropriation of Trade Secrets and Other Confidential Information

Plaintiffs' first, second, third, seventh and eighth causes of action allege misappropriation of trade secrets and other confidential information.  These claims all allege that Dr. Breitfeld had "access" to BYTON's "trade-secret, proprietary, and other confidential information," and disclosed that information to TINC and Iconiq, for Defendants' benefit.  (*Id*. ¶¶ 23, 25, 31, 33, 38, 70-71, 74.)

Based on these same allegations, Plaintiffs allege claims for violations of the California Uniform Trade Secrets Act ("CUTSA"), California Civil Code §§ 3426, *et seq*.; the Federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836, *et seq*.; breach of fiduciary duty; conversion; and violates the UCL, Business and Professions Code §§ 17200, *et seq*.  (*Id*.)

BAKER MARQUART LLP
777 S. FIGUEROA ST., SUITE 2850
LOS ANGELES, CALIFORNIA 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

III.   **LEGAL STANDARD**

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)).  Allegations that are "no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.  This standard applies to all claims asserted by Plaintiffs here.  *See e.g. Robinson v. Managed Accounts Receivable Corp.*, 654 F. Supp. 2d 1051, 1062 (C.D. Cal. 2009) (applying *Iqbal* plausibility standard to California tort of intentional interference with prospective economic advantage).  Questions of statutory preemption may also be decided on a motion to dismiss. *SunPower Corp. v. SolarCity Corp.*, No. 12–CV–00694–LHK, 2012 WL 6160472, at *14-15 (N.D. Cal., Dec. 11, 2012) (dismissing claims for conversion and unfair competition as preempted by CUTSA).

IV.   **ARGUMENT**

A.   **Plaintiffs Fail to State a Claim for Intentional Interference with Prospective Economic Advantage (Fourth Cause of Action)**

Plaintiffs purport to allege a claim for intentional interference with prospective economic advantage.  To state such a claim, a plaintiff must allege: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) defendant's knowledge of the relationship; (3) intentional acts by the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant. *TransWorld Airlines, Inc. v. Am. Coupon Exch.,*

BAKER MARQUART LLP
777 S. Figueroa St., Suite 2850
Los Angeles, California 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

BAKER MARQUART LLP
777 S. FIGUEROA ST., SUITE 2850
LOS ANGELES, CALIFORNIA 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

1  *Inc.*, 913 F.2d 676, 689 (9th Cir. 1990).  Plaintiffs' claim fails for three independent

2  reasons.

3          1.      Plaintiffs Fail to Allege a Prospective Relationship with which

4                  Defendant Purportedly Interfered

5          Plaintiffs' claim for intentional interference with prospective economic

6  advantage rests on the allegation that Defendants interfered with BYTON's

7  relationships with at-will employees and induced them to quit their jobs.  (Compl. ¶¶

8  42, 47.)  This allegation is a far cry from the typical claim for intentional interference

9  with prospective economic advantage where a defendant wrongfully caused the

10 plaintiff to lose a specific business opportunity.

11         As an initial matter, Plaintiffs' bare allegation that Defendants induced certain

12 employees to quit their jobs with BYTON and accept job offers with Iconiq is

13 insufficient to state a claim for intentional interference with prospective economic

14 advantage.  In *SOS, Inc. v. E-Collar Technologies, Inc.*, 2017 WL 5714716, at *10

15 (C.D. Cal., October 17, 2017), the court dismissed such a claim where plaintiffs

16 alleged that defendants disrupted their economic relations with former employees

17 because such "relationships were already in existence, they were not prospective."

18 *Id.*  The district court held that such allegations failed to allege that plaintiffs had lost

19 a business opportunity as a result of the purported interference.  *Id.*

20         Like the plaintiff in *SOS, Inc.*, Plaintiffs allege Defendants interfered with their

21 already existing relationships with their former employees, but fail to identify any

22 prospective business opportunity they lost as a result of Defendants' purported

23 interference.  (Compl. ¶¶ 41-49.)  Among other things, Plaintiffs do not allege that

24 BYTON would have entered into a written contract with at-will employees but for

25 Defendants' alleged interference.  In *SOS, Inc.*, Judge Birotte wisely reasoned that:

26         Plaintiffs fail entirely to point to some contract that would have been
27         consummated but for Defendants' alleged misconduct.  This claim, like
           the contract claims, alleges that Defendants "disrupt[ed] [Plaintiffs']
28

> economic relations with Departed Employees."  But those relations were already in existence, they were not prospective, and Plaintiffs do not point to a contract that would have been consummated but-for Defendants' conduct.

*Id*.  For these same reasons, Plaintiffs fail to state a claim for intentional interference with prospective economic advantage as a matter of law.

### 2.   Plaintiffs Fail to Identify a Specific Relationship with which Defendant Purportedly Interfered

Even assuming interference with an existing at-will employment relationship could form the basis for a claim for intentional interference with prospective economic advantage, a plaintiff must still identify a *specific* relationship the defendant interfered with in order to properly state a claim.

Courts consistently dismiss such claims at the pleading stage where the plaintiff does not identify the specific relationship at issue.  *See, e.g., SunPower Corp.*, 2012 WL 6160472, at *15 (dismissing intentional interference with prospective economic advantage claim where plaintiff failed to identify "any specific customer relationship with which [defendant] purportedly interfered"); *Green Crush LLC v. Paradise Splash I, Inc*., SACV 17-01856-CJC(JDEx), 2018 WL 4940825, at *10 (C.D. Cal., 2018) (dismissing intentional interference with prospective economic advantage claim with prejudice because "Plaintiff failed to identify any specific relationship with which Defendants allegedly interfered"); *Westside Center Assoc. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 527–28 (1996) (dismissing intentional interference with prospective economic advantage claim failed where plaintiff failed to identify "an existing relationship with an identifiable buyer" or to specify the "factual basis upon which to determine whether the plaintiff was likely to have actually received the expected benefit").

In *SunPower*, for example, the plaintiff sued a competitor and former employees for misappropriation of trade secrets and interference with prospective business advantage.  Although the plaintiff identified specific items allegedly stolen

BAKER MARQUART LLP
777 S. Figueroa St., Suite 2850
Los Angeles, California 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

9

by its former employees and specific actions taken by defendants, the plaintiff failed to identify any facts regarding which specific customer relationship defendants' conduct had allegedly interfered with. *SunPower Corp.*, 2012 WL 6160472, at *15. Plaintiff alleged merely that it had an "economic relationship" with "many customers," and that the "Defendants' actions disrupted such relationships." *Id*. The court found this allegation insufficient, reasoning that plaintiff's failure to identify any specific customer relationship with which plaintiff had interfered or any facts regarding how the defendants had interfered with those relationships (beyond the allegations of misappropriating proprietary information) warranted dismissal. *Id*.

Like the plaintiffs in *SunPower*, Plaintiffs do not make the necessary allegations. Plaintiffs fail to identify any specific employee relationship with which Dr. Breitfeld purportedly interfered, instead vaguely alleging that BYTON had "at-will employment relationships" with "former employees." (Compl. ¶ 42.) Plaintiffs' failure to identify a specific employee relationship dooms their claim. Without pleading an existing relationship with an identifiable employee, Plaintiffs provide no "factual basis upon which to determine whether [it] was likely to have actually received the expected benefit." *See Green Crush LLC*, 2018 WL 4940825, at * 10 (quoting *Westside Ctr. Assocs.*, 42 Cal. App. 4th at 527); *see also SunPower Corp.*, 2012 WL 6160472, at *15. Plaintiffs' claim for intentional interference with prospective economic advantage should be dismissed as a result.

3.   Plaintiffs Fail to Allege Independently Wrongful Conduct

Plaintiffs' claim for intentional interference with prospective economic advantage must also be dismissed for failure to plead any independently wrongful conduct. The third element of this cause of action requires that plaintiffs allege not only that defendant interfered with an economic relationship, but also "that the defendant's interference was wrongful 'by some measure beyond the fact of the interference itself.'" *Redfearn v. Trader Joe's Co*., 20 Cal. App. 5th 989, 1006 (2018) (citation omitted).

BAKER MARQUART LLP
777 S. Figueroa St., Suite 2850
Los Angeles, California 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

"An act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, or common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1158 (2003).

Here, the only "wrongful" conduct alleged by Plaintiffs in support of this claim is that Dr. Breitfeld purportedly solicited Plaintiffs' employees for hire at Iconiq. (Compl. ¶¶ 42-46.)  But the mere hiring or soliciting of a former employer's employees is not in itself an independent wrong.  To the contrary, California public policy has long held that "[a] former employee has the right to engage in a competitive business for himself and to enter into competition with his former employer . . . provided such competition is fairly and legally conducted." *Continental Car–Na–Var Corp. v. Moseley*, 24 Cal.2d 104, 110 (1944); Bus. & Prof. Code § 16600 (generally recognizing as void any agreement "by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind"); *Buxbom v. Smith*, 23 Cal. 2d 535, 547 (1944) ("it is not ordinarily a tort to hire the employees of another for use in the hirer's business"); *Metro Traffic Control, Inc. v. Shadow Traffic Network*, 22 Cal. App. 4th 853, 860 (1994) ("As a competitor of Metro, absent a showing of unlawful purpose or means, Shadow is privileged and not liable for inducing Metro's employees to leave and move to Shadow.").

The claim does not allege that Dr. Breitfeld breached any employment contract he had with Plaintiffs or committed any other independent wrong, only that he solicited BYTON's former employees for hire.  Such a claim is not independently wrongful, defeating Plaintiffs' fourth claim as a matter of law.  *See Reeves v. Hanlon*, 33 Cal. 4th 1140, 1152-53 (2004) (a defendant is not subject to liability for intentional interference with an at-will employment relation if the interference consists merely of extending a job offer that induces an employee to terminate his or her at-will employment).

BAKER MARQUART LLP
777 S. FIGUEROA ST., SUITE 2850
LOS ANGELES, CALIFORNIA 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

B.   **Plaintiffs Fail to State a Claim for Negligent Interference with Prospective Economic Advantage (Fifth Cause of Action)**

Plaintiffs' claim for *negligent* interference fails for the same three reasons as the claim for *intentional* interference with prospective economic advantage.  It is well settled that a claim for negligent interference with prospective economic advantage requires a plaintiff to allege the *same elements* as a claim for intentional interference with prospective economic advantage, but "instead of intentional conduct, it must be shown that defendant owed the plaintiff a duty of care, which was breached by negligent conduct."  *Nestlé USA, Inc. v. Crest Foods, Inc.,* 2019 WL 2619635, at *8 (C.D. Cal., March 8, 2019).

C.   **Plaintiffs Fail to State a Claim for Intentional Interference with Contractual Relations (Sixth Cause of Action)**

In support of their sixth claim, Plaintiffs allege that Dr. Breitfeld interfered with two separate sets of contracts with unspecified employees: (1) employment contracts for a specified employment term, and (2) confidentiality agreements. (Compl. ¶¶ 58-68.)  But in neither case do Plaintiffs identify any specific contractual relationship, or properly allege "but for" causation.  For these reasons, the sixth claim should be dismissed as a matter of law.

1.   Plaintiffs Fail To Identify Any Specific Contract with which Defendant Purportedly Interfered

As with a claim for interference with prospective economic advantage where the plaintiff must identify the specific relationship at issue, to state a claim for intentional interference with contractual relations, plaintiffs must identify a specific contract that defendant purportedly interfered with.  *See In re Centerstone Diamonds, Inc.*, 2:09 bk-23945-PC, 2014 WL 1330186, at *6 (C.D. Cal., April 2, 2014) (dismissing claim for intentional interference with contractual relations where plaintiffs failed to identify "a specific contract, the parties thereto, or the substance and date thereof"); *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F.Supp.3d

BAKER MARQUART LLP
777 S. FIGUEROA ST., SUITE 2850
LOS ANGELES, CALIFORNIA 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

1   1092, 1115-16 (C.D. Cal. 2015) (dismissing counterclaim for intentional interference

2   with contractual relations where the counterclaimants supplied no facts concerning

3   the identity of any third party with whom they had contracted).  Plaintiffs have failed

4   to do so here, and as a result, their claim fails.

5     *Green Crush LLC v. Paradise Splash I, Inc*. is instructive.  In *Green Crush*, the

6   plaintiff brought a claim for tortious interference with contractual relations, alleging

7   that defendants interfered with confidentiality agreements with its employees.  2018

8   WL 4940825, at *2-3.  Plaintiff identified one employee it had contracted with, but

9   failed to identify any others.  *Id*.  The court held plaintiff's failure to identify all the

10  employees at issue with whom it had contracted "require[d] dismissal of the claim

11  because 'to understand whether [the plaintiff's] performance was disrupted require[s]

12  the district court to determine what contractual rights [it] possess[ed]." *Id*. (quoting

13  *UMG Recordings, Inc.*, 117 F.Supp.3d at 1115).

14    As in *Green Crush*, Plaintiffs make vague reference to their employee

15  "confidentiality agreements" (Compl. ¶ 64), but fail to cite any specific employee

16  with whom they contracted.  Nor do Plaintiffs state the date on which the purported

17  agreements were signed, what confidential information was purportedly protected by

18  the agreements, or whether all the various agreements required protection of the same

19  information.  Similar vague references to employee "confidentiality agreements"

20  were deficient to support a claim in *Green Crush*, and are likewise deficient here.

21  *See Green Crush*, 2018 WL 4940825, at *9 (dismissing claim for intentional

22  interference with contractual relations where plaintiff alleged defendant interfered

23  with employee "confidentiality agreements" but failed to specify individual

24  employees or contracts).

25    Plaintiffs' allegations that Dr. Breitfeld interfered with their employee's

26  employment contracts (Compl. ¶¶ 63-66) fare no better.  Plaintiffs allege that "some"

27  of their former employees "had employment contracts with BYTON that specified a

28  term of employment."  (*Id*. ¶ 63.)  Plaintiffs fail to identify a single one of these

BAKER MARQUART LLP
777 S. FIGUEROA ST., SUITE 2850
LOS ANGELES, CALIFORNIA 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

BAKER MARQUART LLP
777 S. FIGUEROA ST., SUITE 2850
LOS ANGELES, CALIFORNIA 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

1    employees, the date on which any of the purported agreements were signed or the

2    terms of any of these agreements.  (*Id*. ¶¶ 63-66.)  These allegations therefore fail as a

3    matter of law.  *See UMG Recordings*, 117 F.Supp.3d at 1115-16 (dismissing

4    counterclaim for intentional interference with contractual relations where

5    counterclaimants alleged they had "Airline Contracts," but supplied no facts

6    concerning the identity of any third party with whom they had contracted).  The

7    Court should dismiss this specious claim.

8                    2.    Plaintiffs Fail to Allege Causation

9          A claim for intentional interference with contractual relations also fails where a

10   party fails to allege specific facts to establish that the purported contract "would not

11   have been breached or disrupted but for the alleged interference."  *National Funding,*

12   *Inc. v. Commercial Credit Counseling Services, Inc*., CV 18-6437-MWF (ASx), 2018

13   WL 6444899, at *5 (C.D. Cal., November 6, 2018); *see also Dryden v. Tri-Valley*

14   *Growers*, 65 Cal. App. 3d 990, 997 (1977) ("It has been repeatedly held that a

15   plaintiff, seeking to hold one liable for unjustifiably inducing another to breach a

16   contract, must allege that the contract would otherwise have been performed, and that

17   it was breached and abandoned by reason of the defendant's wrongful act and that

18   such act was the moving cause thereof.").

19         In *Celebrity Chefs Tour, LLC v. Macy's, Inc*., for example, the court rejected a

20   tortious interference claim where the complaint alleged defendants interfered with

21   existing contracts but failed to state "what acts [the defendant] purportedly undertook

22   to induce third parties to breach their contracts with Plaintiffs, or why [defendant],

23   rather than other forces, was the cause of said breach(es)."  16 F.Supp.3d 1141, 1157

24   (S.D. Cal. 2014).

25         Moreover, conclusory causation allegations will not suffice.  In *National*

26   *Funding*, the court held that an alleged interference of contractual relations claim

27   failed where plaintiff offered the "conclusory assertion that 'the Loan Agreements

28   would not have been breached or disrupted but for'" defendants' conduct, but failed

to allege any specific facts to establish causation.  2018 WL 6444899, at *5 (a "legal conclusion is not enough to support the element of causation" on an interference with contractual relations claim).

Plaintiffs' claim is similarly deficient.  Plaintiffs allege that Dr. Breitfeld interfered with contractual relations by causing Plaintiffs' former employees to work for Iconiq or TINC "before the end of their employment term" and "to disclose Byton's confidential information." (Compl. ¶¶ 61, 65.)  But Plaintiffs fail to allege a single act Dr. Breitfeld undertook to induce any of Plaintiffs' employees to leave their jobs or disclose any information.  Nor do Plaintiffs credibly allege that "but for" Dr. Breitfeld's actions, these employees would not have left their jobs or breached their purported confidentiality agreements.

Like the plaintiffs in *Celebrity Chefs*, Plaintiffs' allegations fail to indicate why defendant, "rather than other forces" were the cause of these breaches.  16 F.Supp.3d at 1157.  Plaintiffs' allegations amount to accusing Dr. Breitfeld of offering jobs to BYTON's employees (Compl. ¶¶ 14, 65), which is insufficient to state a claim for interference with contractual relations as a matter of law.  *See Reeves*, 33 Cal. 4th at 1153 (merely "extending a job offer that induces an employee to terminate his or her at-will employment" insufficient to state a claim for interference with contractual relations).  There is nothing improper about recruiting employees of a competitor. Nor do Plaintiffs allege how such hiring can be the basis of an interference claim. Plaintiffs' interference claim should be dismissed.  *See Celebrity Chefs*, 16 F.Supp.3d at 1157.

    3.    <u>The Agreements Alleged As the Basis of Plaintiffs' Interference Claims Are Illegal, in Violation of Business and Professions Code section 16600</u>

Plaintiffs' sixth claim for intentional interference with contractual relations fails because the purported employment agreements and confidentiality agreements

BAKER MARQUART LLP
777 S. FIGUEROA ST., SUITE 2850
LOS ANGELES, CALIFORNIA 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

BAKER MARQUART LLP
777 S. FIGUEROA ST., SUITE 2850
LOS ANGELES, CALIFORNIA 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

1   violate California law.  These illegal contracts cannot be the basis of an interference

2   claim.

3        California has a longstanding and "settled legislative policy in favor of open

4   competition and employee mobility." *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th

5   937, 946 (2008) (invalidating noncompetition agreement); *see also Mattel, Inc. v.*

6   *MGA Entm't, Inc*., CV 04-9049 DOC (RNBx), 2011 WL 8427611, at *2 (C.D. Cal.,

7   Mar. 28, 2011) (recognizing the importance of "the consistent safeguards upon

8   employee mobility and the freedom to work in the state of California").  In

9   furtherance of this policy, Business and Professions Code section 16600 provides that

10  "every contract by which anyone is restrained from engaging in a lawful profession,

11  trade, or business of any kind is to that extent void."  "The term 'restrain' in § 16600

12  applies not only to prohibitions on engaging in a profession, trade or business, but

13  also to *limitations on an employee's ability* to practice his or her vocation." *Action*

14  *Learning Sys., Inc. v. Crowe*, No. CV 14-5112-GW(SHx), 2014 WL 12564011, at

15  *12 (C.D. Cal., Aug. 11, 2014) (citations omitted) (emphasis in original).

16       Given this public policy, under California law, employers are entitled to post-

17  employment contractual control over employees only to the extent that the former

18  employee "*would have been subject to judicial restraint* under the law of [CUTSA]

19  or unfair competition *absent the contract*." *Id*. (quotations omitted) (emphasis in

20  original); *see also The Ret. Grp. v. Galante*, 176 Cal. App. 4th 1226, 1237-38 (2009)

21  (citing *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1338 (9th

22  Cir. 1980)) ("the applicable California law is that 'the employer will be able to

23  restrain by contract only that conduct of the former employee that would have been

24  subject to judicial restraint under the law of unfair competition, absent the contract'").

25       CUTSA prohibits the misappropriation of trade secrets, which the statute

26  defines as information that (1) derives independent economic value from not being

27  generally known to the public; and (2) that the owner has attempted to keep secret.

28  Cal. Civ. Code § 3426.1(d).

1    Here, Plaintiffs do not allege that the purported employee "confidentiality

2    agreements" were limited to trade secrets, but instead broadly state that they included

3    all of "Byton's confidential information." (Compl. ¶¶ 60-61.) The extent of this

4    "confidential information" is defined nowhere in the Complaint. In paragraph nine,

5    Plaintiffs claim that their business depends on its ability to maintain the secrecy of its

6    trade secrets, as well as "other confidential and proprietary information." (*Id.* ¶ 9.)

7    Plaintiffs then provide a bullet point list of such "information," without specifying

8    which items are trade secrets and which are "confidential" or "proprietary," and

9    further stating that even that list is "without limitation." (*Id.*) California courts have

10   repeatedly held this type of broad contractual restraint void under section 16600.

11   In *Action Learning*, the district court addressed an overbroad confidentiality

12   agreement similar to those that Plaintiffs allege here. 2014 WL 12564011, at *12.

13   The plaintiffs in that case required their employees to sign contracts prohibiting them

14   from using any "Proprietary Information," or disclosing any "Confidential

15   Information." *Id*. Such information was defined to include trade secrets, as well as

16   all other company information and ideas produced by a company employee and not

17   known outside of the company's organization. *Id*. Even though the contract at issue

18   in *Action Learning* did not contain an explicit non-compete or non-solicit provision,

19   the court found that such overbroad confidentiality provisions constituted a void

20   restraint on trade because "complying with these provisions would effectively

21   preclude Defendants from working in their chosen field." *Id*. at *13.

22   Likewise, in *Western Air Charter, Inc. v. Schembari*, the court held that a

23   confidentiality provision that barred "soliciting clients using trade secrets 'and/or'

24   'Confidential Information[]'" was an unlawful restraint on trade. No. 2:17-cv-00420-

25   AB (KSx), 2017 WL 7240775, at *3-4 (C.D. Cal., Dec. 14, 2017). The Court held

26   that such provisions violate section 16600 because they prevent the employee "from

27   using any helpful information not generally known to the public," not just the former

28   employer's trade secrets. *Id*. at *4; *see also Dowell v. Biosense Webster, Inc.*, 179

BAKER MARQUART LLP
777 S. FIGUEROA ST., SUITE 2850
LOS ANGELES, CALIFORNIA 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

17

Cal. App. 4th 564, 578 (2009) (non-compete clause violated section 16600, even though it was "'tethered' to the use of confidential information," because "[c]onfidential information' [was] broadly defined" in the agreement); *Metro Traffic Control,* 22 Cal. App. 4th at 861 (restriction on the use of trade secrets was unenforceable because the employer "delineate[d] its alleged trade secrets in very general terms").

Plaintiffs here have not alleged a narrow confidentiality agreement.  Instead, their overbroad references to "confidentiality agreements," and unspecified "confidential information" encompass nearly any information these unnamed employees came into contact with during their employment with BYTON, regardless of whether the information qualifies as a trade secret.

Moreover, Plaintiffs' implication that merely resigning their position before term to go to work for Iconiq violated their employees' employment contracts is an illegal restraint on trade in violation of section 16600.  *See, e.g., Metro Traffic Control,* 22 Cal. App. 4th at 860 (restrictive covenant requiring employees "not to provide traffic reporting services to [radio station] for a period of one year after the termination of their respective employment relation with [plaintiff]" held to be in violation of 16600 and unenforceable).  Thus, Plaintiffs' sixth claim fails for this additional reason.

### D.   Plaintiffs Fail to State a Claim for Conversion and Violation of the UCL (Seventh and Eighth Causes of Action)

#### 1.   CUTSA Preempts Plaintiffs' Conversion and UCL Claims

It is longstanding law that CUTSA preempts claims "based on the same nucleus of facts as the misappropriation of trade secrets claim for relief."  *K.C. Multimedia, Inc. v. Bank of America Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 962 (2009).  In determining whether claims are based on the "same nucleus of facts" so as to necessitate preemption, courts "focus[] on whether other claims are not more than a restatement of the same operative facts supporting trade secret

BAKER MARQUART LLP
777 S. Figueroa St., Suite 2850
Los Angeles, California 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

misappropriation . . . . If there is no material distinction between the wrongdoing alleged in a [C]UTSA claim and that alleged in a different claim, the [C]UTSA claim preempts the other claim." *SunPower Corp.*, 2012 WL 6160472, at *3 (quoting *Convolve, Inc. v. Compaq Comp. Corp.*, No. 00 CV 5141(GBD), 2006 WL 839022, at *6 (S.D.N.Y., Mar. 31, 2006)).

Following the nucleus of facts test, courts have held that CUTSA may supersede claims for conversion and unfair competition. *See Silvaco Data Systems v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (2010) (claims for conversion and common law unfair business practices, among others, were superseded by CUTSA); *Waymo LLC v. Uber Tech., Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017) (CUTSA "supersedes claims—including Section 17200 claims—based on the same nucleus of facts as trade secret misappropriation"); *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1116 (N.D. Cal. 2012) (granting motion to dismiss on conversion and UCL claims that were duplicative of trade secrets claim and preempted by CUTSA).

In addition, CUTSA's preemption is not limited strictly to claims for misappropriation of trade secrets. Rather, "CUTSA preempts all claims based upon the misappropriation of . . . confidential information, whether or not that information rises to the level of a trade secret." *Jardin v. Datallegro, Inc.*, 10–CV–2552–IEG WVG, 2011 WL 1375311, at *4 (S.D. Cal., Apr.12, 2011). "If the basis of the alleged property right is in essence that the information is 'not . . . generally known to the public,' then the claim is sufficiently close to a trade secret claim that it should be superseded notwithstanding the fact that the information fails to meet the definition of a trade secret." *SunPower Corp.*, 2012 WL 6160472, at *6 (quoting *FormFactor, Inc. v. Micro-Probe, Inc.*, C 10-3095 PJH, 2012 WL 2061520, at *15 (N.D. Cal., June 7, 2012) ("CUTSA preempts other claims based on misappropriation of confidential information, regardless of whether the information ultimately meets the statutory definition of trade secrets")).

BAKER MARQUART LLP
777 S. FIGUEROA ST., SUITE 2850
LOS ANGELES, CALIFORNIA 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

BAKER MARQUART LLP
777 S. FIGUEROA ST., SUITE 2850
LOS ANGELES, CALIFORNIA 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

1      Plaintiffs' conversion and UCL claims are preempted by CUTSA.  The

2   wrongdoing alleged in Plaintiffs' conversion and unfair competition claims is based

3   on the same nucleus of facts as the wrongdoing alleged in Plaintiffs' trade secrets

4   claim.  Specifically, Plaintiffs' CUTSA allegations state that Dr. Breitfeld had access

5   to Plaintiffs' "trade-secret, proprietary and other confidential information" and

6   diverted that information "for Defendants' own financial gain."  (*Id*. ¶¶ 23, 25.)

7   These allegations are wholly redundant of Plaintiffs' conversion claim, which alleges

8   that Dr. Breitfeld was entrusted with "Byton's trade-secret, proprietary, and other

9   confidential information," and "wrongfully converted" that information for "Iconiq

10   and TINC's own gain."  (*Id*. ¶¶ 70-71.)  Plaintiffs' UCL claim likewise alleges that

11   Dr. Breitfeld conspired with Iconiq to "misappropriate Byton's trade-secret and other

12   confidential information."  (*Id*. ¶ 74.)

13      In short, there is no material difference between the wrongdoing alleged in

14   support of Plaintiffs' trade secret claims and the wrongdoing alleged in support of

15   Plaintiffs' claims for conversion and unfair competition.  (*See id*. ¶¶ 20-35 (alleging

16   facts regarding Defendants' misappropriation of Plaintiffs' trade secrets); *id*. ¶ 69

17   (incorporating paragraphs 1–68 into Plaintiffs' conversion claim); *id*. ¶ 73

18   (incorporating paragraphs 1–72 into Plaintiffs' breach of unfair competition claim).)

19      The fact that, in addition to trade secret misappropriation, Plaintiffs' UCL

20   claim also includes allegations of Defendants' solicitation of Plaintiffs' employees is

21   immaterial to this analysis.  *See K.C. Multimedia,* 171 Cal. App. 4th at 958 (CUTSA

22   supersedes any claim "based on the same nucleus of facts as the misappropriation of

23   trade secrets claim," even though the superseded claim may seek "'something more'

24   than trade secret relief"); *Mattel, Inc*. *v. MGA Entertainment, Inc*., 782 F.Supp.2d

25   911, 986 (C.D. Cal. 2011) (explaining that, under California law, a claim may be

26   superseded by CUTSA regardless of whether it "require[s] proof of 'additional

27   elements'").

28      Plaintiffs' conversion and UCL claims are therefore preempted by CUTSA.

BAKER MARQUART LLP
777 S. FIGUEROA ST., SUITE 2850
LOS ANGELES, CALIFORNIA 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850

2.    Plaintiffs' UCL Claim Also Fails Because Plaintiffs Have an
Adequate Remedy at Law

"A plaintiff may only seek equitable relief under California's UCL where she has no adequate remedy at law." *Moss v. Infinity Ins. Co.*, 197 F.Supp.3d 1191, 1203 (N.D. Cal. 2016) (citing *Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2015 WL 4111448, at *16 (N.D. Cal., July 7, 2015) ("[T]he UCL provides only the equitable remedies of restitution and injunctive relief. A plaintiff seeking equitable relief in California must establish that there is no adequate remedy at law available."). Where, as here, a plaintiff can seek monetary damages and injunctive relief if it prevails on its other claims, it may not allege a UCL claim. *Moss*, 197 F.Supp.3d at 1203 (dismissing the plaintiffs' UCL claim because the plaintiffs' other claims provided an adequate remedy at law) (listing cases); *see also Heighley v. J.C. Penney Life Ins. Co.,* 257 F.Supp.2d 1241, 1259-60 (C.D. Cal. 2003) (dismissing the plaintiff's UCL claim in part because the plaintiff failed to allege that he has no adequate remedy at law).

Plaintiffs' UCL claim is based on the same underlying allegations as their seven other claims and specifically refers to trade secrets misappropriation. (Compl. ¶¶ 73-74.) In light of the duplicative nature of Plaintiffs' UCL claim, Plaintiffs have not pled that they have "no adequate remedy at law." Plaintiffs are therefore precluded from bringing a UCL claim as a matter of law. *See Moss*, 197 F.Supp.3d at 1203.

## V.    DISMISSAL WITH PREJUDICE

Although leave to amend is freely granted, it is permissible to dismiss a claim with prejudice where the existing record shows that it would be futile to permit amendment. *Vogel v. Waldorf Restaurant Group Centinela, LLC*, CV 13-09420-R, 2014 WL 12769385, at *1 (C.D. Cal., April 11, 2014) (dismissing claims where "further amendment would be futile"). It is apparent from Plaintiffs' own purported definition of confidential information that the seventh and eighth claims for

conversion and violation of the UCL are preempted by CUTSA.  Likewise, the UCL claim affords an adequate remedy at law.  In any event, it is unlikely that Plaintiffs will be able to allege in good faith additional or different facts to cure all the legal deficiencies in their various claims.

## VI.   CONCLUSION

For all of the foregoing reasons, Dr. Breitfeld respectfully requests that the Court dismiss the fourth, fifth, sixth, seventh and eighth causes of action of Plaintiffs' Complaint.

Dated: January 3, 2020                              BAKER MARQUART, LLP

By:    /s/ Ryan G. Baker
        Ryan G. Baker
        Donald Pepperman
        Scott M. Malzahn
        Teresa L. Huggins
        *Attorneys for Defendant Carsten Breitfeld*

BAKER MARQUART LLP
777 S. Figueroa St., Suite 2850
Los Angeles, California 90017
Tel: (424) 652-7800 • Fax: (424) 652-7850