1  MAYER BROWN LLP
   JOHN NADOLENCO (SBN 181128)
2   *jnadolenco@mayerbrown.com*
   RUTH ZADIKANY (SBN 260288)
3   *rzadikany@mayerbrown.com*
   ALEXANDER VITRUK (SBN 315756)
4   *avitruk@mayerbrown.com*
   350 South Grand Avenue, 25th Floor
5  Los Angeles, CA 90071
   Telephone: (213) 229-9500
6  Facsimile: (213) 625-0248

7  Attorneys for Plaintiffs
   Byton North America Corporation and
8  Byton Limited

9

10              **UNITED STATES DISTRICT COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12                    **WESTERN DIVISION**

13

14  BYTON NORTH AMERICA              Case No. 2-19-cv-10563-DMG-JEM
    CORPORATION, a Delaware
15  corporation; and BYTON LIMITED, a  **PLAINTIFFS BYTON NORTH**
    Hong Kong company,               **AMERICA CORPORATION AND**
16                                   **BYTON LIMITED'S OPPOSITION**
                     Plaintiffs,     **TO DEFENDANT CARSTEN**
17                                   **BREITFELD'S MOTION TO**
           v.                        **DISMISS PLAINTIFFS' FOURTH,**
18                                   **FIFTH, SIXTH, SEVENTH, AND**
    ICONIQ MOTORS NORTH              **EIGHTH CAUSES OF ACTION**
19  AMERICA, INC., a California
    corporation; CARSTEN BREITFELD,  Assigned to Hon. Dolly M. Gee
20  an individual; and DOES 1 THROUGH
    25 INCLUSIVE,                    Date:    February 28, 2020
21                                   Time:    9:30 A.M.
                     Defendants.     Dept:    8C
22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ........................................................................... 1

II. BACKGROUND .............................................................................. 2

III. BYTON HAS SUFFICIENTLY PLED ITS INTERFERENCE, CONVERSION, AND UNFAIR COMPETITION CLAIMS ...................... 5

    A.  Byton Has Properly Stated Its Claims for Intentional and Negligent Interference with Prospective Economic Advantage (Counts 4 and 5) ................................................................. 6

        1.  Disruption of Byton's Existing Relationships May Form the Basis for a Business Interference Claim .......................... 7

        2.  Byton Has Properly Identified Economic Relationships with Former Employees Whom Breitfeld Solicited to Join Iconiq ....................................................................... 9

        3.  Breitfeld's Interference Was Independently Wrongful .......... 11

    B.  Byton Has Properly Stated Its Intentional Interference with Contractual Relations Claim (Count 6) .............................. 12

        1.  Byton's Complaint Does Not Have to Name any Third Parties or Attach Contracts ..................................... 13

        2.  Byton Has Properly Alleged that Breitfeld's Interference Caused the Breach or Disruption of the Confidentiality and Specified Term Employment Agreements ..................... 16

        3.  Neither the Confidentiality nor the Term Employment Agreements Imposed an Illegal Restraint on Mobility .......... 17

    C.  This Court Should Conclude That Byton's Conversion Claim (Count 7) Is Not Preempted ................................................ 20

    D.  Byton Has Properly Claimed a Violation of California's Unfair Competition Law (Count 8) .......................................... 22

        1.  CUTSA Does Not Preempt a UCL Claim That Is Not Based on Misappropriation of Trade Secrets ..................... 22

        2.  Money Damages Are an Inadequate Remedy Here, and Byton May Plead Alternative Types of Relief ...................... 23

IV. CONCLUSION ............................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Action Learning Sys., Inc. v. Crowe*,
  2014 WL 12564011 (C.D. Cal. Aug. 11, 2014)...........................................18, 19

*ADG Concerns, Inc. v. Tsalevich LLC*,
  2018 WL 4241967 (N.D. Cal. Aug. 31, 2018)..................................................15

*Ali v. Fasteners for Retail, Inc.*,
  544 F. Supp. 2d 1064 (E.D. Cal. 2008).....................................................20, 21

*Allied N. Am. Ins. Brokerage Corp. of Cal. v. Woodruff-Sawyer*,
  2005 WL 2354119 (N.D. Cal. Sept. 26, 2005)..................................................19

*Allied N. Am. Ins. Brokerage Corp. of Cal. v. Woodruff-Sawyer*,
  2005 WL 6583937 (N.D. Cal. Feb. 22, 2005)...................................................18

*Altera Corp. v. Clear Logic, Inc.*,
  424 F. 3d 1079 (9th Cir. 2005)...........................................................14

*Amron Intern. Diving Supply, Inc. v. Hydrolinx Diving Commc'n, Inc.*,
  2011 WL 5025178 (S.D. Cal. Oct. 21, 2011)....................................................22

*Angelica Textile Servs., Inc. v. Park*,
  220 Cal. App. 4th 495 (2013)............................................................22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................5, 14

*B. Aronson, Inc. v. Bradshaw Int'l, Inc.*,
  2011 WL 1583938 (C.D. Cal. Apr. 25, 2011)...................................................24

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................5, 6

*Cal-Cleve, Ltd. v. Wrag-Time Air Freight, Inc.*,
  2005 WL 8157876 (C.D. Cal. June 1, 2005)....................................................8

*Celebrity Chefs Tour, LLC v. Macy's, Inc.*,
  16 F. Supp. 3d 1141 (S.D. Cal. 2014) ....................................................16, 17

-ii-

*In re Centerstone Diamonds, Inc.*,
  2014 WL 1330186 (C.D. Cal. Apr. 2, 2014)...................................................14, 15

*Cheverez v. Plains All Am. Pipeline, LP*,
  2016 WL 4771883 (C.D. Cal. Mar. 4, 2016) .....................................................11

*Cook v. Winfrey*,
  141 F. 3d 322 (7th Cir. 1998)...........................................................................10

*Dowell v. Biosense Webster, Inc.*,
  179 Cal. App. 4th 564 (2009)...........................................................................19

*Earthbound Corp. & Intact Struct. Supply, LLC v. MiTek USA, Inc.*,
  2017 WL 2972847 (C.D. Cal. Feb. 10, 2017)....................................................22

*Eastman v. Allstate Ins. Co.*,
  2014 WL 5355036 (S.D. Cal. Oct. 20, 2014).....................................................24

*Fowler v. Varian Assocs., Inc.*,
  196 Cal. App. 3d 34 (1987)..............................................................................17

*Gatan, Inc. v. Nion Co.*,
  2017 WL 1196819 (N.D. Cal. Mar. 31, 2017)...................................................18

*GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*,
  2016 WL 6562064 (C.D. Cal. Apr. 21, 2016).........................................8, 12, 23

*Green Crush LLC v. Paradise Splash I, Inc.*,
  2018 WL 4940825 (C.D. Cal. May 3, 2018).................................................10, 15

*Heighley v. J.C. Penney Life Ins. Co.*,
  257 F. Supp. 2d 1241 (C.D. Cal. 2003).............................................................23

*Henry Schein, Inc. v. Cook*,
  2017 WL 783617 (N.D. Cal. March 1, 2017).....................................................23

*Hilderman v. Enea TekSci, Inc., Inc.*,
  551 F. Supp. 2d 1183 (S.D. Cal. 2008) ........................................................11, 12

*Keys v. Humana, Inc.*
  684 F. 3d 605 (6th Cir. 2012)..............................................................................5

*In re Kirkland*,
  915 F. 2d 1236 (9th Cir. 1990)............................................................................8

*Latona v. Aetna U.S. Healthcare Inc.*,
   82 F. Supp. 2d 1089 (1999) ............................................................................. 17

*Lewis v. Tel. Employees Credit Union*,
   87 F. 3d 1537 (9th Cir. 1996) ............................................................................. 8

*Metro Traffic Control, Inc. v. Shadow Traffic Network*,
   22 Cal. App. 4th 853 (1994) ............................................................................. 19

*Moss v. Infinity Ins. Co.*,
   197 F. Supp. 3d 1191 (N.D. Cal. 2016) ............................................................ 23

*Nat'l Funding, Inc. v. Commercial Credit Counseling Servs., Inc.*,
   2018 WL 6444899 (C.D. Cal. Nov. 6, 2018) ..................................................... 17

*National Wildlife Federation v. Espy*,
   45 F. 3d 1337 (9th Cir. 1995) ............................................................................. 5

*O'Connor v. Uber Techs., Inc.*,
   58 F. Supp. 3d 989 (N.D. Cal. 2014) ................................................................. 8

*Phoenix Technologies Ltd. v. DeviceVM*,
   2009 WL 4723400 (N.D. Cal. Dec. 8, 2009) ..................................................... 21

*Popescu v. Apple Inc.*,
   1 Cal. App. 5th 39, 63 (2016) ................................................................... 6, 8, 12

*PQ Labs, Inc. v. Qi*,
   2012 WL 2061527 (N.D.Cal. June 7, 2012) ..................................................... 21

*Qwest Communications Corp. v. Herakles, LLC*,
   2008 WL 783347 (E.D. Cal. Mar. 20, 2008) ................................................. 9, 14

*Redfearn v. Trader Joe's Co.*,
   20 Cal. App. 5th 989, 1006 (2018) ..................................................................... 6

*Reeves v. Hanlon*,
   33 Cal. 4th 1140 (2004) ................................................................... 7, 8, 13, 20

*Roth v. Rhodes*,
   25 Cal. App. 4th 530 (1994) ............................................................................... 8

*Sebastian Int'l, Inc. v. Russolillo*,
   162 F. Supp. 2d 1198 (C.D. Cal. 2001) ............................................................ 10

*Sheppard v. David Evans & Assocs.*,
  694 F. 3d 1045 (9th Cir. 2012) ............................................................................. 6

*SMC Networks Inc. v. Hitron Techs. Inc.*,
  2013 WL 12114104 (C.D. Cal. Nov. 13, 2013) ............................................... 9, 11

*SOS Co., Inc. v. E-Collar Techns., Inc.*,
  2017 WL 5714716 (C.D. Cal. Oct. 17, 2017) .................................................... 7, 8

*Strayfield Ltd. v. RF Biocidics, Inc.*,
  2012 WL 170180 (E.D. Cal. Jan. 19, 2012) ........................................................ 21

*SunPower Corp. v. SolarCity Corp.*,
  2012 WL 6160472 (N.D. Cal. Dec. 11, 2012) ............................................... 10, 11

*Terarecon, Inc. v. Fovia, Inc.*,
  2006 WL 1867734 (N.D. Cal. July 6, 2006) ........................................................ 21

*TMX Funding, Inc. v. Impero Technologies, Inc.*,
  2010 WL 2509979 (N.D. Cal. June 17, 2010) ..................................................... 21

*TPS Utilicom Servs., Inc. v. AT & T Corp.*,
  223 F. Supp. 2d 1089 (C.D. Cal. 2002) ............................................................... 8

*Transcription Commc'ns Corp. v. John Muir Health*,
  2009 WL 666943 (N.D. Cal. Mar. 13, 2009) ...................................................... 10

*TYR Sport Inc. v. Warnaco Swimwear Inc.*,
  679 F. Supp. 2d 1120 (C.D. Cal. 2009) ............................................................... 10

*UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*,
  117 F. Supp. 3d 1092, 1115 (C.D. Cal. June 22, 2015) ..................................... 15

*Unite Eurotherapy, Inc. v. Walgreen Co.*,
  2017 WL 513008 (S.D. Cal. Feb. 7, 2017) ......................................................... 15

*United States Legal Support, Inc. v. Hofioni*,
  2013 WL 6844756 (E.D. Cal. Dec. 20, 2013) ..................................................... 22

*W. Air Charter, Inc. v. Schembari*,
  2017 WL7240775 (C.D. Cal. Dec. 14, 2017) ..................................................... 19

*Westside Ctr. Assoc. v. Safeway Stores 23, Inc.*,
  42 Cal.App.4th 507 (1996) ........................................................................... 10, 11

**Statutes**

California Labor Code § 2922 ................................................................. 19

California Labor Code § 2924 ................................................................. 19

California Labor Code § 2925 ................................................................. 19

California Business & Professions Code § 16600................................. 17, 18, 19, 20

California Unfair Competition Law ...................................................... 12, 22, 23, 24

California Uniform Trade Secrets Act................................................. 20, 21, 22, 23

Uniform Trade Secrets Act .............................................................. 21, 22

**Other Authorities**

Federal Rule of Civil Procedure 8(a)(2) ............................................... 6, 14

Federal Rule of Civil Procedure 8(a)(3) ............................................... 21, 24

Federal Rule of Civil Procedure 12(b)(6)................................................. 5

Restatement (Second) of Torts, § 766, comment p ............................... 14

## I.   INTRODUCTION

This case involves a CEO and co-founder who betrayed his former employer by stealing and repurposing that employer's trade secrets and confidential information for the benefit of a competitor, and luring his former colleagues to do the same.

Plaintiffs Byton North America Corporation and Byton Limited (collectively "Byton") have sued their former employee and director Dr. Carsten Breitfeld ("Breitfeld") because, *while still a Byton director*, Breitfeld became CEO of one of Byton's competitors—Defendant Iconiq Motors North America, Inc. ("Iconiq")—and began using Byton's information to directly compete with Byton.[1] He also solicited high-level Byton employees to resign from Byton and work for Iconiq, and disclose Byton's trade secrets and confidential information. Not surprisingly, Iconiq then revealed an electric concept car with features remarkably similar to those that Byton had been designing for years. Breitfeld was not "forced out" of Byton, as he now claims. Instead, he waited to resign as a director until after he had sabotaged it from the inside for a competitor's benefit.

Eventually, Iconiq and Breitfeld parted ways, and Breitfeld has now joined another competitor, Faraday Future.[2] Still, Byton brings this action to try its best to protect the information that Breitfeld took with him.

Rather than answer the Complaint like Iconiq, Breitfeld instead has moved to dismiss some causes of action. Importantly, Breitfeld does not challenge Byton's trade-secret or fiduciary-duty claims. He instead challenges its claims that Breitfeld wrongfully interfered with certain relationships.[3] His supporting brief reads more

---

[1] As used herein, "Iconiq" refers to co-defendant ICONIQ Motors North America, Inc. as well as its parent company, Tianjin ICONIQ NEV Co., Ltd.

[2] *See* Motion ("Mot.") at 4:5-6; *see also* Iconiq's Answer to Byton's Complaint (denoting dissolved status).

[3] Breitfeld challenges Byton's claims for intentional and negligent interference with prospective economic advantage (4, 5), intentional interference with contractual relations (6), conversion (7), and unfair competition (8).

like a discovery request, asking that Byton (a) spell out the names of the employees Breitfeld solicited and (b) attach or state verbatim the confidentiality and employment agreements he caused those employees to breach—even though Breitfeld, as the party engaged in these activities, is in a better position than Byton to know the exact details of his misconduct.

In any event, Byton is not required to name names at this stage. Indeed, Byton has pled more than sufficient facts to allow the Court to draw a *reasonable inference* that Breitfeld is liable for the misconduct alleged. More specifically, Byton has alleged that:

- Breitfeld was aware of the confidentiality and specified-term employment agreements, given his executive roles at Byton and his direct contact with the employees;
- While still employed by Byton, Breitfeld solicited employees to (a) resign from Byton before the expiration of their respective terms, (b) disclose Byton's confidential information to Iconiq, and (c) join him at Iconiq;
- The employees resigned from Byton before the expiration of their terms, joined Iconiq, and disclosed Byton's confidential information; and
- Iconiq revealed a concept electric car with features strikingly similar to Byton's, and almost certainly derived with the assistance of Byton's confidential information.

In short, Byton has alleged more than enough to sustain its interference claims. The Court should deny Breitfeld's motion to dismiss in its entirety.

## II.   BACKGROUND

Byton designs, develops, and manufactures "smart" electric vehicles that are fully connected to the internet and feature innovative, technology-forward driving experiences, including autonomous driving. *See* Complaint ("Compl.") ¶¶ 2, 3. Byton's concept was to essentially develop a smartphone on wheels. In the

emergent and highly competitive electric vehicle industry, Byton has a head start on many of its competitors. *Id.* ¶ 9. Of course, much of Byton's competitive advantage depends on its ability to maintain the secrecy of its trade secrets and other confidential information, including structural, aesthetic, safety, and hardware designs used in the vehicle body, chassis, cabin, powertrain, vehicle control systems, and entertainment experience systems. *Id.* Byton also maintains the secrecy of its manufacturing and logistics plans and strategies, business procedures and techniques, distribution channels, marketing plans and strategies, and contact and business information for business partners, vendors, suppliers, and service providers. *Id.*

To help keep such information confidential, Byton entered into confidentiality agreements with high-level Byton employees, including Breitfeld. *See* Compl. ¶¶ 11, 59.

Breitfeld worked at Byton for three years, from 2016-2019. During that time, he accumulated a number of senior-level titles, including serving as Chief Executive Officer, Chief Technology Officer, Chairman of the Board, and director. Compl. ¶ 12. Given these positions, Breitfeld had access to and knew extensive amounts of Byton's trade-secret and confidential information about its technology, marketing designs and strategy, among other things. *Id.*

In early 2019, Iconiq, a newcomer to the electric mobility industry[4], revealed an electric concept car with features and capabilities remarkably similar to the vehicles that Byton had been designing for years. *See* Compl. ¶ 19. Even the vehicle depictions and descriptions were the same. *Id.* ¶ 16. Given the state of its technology at the time, Iconiq almost certainly could not have designed such a vehicle absent misappropriation of Byton's confidential information. *Id.* ¶ 19.

---

[4] Although Iconiq had developed electric Multi-Purpose Vehicles (MPVs) within China before Breitfeld joined, it had never focused on electric mobility services (such as ridehailing, for example) until the rollout of its concept car in early 2019.

On April 16, 2019, soon after Iconiq revealed its vehicle, and while Breitfeld was still a Byton director and employee, Breitfeld announced at a Shanghai automobile show that he had become Iconiq's CEO. *See* Compl. ¶ 13. While still a Byton director, he started actively promoting Iconiq's vehicles. *Id.* And he recruited high-level Byton employees to work for Iconiq and, on information and belief, use the confidential information they learned at Byton to Iconiq's advantage. *Id.* ¶ 16. Due to his direct contact with those employees as well as his executive management roles at Byton, Breitfeld knew that if those employees disclosed any of Byton's confidential information to Iconiq, they would breach their confidentiality agreements with Byton. *Id.* ¶¶ 60-62. Breitfeld similarly knew that some of those employees had specified employment term agreements with Byton, and that he was luring them away in breach of those agreements. *Id.* ¶¶ 63-66.

It was only on May 16, 2019—a whole month after he announced his new CEO status at Iconiq—that Breitfeld finally resigned from Byton. *Id.* ¶ 15. In other words, while he was using Byton's confidential information for Iconiq's advantage and recruiting Byton employees to do the same, Breitfeld was a Byton director and was breaching his fiduciary and other duties.

Breitfeld says that his time with Iconiq lasted only four months. *See* Mot. at 1:12. That was almost certainly because Byton informed Iconiq about the situation and, apparently, Iconiq acted accordingly. Still, the damage was clearly done when Iconiq announced publicly a car strikingly similar to the one Byton has been privately working on for years. Iconiq then apparently dissolved and Breitfeld jumped ship to Faraday Future, another startup in the electric vehicle field. *See id.* at 1:13.

In the meantime, Byton filed its Complaint against Breitfeld and Iconiq in the Superior Court of California, County of Los Angeles on August 28, 2019. Iconiq was served with the Complaint on October 3, 2019, and filed an Answer on

-4-

1
2
3

November 19. Meanwhile, Breitfeld was served on November 14, after evading service for months.[5] On December 13, Breitfeld removed the action to federal court. On January 3, 2020, Breitfeld filed the pending motion to dismiss.

4
5

### III.    BYTON HAS SUFFICIENTLY PLED ITS INTERFERENCE, CONVERSION, AND UNFAIR COMPETITION CLAIMS.

6
7
8
9
10
11
12
13
14

Pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged." *Id.* (emphasis added). "If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied." *Keys v. Humana, Inc.* 684 F. 3d 605, 610 (6th Cir. 2012).

15
16
17
18
19
20

A claim is sufficient if it gives a defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation omitted). "Allegations of fact are taken as true and construed in the light most favorable to the plaintiff." *National Wildlife Federation v. Espy,* 45 F. 3d 1337, 1340 (9th Cir. 1995). Legal conclusions are not entitled to the assumption of truth. *Iqbal,* 556 U.S. at 678.

21
22
23
24
25
26

Breitfeld does not contend that Byton pled legal conclusions. Nor does he argue that he lacks "fair notice" of the "grounds upon which [Byton's claims] rest[]." *Twombly,* 550 U.S. at 555. Instead, under the guise of a pleading motion, Breitfeld actually seeks discovery of (a) the names of the high-level Byton employees that Breitfeld lured to Iconiq, and (b) the exact language in the confidentiality and employment agreements that Breitfeld caused those employees

27
28

[5] Breitfeld's prior counsel, Quinn Emanuel, were "not authorized" to accept service on Breitfeld's behalf.

to breach. But that sort of precision is not required at the pleading stage, and no claim may be dismissed for "[in]sufficient factual detail." *Sheppard v. David Evans & Assocs.,* 694 F. 3d 1045, 1048-49 (9th Cir. 2012) (reversing the district court's dismissal of a complaint because the complaint, "while brief, nonetheless satisfie[d] Rule 8(a)(2)'s pleading standard."); *see also Twombly*, 550 U.S. at 556 ("the Federal Rules eliminated the cumbersome requirement that a claimant 'set out *in detail* the facts upon which he bases his claim'") (emphasis in original) (quotation omitted).[6] Tellingly, Breitfeld does not cite any authority to the contrary; rather, he relies on district court decisions that bear no factual resemblance to this case.

Because Byton need only plead sufficient facts that allow the court to draw a reasonable inference that Breitfeld is liable for the misconduct alleged, and because Byton has easily met this standard, Breitfeld's motion should be denied.

### A.   Byton Has Properly Stated Its Claims for Intentional and Negligent Interference with Prospective Economic Advantage (Counts 4 and 5).

To state a claim for intentional interference with prospective economic advantage, a plaintiff must allege: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of that relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Popescu v. Apple Inc.,* 1 Cal. App. 5th 39, 63 (2016) (citations omitted). A claim for *negligent* interference with prospective economic advantage requires the same pleading, except for the allegation of intent. *Redfearn v. Trader Joe's Co.*, 20 Cal. App. 5th 989, 1006 (2018).

---

[6] Breitfeld's insistence on more detailed allegations is also belied by Federal Rule of Civil Procedure 8(a)(2), which requires that all allegations be "short and plain."

Here, Byton has stated *prima facie* claims for both intentional and negligent interference with prospective economic advantage: (1) Byton had at-will employment relationships with third party employees with the probability of future economic benefit to Byton (Compl. ¶¶ 42, 51); (2) Breitfeld was aware of those employment relationships through his direct contact with those employees and executive management role (*id.* ¶¶ 43, 52); (3) he wrongfully solicited the employees to resign from their employment at Byton, thereby disrupting the employment relationship (*id.* ¶¶ 45, 47, 54, 56); (4) those relationships were, in fact, disrupted when the employees resigned (*id.* ¶¶ 47, 56); and (5) Byton was harmed as a proximate result of Breitfeld's conduct (*id.* ¶¶ 49, 57).

Nevertheless, Breitfeld seeks dismissal of Byton's interference claims, arguing that no prospective contract is alleged, no "specific relationship" is identified, and Breitfeld's interference was not independently wrongful. Breitfeld's arguments fail.

### 1. Disruption of Byton's Existing Relationships May Form the Basis for a Business Interference Claim.

Breitfeld argues that Byton's business interference claims fail because the employment relations between Byton and its former employees were "already in existence, they were not prospective, and [Byton] do[es] not point to a contract that would have been consummated but-for [d]efendants' conduct." *See* Mot. at 8:25-9:3. Breitfeld's argument relies on one non-binding, unpublished district court case, *SOS Co., Inc. v. E-Collar Techns., Inc.,* 2017 WL 5714716 (C.D. Cal. Oct. 17, 2017), which held that claims for interference with prospective economic advantage could not be based on disruption of existing employment relationships.

But the California Supreme Court has held precisely the opposite: "[I]nducing the termination of an at-will employment relation may be actionable under the standard applicable to claims for intentional interference with prospective economic advantage." *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1144

(2004).[7] Likewise, other California appellate courts have endorsed business interference claims based on the disruption of an *existing* employment relationship. *See, e.g., Popescu,* 1 Cal. App. 5th at 66 (finding a viable "claim of business interference based upon [defendant's] disruption of [plaintiff's then-existing] employment relationship with [a third party]"). Of course, these published California state cases—not the unpublished decision in *SOS*—are dispositive of California law and are binding on this Court.[8]

Regardless, even federal courts have concluded that a business interference claim *must* be based on an existing relationship with a third party. *See, e.g., O'Connor v. Uber Techs., Inc.,* 58 F. Supp. 3d 989, 997 (N.D. Cal. 2014) (quotation omitted) ("[A]n existing relationship must be pleaded to state a claim for intentional interference with prospective economic advantage").[9] And consistent with the California Supreme Court's holding in *Reeves,* federal courts have held that the existing relationship may be an *employment* relationship. *See, e.g., Cal-Cleve, Ltd. v. Wrag-Time Air Freight, Inc.,* 2005 WL 8157876, at *3 (C.D. Cal. June 1, 2005) (citing to *Reeves,* 33 Cal. 4th at 1152-53) (denying motion to dismiss

---

[7] The *SOS* court's notion of a prospective "contract" has also been rejected by the California Supreme Court, which has held that a business interference claim "does not require the existence of a legally binding contract." *Reeves,* 33 Cal. 4th at 1152; *see also Roth v. Rhodes,* 25 Cal. App. 4th 530, 546 (1994) (internal citations omitted) ("[The] business relationship with which the tortfeasor interfered . . . need not be a contractual relationship").

[8] "When interpreting state law, federal courts are bound by decisions of the state's highest court." *Lewis v. Tel. Employees Credit Union,* 87 F. 3d 1537, 1545 (9th Cir. 1996) (citation omitted). "'[I]n the absence of convincing evidence that the highest court of the state would decide differently . . . a federal court is obligated to follow the decisions of the state's intermediate courts.'" *See In re Kirkland,* 915 F. 2d 1236, 1239 (9th Cir. 1990) (internal citations omitted).

[9] *See also TPS Utilicom Servs., Inc. v. AT & T Corp.,* 223 F. Supp. 2d 1089, 1106 (C.D. Cal. 2002) ("[A business interference] claim . . . requires allegation of an ongoing economic relationship between the plaintiff and a third party with which the defendant has interfered."); *accord. GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.,* 2016 WL 6562064, at *11 (C.D. Cal. Apr. 21, 2016) (denying motion to dismiss business interference claim based on "ongoing relationship between [plaintiff] and its customers").

business interference claim based on existing "employment relation"); *SMC Networks Inc. v. Hitron Techs. Inc.,* 2013 WL 12114104, at *10 (C.D. Cal. Nov. 13, 2013) (denying motion for summary judgment regarding business interference claims based on existing "employer/employee relationships").

Under controlling California case law, Byton's business interference claim may be premised on the disruption of an existing employment relationship. Here, Byton has specifically alleged that Breitfeld solicited Byton's employees to resign from Byton and instead join Iconiq, thereby interfering with Byton's employment relationships. Thus, the disrupted business relationships that Byton has alleged are more than sufficient to state a claim for business interference.

## 2. Byton Has Properly Identified Economic Relationships with Former Employees Whom Breitfeld Solicited to Join Iconiq.

Next, Breitfeld argues that Byton has failed "to identify a specific relationship" that he disrupted. But Byton *has* identified the relationships in which Breitfeld interfered. Byton specifically identified "at-will employment relationships" between Byton and its former employees who "resigned after being solicited" by Breitfeld while he was still employed by Byton and still a director. *See* Compl. ¶¶ 42, 45, 51, 54. This is a discrete, readily-identifiable group of employees.

*Qwest Communications Corp. v. Herakles, LLC*, 2008 WL 783347 (E.D. Cal. Mar. 20, 2008) is instructive. Like Breitfeld, the defendants in that case argued that the plaintiff "failed to identify *specific* [third parties] with which it had a relationship." *Id.* at *11 (emphasis added). The court disagreed, holding that the plaintiffs' allegations of "existing relationships with a *finite group* of [third parties]" were "sufficient to state a viable cause of action," even though those third parties were not identified by name. *Id.* (emphasis added). Likewise, here, Byton has sufficiently pled its interference claims by identifying a "finite group" of former employees that Breitfeld lured to Iconiq. *See* Compl. ¶¶ 42, 45, 51, 54.

Other courts have reached similar conclusions. *See, e.g.*, *TYR Sport Inc. v. Warnaco Swimwear Inc.,* 679 F. Supp. 2d 1120, 1139 (C.D. Cal. 2009) (denying motion to dismiss interference with prospective economic advantage claim where defendants had argued that plaintiff "failed to plead the existence of a specific economic relationship," as an interference claim need not "allege the specific third party"); *Sebastian Int'l, Inc. v. Russolillo,* 162 F. Supp. 2d 1198, 1203 (C.D. Cal. 2001) ("Plaintiff does not have to identify the specific contractual relations which have allegedly been disrupted."); *Cook v. Winfrey*, 141 F. 3d 322, 328 (7th Cir. 1998) ("The Federal Rules do not require that [a] complaint allege the specific third party or class of third parties with whom [one] claims to have had a valid business expectancy.").[10]

Breitfeld relies on two inapposite cases—*SunPower Corp. v. SolarCity Corp.,* 2012 WL 6160472 (N.D. Cal. Dec. 11, 2012) and *Green Crush LLC v. Paradise Splash I, Inc.,* 2018 WL 4940825 (C.D. Cal. May 3, 2018)—to suggest that Byton should have identified the specific employees by name. But neither *SunPower* nor *Green Crush* imposed any such requirement. They merely held that the relationship must be *identifiable* by the defendant, and it is insufficient to allege interference with the marketplace or a class of "potential" third parties, such as "many customers" or unspecified "numerous customers and vendors." *SunPower,* 2012 WL 6160472, at *15; *Green Crush,* 2018 WL 4940825, at *10. This distinction is clear from *Westside Ctr. Assoc. v. Safeway Stores 23, Inc.,* 42 Cal.App.4th 507 (1996), which is the case that both *SunPower* and *Green Crush* rely upon in finding that a plaintiff must allege "an existing relationship with an identifiable" third party. In *Westside*, the California Court of Appeal explained that the term "*identifiable . . . does not mean the [third] party must have been identified*

---

[10] *See also Transcription Commc'ns Corp. v. John Muir Health*, 2009 WL 666943, at *10 (N.D. Cal. Mar. 13, 2009) (collecting cases) (denying motion to dismiss interference claim on ground that plaintiff did not name a third party).

*by name*; it [is] enough that the defendant was aware its actions would frustrate the legitimate expectations of a *specific*, albeit unnamed, [third party]." *Id.* at 527 (emphasis added); *see also Cheverez v. Plains All Am. Pipeline, LP,* 2016 WL 4771883, at *9 (C.D. Cal. Mar. 4, 2016) (denying motion to dismiss interference claim where plaintiffs "provided enough facts to plausibly allege that they had pre-existing, economically beneficial relationships with [unnamed yet identifiable] tourists, businesses, and employers," and distinguishing *SunPower* and *Westside Center* because they relied on allegations such as "many customers").

Unlike the plaintiff in *Westside Center*, Byton has alleged employment relationships with identifiable former Byton employees who Breitfeld lured to Iconiq (Compl. ¶¶ 42, 45, 51, 54)—not an interference with the market or with a virtually unlimited universe of "potential" people. Byton's omission of the names of the specific employees at issue has no bearing on the validity of its claim.

### 3.    Breitfeld's Interference Was Independently Wrongful.

Breitfeld also argues that any alleged interference must be "independently wrongful," but that Byton has failed to allege this is the case. Breitfeld is wrong again. "An act is independently wrongful" if it is "unlawful"—that is, "if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Hilderman v. Enea TekSci, Inc., Inc.,* 551 F. Supp. 2d 1183, 1197 (S.D. Cal. 2008) (citing *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134, 1159 (2003)). Here, Byton has pled that Breitfeld's interference with Byton's at-will employment relationships was also a breach of his fiduciary duties and duties of loyalty to Byton, since he interfered while still employed by Byton and still serving as its director. Compl. ¶ 45. Indeed, Byton's Third Cause of Action for Breach of Fiduciary Duties—which Breitfeld does not challenge—is premised on, among other things, Breitfeld's solicitation of Byton employees to leave Byton and join Iconiq. *Id.* ¶ 38. Ninth Circuit courts have found such behavior to be independently wrongful. *See, e.g., SMC Networks,* 2013 WL

12114104, at **10-11 ("[Defendant's] breach of his fiduciary duties to [plaintiff] by soliciting [third party employee] to work for [competitor] . . . would constitute a separate wrongful act").

Breitfeld's interference with Byton's at-will employment relationships was also "independently wrongful" because it was "interconnected with [Breitfeld's] larger goal" of misappropriating trade secrets, as alleged throughout the Complaint. *Popescu,* 1 Cal. App. 5th at 65; *see also GeoData Systems,* 2016 WL 6562064, at *12 ("[T]rade secret misappropriation, which GeoData has plausibly alleged . . . is sufficient to constitute an independent wrongful act for the tort of intentional interference with a prospective economic advantage."). After all, the Byton employees that Breitfeld lured to Iconiq also disclosed Byton's trade secrets and other confidential information to Iconiq. *See* Compl. ¶¶ 1, 16, 61, 62.

Further, the Ninth Circuit has held that a violation of California's Unfair Competition Law ("UCL") qualifies as an independently wrongful act. *See Hilderman,* 551 F. Supp. 2d at 1197 (citing *CRST Van Expedited, Inc. v. Werner Enter., Inc.,* 479 F. 3d 1099, 1110 (9th Cir. 2007). And here, Byton has pled a viable UCL claim premised on Breitfeld's breach of fiduciary duty as well as his interference in Byton's employment and contractual relations.

Accordingly, Byton has sufficiently pled an independent wrongful act, and Breitfeld's attempts to dismiss Byton's claims for interference with prospective economic advantage should be denied.

## B.   Byton Has Properly Stated Its Intentional Interference with Contractual Relations Claim (Count 6).

To state a claim for intentional interference with contractual relations, a plaintiff must plead "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual

relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *See Reeves*, 33 Cal. 4th at 1148.

Byton has pled all of these elements. As its complaint explains, Byton entered into confidentiality and specified term employment agreements—*i.e.*, valid contracts—with its former employees. Compl. ¶¶ 59, 63. Through his direct contact with the employees and executive role, Byton knew about these contracts (*id.* ¶¶ 60, 64), yet he successfully poached the employees for Iconiq and induced them to disclose Byton's confidential information in violation of their contracts. *Id.* ¶¶ 61-62, 65, 68. Breitfeld knew that the interference was certain to occur as a result of his direct solicitation of Byton employees. *Id.* ¶¶ 60, 61, 64, 65. And, of course, Byton was harmed as a proximate result of this conduct. *Id.* ¶¶ 67, 68.

Breitfeld argues that this claim should be dismissed because, he says, Byton does not allege a "specific" contract, Byton does not allege the contracts would not have been disrupted "but for" Breitfeld's involvement, and the contracts are illegal under California law. Each of these arguments is unavailing.

### 1.     Byton's Complaint Does Not Have to Name any Third Parties or Attach Contracts.

Breitfeld argues that Byton's contract interference claim fails because Byton does not "identify any specific contractual relationship." *See* Mot. at 12:16-17. But Byton *has* alleged that specific third parties—the former Byton employees who Breitfeld solicited to resign from Byton and to disclose Byton's confidential information—signed (a) confidentiality agreements prohibiting unauthorized disclosure of confidential information, including structural, aesthetic, safety, and hardware designs used in the electric vehicle body, chassis, cabin, powertrain, vehicle control systems, and entertainment experience systems (Compl. ¶¶ 9, 59-62); and (b) employment contracts specifying a term of employment, such that resignation prior to the expiration of that term would constitute a breach (*id.* ¶¶ 63-66).

-13-

In lieu of requesting discovery, Breitfeld seeks to extract details by way of a pleading motion. He wants Byton to (a) spell out the names of the employees *he* solicited, and (b) attach or state verbatim the confidentiality and employment agreements *he* caused them to breach. *See* Mot. at 13:15-16. Such specificity is not required at the pleading stage. *See Iqbal*, 556 U.S. at 678 (citation omitted) ("The pleading standard Rule 8 announces does not require 'detailed factual allegations . . .'"). In fact, the Ninth Circuit has confirmed that "[w]hen the defendant performs the act that causes the interference, the defendant need not know exactly who is a party to the contract, so long as he knows he is interfering with a contractual relationship." *Altera Corp. v. Clear Logic, Inc.,* 424 F. 3d 1079, 1092 (9th Cir. 2005) (observing that the Second Restatement of Torts, section 766, comment p states that "the person inducing a breach must be aware that there is a contract, but need not know the specific parties to the contract").

Again, *Qwest* is instructive. The defendants in *Qwest*—just like Breitfeld— challenged the plaintiff's contract interference claim "for failure to identify any specific [third parties]." *See* 2008 WL 783347, at *11. But like Byton, the plaintiff's "allegations point[ed] [d]efendants to a *discrete group of third parties with which [plaintiff] had already contracted*." *Id.* And just as Byton alleged that Breitfeld knew about the former Byton employees' contracts due to his direct contact with the employees and his executive role, the *Qwest* plaintiff "alleged[d] that [defendant] would have known of [the plaintiff's] contracts with its customers via information gleaned from its position as manager . . . ." *Id.* The *Qwest* court thus denied the defendant's motion to dismiss the plaintiff's contract interference claim, holding that, "for purposes of Rule 8, it is sufficient that Plaintiff identified 'third party customers.'" *Id.* This Court should deny Breitfeld's motion for the same reason.

Each of the decisions cited by Breitfeld is inapplicable here. *In re Centerstone Diamonds*, *Inc.* involved a deficient complaint that merely alleged "valid

contractual relationships" with "multiple customers and consignees" without providing *any* supporting facts. *See* 2014 WL 1330186, at *6 (C.D. Cal. April 2, 2014). Likewise, in *Green Crush*, the plaintiff failed to provide any identifying information regarding employees whose contracts were interfered with. *See* 2018 WL 4940825, at *3. And in *UMG Recordings*, *Inc. v. Global Eagle Entertainment, Inc.,* the court dismissed a contract interference counterclaim where the defendants simply referenced some "Airline Contracts" and alleged that plaintiffs "were attempting to enter into additional contracts." *See* 117 F. Supp. 3d 1092, 1115 (C.D. Cal. June 22, 2015). The *UMG Recordings* court did not hold that counterclaimants were required to identify third parties by name; rather, they were required to state sufficient "facts concerning the identity" of any third parties, and "the nature and extent of their relationship with" those third parties. *Id.*

In fact, Breitfeld's overreaching interpretation of *UMG Recordings* has been rejected by Ninth Circuit courts. As one court explained in denying a motion to dismiss a contractual interference claim, "the court in *UMG Recordings* held that the counterclaimants had to identify the third party or parties with whom they contracted" only because it needed to "determin[e] what contractual rights they possessed." *Unite Eurotherapy, Inc. v. Walgreen Co.,* 2017 WL 513008, at *3 (S.D. Cal. Feb. 7, 2017). So long as a plaintiff "has pleaded enough facts" to determine those rights, a plaintiff does not need to "specifically identify a third party." *Id.*; *see also ADG Concerns, Inc. v. Tsalevich LLC*, 2018 WL 4241967, at *8 (N.D. Cal. Aug. 31, 2018), report and recommendation adopted, 2018 WL 6615139 (N.D. Cal. Nov. 1, 2018) (plaintiff need not allege "specific contractual relations it entered into").

Here, Byton has adequately described the relevant employees and agreements. *See, e.g.*, Compl. ¶¶ 9, 59-62, 63-66. As a matter of law, Byton need not plead the names of the employees or attach their contracts. This Court should therefore deny Breitfeld's motion to dismiss Byton's contract interference claim.

**2.      Byton Has Properly Alleged that Breitfeld's Interference Caused the Breach or Disruption of the Confidentiality and Specified Term Employment Agreements.**

Breitfeld also argues that Byton fails to allege that *he* caused the breach or disruption of Byton's confidentiality and specified term employment agreements with former Byton employees. *See* Mot. at 14:8-15:22. But Byton has alleged that:

- Breitfeld was aware of these agreements by virtue of his executive management capacities at Byton and direct contact with the employees;

- While working at Byton yet looking forward to becoming Iconiq's CEO, Breitfeld solicited the employees to resign from Byton before the expiration of their respective terms in order to join Iconiq, and to disclose confidential information to Iconiq;

- Those employees did resign from Byton and join Iconiq shortly after Breitfeld's April 16, 2019 announcement that he had become Iconiq's CEO; and

- Those employees did disclose confidential information to Iconiq, as evidenced by Iconiq's concept electric car with features derived from Byton's confidential information. *See* Compl. ¶¶ 9, 13, 16-19, 59-66.

Based on these allegations, the connection between Breitfeld's conduct and the alleged breaches is obvious.

Breitfeld attempts to analogize this case to *Celebrity Chefs Tour, LLC v. Macy's, Inc.,* 16 F. Supp. 3d 1141, 1157 (S.D. Cal. 2014), but that case is neither controlling nor relevant. Unlike the factual allegations and timeline of events presented by Byton, the *Celebrity Chefs* plaintiffs merely alleged that Macy's "intentionally interfered with [] contracts and business relationships," without providing any background facts. *Id*. As such, the plaintiffs failed to plead facts that would have allowed the *Celebrity Chefs* court to make a reasonable inference that Macy's caused the alleged contract breaches. *Id*. In fact, the plaintiffs had pled

1   facts suggesting that Macy's had *not* caused the alleged breaches. *Id.* Byton's

2   allegations, in contrast, leave little room for alternative theories of causation. *See*

3   Compl. ¶¶ 9, 13, 16-19, 59-66.[11]

### 3.   Neither the Confidentiality nor the Term Employment Agreements Imposed an Illegal Restraint on Mobility.

6   Finally, Breitfeld argues that the confidentiality agreements and term

7   employment agreements imposed an illegal restraint on employee mobility under

8   California Business & Professions Code section 16600 (*see* Mot. at 15:23-18:19),

9   which states that "every contract by which anyone is restrained from engaging in a

10   lawful profession, trade, or business of any kind is to that extent void." But

11   Breitfeld fails to explain how the confidentiality or term employment agreements

12   actually restrained any employee from engaging in his or her profession, trade, or

13   business.[12]

14   First, Breitfeld speculates that the confidentiality agreements were illegal

15   because they were not limited to trade secrets and encompassed *other confidential*

16   *information*. This theory is wrong as a matter of law. "Employment restrictions

17   that serve to protect a former employer's trade secrets, *proprietary information,*

18   *and confidential information* are valid in California." *Latona v. Aetna U.S.*

19   *Healthcare Inc.,* 82 F. Supp. 2d 1089, 1096 (1999) (emphasis added) (citing to

20   *Muggill v. Reuben H. Donnelley Corp.,* 62 Cal. 2d 239, 242 (1965)); *see also, e.g.,*

21   *Fowler v. Varian Assocs., Inc.,* 196 Cal. App. 3d 34, 44 (1987) ("agreements

22

23   [11] Byton's allegations and timeline are also a world apart from the conclusory allegations in *Nat'l Funding, Inc. v. Commercial Credit Counseling Servs., Inc.,*
24   2018 WL 6444899, **5-6 (C.D. Cal. Nov. 6, 2018). The *National Funding* plaintiffs merely alleged that the defendants had induced "many borrower
25   customers belonging to National Funding" to "fraudulently breach . . . multiple Loan Agreements," and "the Loan Agreements would not have been breached or
26   disrupted but for Defendants' above conduct." *Id.*

27   [12] For instance, Breitfeld does not point to any particular prohibition on the use or disclosure of confidential information to illustrate how the confidentiality
28   agreements violated Section 16600.

designed to protect an employer's proprietary information do not violate section 16600"). Byton's confidentiality agreement with its former employees was therefore presumptively valid.

Second, Breitfeld's characterization that the confidentiality agreements "encompass nearly any information these unnamed employees came into contact with during their employment with Byton" (*see* Mot. at 18:9-10) is mistaken. Byton's confidentiality agreements were limited to prevent unauthorized disclosures of its vehicle designs, plans and strategies, business techniques, and business contacts. *See* Compl. ¶¶ 9-11. Since the agreements do not seek to restrict the use or disclosure of *any* information that its employees acquired, they do not violate Section 16600 as a matter of law. *See Gatan, Inc. v. Nion Co.*, 2017 WL 1196819, at *8 (N.D. Cal. Mar. 31, 2017) (denying motion to dismiss contract claim on basis of Section 16600 because "[Plaintiff] does not seek to restrict the use of <u>any</u> information that [defendant] acquired during the Agreement; the TAC only alleges a breach of paragraph 13 as to 'trade secrets' and 'confidential information' . . . [T]he prohibition on the use and disclosure confidential information [] is permissible in California.") (emphasis in original); *see also Allied N. Am. Ins. Brokerage Corp. of Cal. v. Woodruff-Sawyer,* 2005 WL 6583937, at *8 (N.D. Cal. Feb. 22, 2005) ("[S]ection 16600 does not void contractual provisions that restrict a former employee from using or disclosing a former employer's confidential or proprietary information").

In any event, the comparatively limited language of Byton's confidentiality agreements stands in stark contrast to each of the overbroad agreements and attempted protections appearing in the cases cited by Breitfeld. *See Action Learning Sys., Inc. v. Crowe,* 2014 WL 12564011, at *12 (C.D. Cal. Aug. 11, 2014) (agreement restricted employee use or disclosure of "all information and any idea in whatever form, tangible or intangible, pertaining in any manner to the

business of the Company . . .")[13]; *W. Air Charter, Inc. v. Schembari,* 2017 WL 7240775, at \*4 (C.D. Cal. Dec. 14, 2017) (agreement prohibited employees from ever using "all information that has or could have commercial value or other utility in the business of [the plaintiff]"); *Dowell v. Biosense Webster, Inc.,* 179 Cal. App. 4th 564, 568 (2009) (agreement prohibited use or disclosure of "information disclosed to [employee] or known by [employee] as a result of [employee's] employment by the company . . ."); *Metro Traffic Control, Inc. v. Shadow Traffic Network*, 22 Cal. App. 4th 853, 863 (1994) (rejecting attempt to characterize "unique format" and "peculiar idiosyncrasies regarding word choices" as trade secrets).

Third, Breitfeld argues that Byton's time limit restrictions in its employment agreements violate Section 16600 (*see* Mot. at 18:12-14), but that is simply incorrect. California law specifically allows for "employment for a specified term," which is governed by Labor Code sections 2922, 2924, 2925; *see Allied N. Am. Ins. Brokerage Corp. of Cal. v. Woodruff-Sawyer,* 2005 WL 2354119, at \*8, n. 13 (N.D. Cal. Sept. 26, 2005) ("While [defendant] also argues that the five-year [specified employment term] provision is unconscionable and therefore unenforceable, the Court disagrees. The California Labor code explicitly contemplates that an employer[] and employee will enter an employment contract for a 'specified term.' *See* Cal. Labor Code §§ 2922, 2925.").

Breitfeld tries to analogize the specified term employment agreements here to a *non-competition agreement*—a fundamentally different instrument—that prohibited traffic reporting business employees from working for a particular radio

---

[13] *Action Learning* concerned a preliminary injunction, not a motion to dismiss. That Breitfeld, on a *pleading motion*, would even cite to a case involving a court parsing through *evidence* further highlights the impropriety of the motion. Moreover, the *Action Learning* decision was premised on "supposed trade secrets [being characterized] at an almost-meaningless level of abstraction." *See* 2014 WL 12564011, at \*5. Here, in contrast, Breitfeld does not even challenge the sufficiency of Byton's trade-secrets claims.

station for one year. *See* Mot. at 18:12-19 (citing to *Metro Traffic Control,* 22 Cal.
App. 4th at 860). Breitfeld otherwise fails to cite to a single authority showing that
a specific term employment agreement is illegal.

In any event, the California Supreme Court has held that Section 16600 does
not apply where "either the defecting employee or the competitor uses unfair or
deceptive means to effectuate new employment . . ." *Reeves,* 33 Cal. 4th at 1150
(quotation omitted). Here, Byton has alleged exactly that: Breitfeld's solicitation of
the former Byton employees involved business interference, contract interference,
and a breach of Breitfeld's fiduciary duty to Byton, and it resulted in further
disclosure of Byton's trade secrets and confidential information. Accordingly,
Section 16600 does not apply. Breitfeld's motion to dismiss Byton's contract
interference claim under Business & Professions Code section 16600 and related
case law must be rejected.

## C. This Court Should Conclude that Byton's Conversion Claim (Count 7) Is Not Preempted.

Byton alleges that Breitfeld improperly converted "confidential" and
"proprietary" information in addition to the "trade secret" information he took. *See*
Compl. ¶¶ 70, 71. Nevertheless, Breitfeld argues that Byton's conversion claim is
preempted by the California Uniform Trade Secrets Act ("CUTSA") because it is
based on the "same nucleus of facts" as Byton's trade-secrets claim. *See* Mot. at
18:23-24.

Breitfeld fails to acknowledge that a split of authority divides the various
district courts on whether CUTSA preempts a conversion claim involving
confidential or proprietary information, as opposed to trade secrets. Indeed, a
number of courts have held that a conversion claim may be premised on
confidential information. *See, e.g., Ali v. Fasteners for Retail, Inc.,* 544 F. Supp. 2d
1064, 1072 (E.D. Cal. 2008) ("[I]t is still unclear how much of the allegedly
misappropriated information was a trade secret. Therefore, it would be premature

1  to hold that CUTSA preempts Plaintiff's conversion claim"); *Terarecon, Inc. v.*

2  *Fovia, Inc.,* 2006 WL 1867734, at *10 (N.D. Cal. July 6, 2006) (conversion claim

3  based on misappropriation of proprietary materials was not superseded because

4  plaintiff "did not incorporate by reference its allegation that its proprietary

5  materials are trade secrets in its proposed claim for conversion"; thus plaintiff's

6  conversion claim was "an alternative theory, which [plaintiff] [was] allowed to

7  plead.").[14]

8       Byton urges this Court to follow this line of cases for two reasons. First,

9  Byton should be allowed to plead alternative claims for relief in accordance with

10  Federal Rule of Civil Procedure 8(a)(3)—particularly because the distinction

11  between trade secrets and confidential information is not always precise. *See, e.g.,*

12  *Terarecon,* 2006 WL 1867734, at *10.

13       Second, it is appropriate to wait for summary judgment or trial—when the

14  Court can determine that the information in question is actually a trade secret,

15  rather than confidential information that does not rise to the level of a trade

16  secret—before dismissing conversion and other tort claims based on CUTSA

17  preemption. *See, e.g., Ali,* 544 F. Supp. 2d at 1072. At the pleading stage, where

18  "the status of the information is merely a matter of allegation and until the

19

20  ---
[14] *See also Strayfield Ltd. v. RF Biocidics, Inc.*, 2012 WL 170180, at *1 (E.D. Cal.

21  Jan. 19, 2012) (defendants failed to show that "CUTSA preempts common law
misappropriation claims and unfair competition claims that pertain to intellectual

22  property other than trade secrets"); *Phoenix Technologies Ltd. v. DeviceVM,* 2009
WL 4723400, at *5 (N.D. Cal. Dec. 8, 2009) (conversion claim not preempted

23  where employee's agreement with employer defined "'Proprietary Information' to
include forms of protected property interests other than trade secrets," and

24  defendants were therefore "on notice that they could be liable for claims in
addition to trade secrets violations"); *PQ Labs, Inc. v. Qi,* 2012 WL 2061527, at *5

25  (N.D. Cal. June 7, 2012) ("If a claim is based on confidential information other
than a trade secret, as that term is defined in CUTSA, it is not preempted"); *TMX*

26  *Funding, Inc. v. Impero Technologies, Inc.,* 2010 WL 2509979, at *5 (N.D. Cal.
June 17, 2010) (plaintiff could "continue to pursue [his] [tort claims] so long as the

27  confidential information at the foundation of the claim is not a trade secret, as that
term is defined in [the UTSA].").

28

distinction is made between [plaintiff's] allegedly misappropriated trade secret information and its confidential or non-confidential proprietary non-trade secret information, the question of preemption should not be addressed." *Amron Intern. Diving Supply, Inc. v. Hydrolinx Diving Commc'n, Inc.,* 2011 WL 5025178, at *10 (S.D. Cal. Oct. 21, 2011); *see also United States Legal Support, Inc. v. Hofioni,* 2013 WL 6844756, *11, (E.D. Cal. Dec. 20, 2013) ("The court is of the view that the question of supersession is properly addressed at summary judgment.").

In fact, in a similar case applying Washington state law, this Court rejected a UTSA preemption argument because "some of Defendants' conduct may not qualify as trade secret misappropriation [as opposed to misappropriation of other confidential information]. Because the Court cannot make that determination on the pleadings alone . . . dismissing Plaintiffs' claims on the basis of preemption would be premature." *See Earthbound Corp. & Intact Struct. Supply, LLC v. MiTek USA, Inc*., 2017 WL 2972847, at *4 (C.D. Cal. Feb. 10, 2017) (citations omitted). The same reasoning also applies here. Byton's conversion claim should stand.

### D.  Byton Has Properly Claimed a Violation of California's Unfair Competition Law (Count 8).

Breitfeld argues that Byton has failed to state a claim under California's Unfair Competition Law because the claim is based on the same nucleus of facts as the wrongdoing alleged in Byton's trade-secrets claim, and because Byton already has an adequate remedy at law. Both arguments fail.

### 1.  CUTSA Does Not Preempt a UCL Claim That Is Not Based on Misappropriation of Trade Secrets.

Both state and federal courts have held that CUTSA does not preempt a UCL claim based on conduct that is independent of the factual allegations underlying a claim for misappropriation of trade secrets. *See, e.g.*, *Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495, 499 (2013) (CUTSA does not preempt UCL claim based on wrongful conduct entirely independent of the misappropriation

of a trade secret, such as violation of the duty of loyalty); *Henry Schein, Inc. v. Cook,* 2017 WL 783617, at **2, 4 (N.D. Cal. March 1, 2017) (CUTSA does not preempt a UCL claim containing factual allegations underlying a business interference claim); *GeoData Systems*, 2016 WL 6562064, at **6-8 (denying motion to dismiss UCL claim on CUTSA preemption ground because the UCL claim arose from alleged conduct besides misappropriation, including contract interference).

Breitfeld conveniently ignores that Byton's UCL claim is based on allegations separate from those underpinning the trade-secrets claim. Byton's UCL claim specifically implicates Breitfeld's breach of fiduciary duties to Byton, as he was still a Byton director when he solicited former Byton employees to resign from Byton, join Iconiq, and disclose Byton's confidential information. *See* Compl. ¶¶ 36-40, 73, 74. Byton's UCL claim also concerns Breitfeld's interference in its contractual relations and prospective economic advantage, and does not depend on misappropriation of trade secrets. *Id.* ¶¶ 50-68, 73, 74. Accordingly, Byton's UCL claim is not preempted.

### 2. Money Damages Are an Inadequate Remedy Here, and Byton May Plead Alternative Types of Relief.

Breitfeld cites to *Moss v. Infinity Ins. Co.,* 197 F. Supp. 3d 1191, 1203 (N.D. Cal. 2016) for the proposition that Byton already has an adequate remedy at law, rendering its UCL claim superfluous. But Breitfeld misreads *Moss*. The *Moss* court did not hold that "[w]here . . . a plaintiff can seek monetary damages and injunctive relief if it prevails on other claims, it may not allege a UCL claim." *See* Mot. at 21:9-10. Rather, *Moss* was an insurance policy benefits case holding that a plaintiff cannot seek restitution or injunctive relief when money damages *would provide an adequate remedy at law*. *See* 197 F. Supp. 3d at 1203. *Heighley v. J.C. Penney Life Ins. Co.,* 257 F. Supp. 2d 1241, 1259–60 (C.D. Cal. 2003) is another insurance policy case having nothing to do with trade secrets.

Breitfeld does not cite to any trade-secrets-related case holding that money damages would be adequate, especially at the pleading stage. Here, as in other cases involving misappropriation of trade secrets or wrongful solicitation, money damages alone would *not* provide an adequate remedy. *See, e.g., B. Aronson, Inc. v. Bradshaw Int'l, Inc.,* 2011 WL 1583938, at *8 (C.D. Cal. Apr. 25, 2011) ("The Court finds that plaintiffs have sufficiently alleged the inadequacy of a remedy at law, and that their allegations of misappropriation of trade secrets are sufficient to allege a predicate unlawful act."). Indeed, Byton has properly alleged that it will suffer harm until Breitfeld's conduct is enjoined. *See* Compl. ¶¶ 26, 34, 40, Prayer for Relief ¶ 1.

Moreover, assessing whether a plaintiff has an adequate remedy at law with respect to a UCL claim is improper at the pleading stage. *See Eastman v. Allstate Ins. Co.,* 2014 WL 5355036, at *5 (S.D. Cal. Oct. 20, 2014) (declining to dismiss UCL claim for restitution because "there is no requirement that Plaintiffs must specify how they intend to calculate their monetary remedies at the pleading stage. *See* Fed.R.Civ.P. 8(a)(3) (requiring that a pleading contain 'a demand for the relief sought, which may include relief in the alternative or different types of relief')").

## IV.   CONCLUSION

Byton requests that the Court deny Breitfeld's motion to dismiss in its entirety.

Dated:  January 31, 2020                    MAYER BROWN LLP


                                            By: /s/ John Nadolenco
                                                 John Nadolenco

                                            Attorneys for Plaintiffs
                                            Byton North America Corporation and
                                            Byton Limited