1  BAKER MARQUART LLP
2  Ryan Baker (Bar No. 214036)
      rbaker@bakermarquart.com
3  Donald Pepperman (Bar No. 109809)
      dpepperman@bakermarquart.com
4  Scott M. Malzahn (Bar No. 229204)
      smalzahn@bakermarquart.com
5
6  Teresa L. Huggins (Bar No. 263257)
      thuggins@bakermarquart.com
7  777 S. Figueroa St., Suite 2850
8  Los Angeles, California 90017
   Telephone: (424) 652-7800
9  Facsimile: (424) 652-7850

10
   *Attorneys for Defendant*
11 *Carsten Breitfeld*

12            UNITED STATES DISTRICT COURT

13            CENTRAL DISTRICT OF CALIFORNIA

14                 WESTERN DIVISION

15 BYTON NORTH AMERICA            Case No.: 2-19-cv-10563-DMG-JEM
16 CORPORATION, a Delaware
   corporation; and BYTON LIMITED, a   **REPLY BRIEF IN SUPPORT OF**
17 Hong Kong company,                **DEFENDANT CARSTEN**
                                      **BREITFELD'S MOTION TO**
18              Plaintiffs,           **DISMISS PLAINTIFFS' FOURTH,**
                                      **FIFTH, SIXTH, SEVENTH AND**
19                                    **EIGHTH CAUSES OF ACTION**
          v.
20
21 ICONIQ MOTORS NORTH
22 AMERICA, INC., a California         Date: February 28, 2020
   corporation; CARSTEN BREITFELD,    Time: 9:30 a.m.
23 an individual; and DOES 1 through 10,  Ctrm.: 8C
   inclusive,
24
25           Defendants.
26

27

28

REPLY BRIEF IN SUPPORT OF CARSTEN BREITFELD'S MOTION TO DISMISS

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................1

ARGUMENT ........................................................................................................................2

   A.  Plaintiffs Fail to Give Defendant Fair Notice of the Intentional and Negligent
       Interference with Prospective Economic Advantage Claims ....................................2

     1.  Plaintiffs Fail to Allege a Lost Business Expectancy .......................................2

     2.  Plaintiffs Do Not Identify Any Disrupted Relationship ....................................5

     3.  Plaintiffs Fail to Allege Independently Wrongful Conduct................................8

   B.  Plaintiffs Fail to Plead Intentional Interference with Contractual Relationship...................10

     1.  Plaintiffs Fail to Allege Causation.................................................................10

     2.  Plaintiffs Fail to Identify Any Specific Contractual Relationship...................13

     3.  The Agreements Alleged as the Basis of Plaintiffs' Interference Claims
        are Illegal in Violation of Business and Professions Code Section 16600......................15

   C.  Plaintiffs' Conversion and UCL Claims Are Impermissibly Duplicative of
       Their Other Claims .................................................................................................17

     1.  CUTSA Preempts Plaintiffs' Conversion and UCL Claims.............................17

     2.  Plaintiffs' UCL Claim Impermissibly Seeks Duplicative Relief.....................19

CONCLUSION....................................................................................................................20

REPLY BRIEF IN SUPPORT OF CARSTEN BREITFELD'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AlterG, Inc. v. Boost Treadmills, LLC*,
    388 F. Supp. 3d 1133 (N.D. Cal. 2019) ..................................................................6

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*,
    2013 WL 3460707 (N.D. Cal., July 9, 2013) ......................................................6

*Bancroft-Whitney Co. v. Glen*,
    64 Cal. 2d 327 (1966) ..........................................................................................8

*Barker v. Insight Global, LLC*,
    2017 WL 10504692 (N.D. Cal., Nov. 21, 2017) ................................................9

*Cal-Cleve, Ltd. v. Wrag-time Air Freight, Inc.*,
    2005 WL 8157876 (C.D. Cal., June 1, 2005) ......................................................2

*Calsoft Labs, Inc. v. Panchumarthi*,
    2019 WL 5811300 (N.D. Cal., Nov. 7, 2019) ....................................................14

*Celebrity Chefs Tour, LLC v. Macy's, Inc.*,
    16 F. Supp. 3d 1141 (S.D. Cal. 2014)............................................................3, 10, 11

*In re Centerstone Diamonds, Inc.*,
    2014 WL 1330186 (C.D. Cal. Apr. 2, 2014) ....................................................13

*Cheverez v. Plains All American Pipeline, LP*,
    2016 WL 4771883 (C.D. Cal., Mar. 4, 2016)....................................................0, 5

*Damabeh v. 7-Eleven, Inc.*,
    2013 WL 1915867 (N.D. Cal. May 8, 2013) ....................................................6, 7

*Diodes, Inc. v. Franzen*,
    260 Cal. App. 2d 244 (1968) ..............................................................................6

*Dowell v. Biosense Webster, Inc.*,
    179 Cal. App. 2d 564 (2009) ........................................................................14, 15

*Dryden v. Tri-Valley Growers*,
    65 Cal. App. 3d 990 (1977) ................................................................................11

*Green Crush, LLC v. Paradise Splash I, Inc.*,
    2018 WL 4940825 (C.D. Cal., May 3, 2018) ..........................................*passim*

*Kolani v. Gluska*,
    64 Cal. App. 4th 402 (1998) ..............................................................................15

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ................................................................................8

*Mattel, Inc. v. MGA Entertainment, Inc.*,
   782 F. Supp. 2d 911 (C.D. Cal. 2011) ........................................................16

*National Funding, Inc. v. Commercial Credit Counseling Services, Inc.*,
   2018 WL 6444899 (C.D. Cal., Nov. 6, 2018) .............................................11

*Nott v. IBM Corp.*,
   2011 WL 13217659 (C.D. Cal., Apr. 11, 2011) .........................................10

*O'Connor, v. Uber Technologies, Inc.*,
   58 F. Supp. 3d 989 (N.D. Cal. 2014) ............................................................2

*Personal Electric Transports, Inc. v. Office of the United States Trustees*,
   313 Fed. Appx. 51 (9th Cir. 2009)...............................................................16

*Philips v. Ford Motor Company*,
   2015 WL 4111448 (N.D. Cal. July 7, 2015) ...............................................19

*Popescu v. Apple, Inc.*,
   1 Cal. App. 5th 39 (2016) ..............................................................................2

*R Power Biofuels, LLC v. Chemex LLC*,
   2016 WL 6663002 (N.D. Cal., Nov. 11, 2016) ............................................6

*Reeves v. Hanlon*,
   33 Cal. 4th 1140 (2004) ...................................................................1, 3, 8, 11

*Renaissance Realty v. Soriano*,
   120 Cal. App. 3d Supp. 13 (1981) ..............................................................16

*Sebastian International, Inc. v. Russolillo*,
   162 F. Supp. 2d 1198 (C.D. Cal. 2001) ........................................................5

*Silvaco Data Systems v. Intel Corp.*,
   184 Cal. App. 4th 210 (2010) ..................................................................1, 16

*SMC Networks v. Hitron Technologies, Inc.*,
   2013 WL 12114104 (C.D. Cal., Nov. 13, 2013) .......................................2, 8

*Terarecon, Inc. v. Fovia, Inc.*,
   2006 WL 1867734 (N.D. Cal., July 6, 2006) .............................................17

*Transcription Communications Corp. v. John Muir Health*,
   2009 WL 666943 (N.D. Cal., Mar. 13, 2009) ..............................................5

*TYR Sport, Inc. v. Warnaco Swimwear, Inc.*,
   679 F. Supp. 2d 1120 (C.D. Cal. 2009) ........................................................5

REPLY BRIEF IN SUPPORT OF CARSTEN BREITFELD'S MOTION TO DISMISS

*UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*,
   117 F. Supp. 3d 1092 (C.D. Cal. 2015) .............................................................9, 12, 13

*Western Air Charter, Inc. v. Schembari*,
   2017 WL 7240775 (C.D. Cal., Dec. 14, 2017) ...........................................................15

*Wynn v. National Broadcasting Co., Inc.*,
   234 F. Supp. 2d 1067 (C.D. Cal., 2002) .....................................................................10

*Youst v. Longo*,
   43 Cal. 3d 64 (1987) ......................................................................................................2

*Zapata Fonseca v. Goya Foods, Inc.*,
   2016 WL 4698942 (N.D. Cal., Sept. 8, 2016) ......................................................18, 19

REPLY BRIEF IN SUPPORT OF CARSTEN BREITFELD'S MOTION TO DISMISS

## I.   **INTRODUCTION**

Byton North America Corporation and Byton Limited (together, "Plaintiffs" or "Byton") purport to oppose Defendant Carsten Breitfeld's ("Defendant's" or "Dr. Breitfeld's") Federal Rule 12(b)(6) Motion to Dismiss ("Motion"), but the filed Opposition addresses conveniently recharacterized argument that almost entirely ducks what is argued in the Motion.  Byton's argument by strawman is unavailing. Through bolstered by serial citations that appear to pass any quantitative standard, these citations are largely inapposite and wither under the slightest qualitative scrutiny.  Byton leaves intact and essentially unopposed the majority of Dr. Breitfeld's Motion.  The Motion should be granted in its entirety.

For example, Byton is simply wrong when it says "Breitfeld does not contend that Byton pled legal conclusions." (Opp. 5.)  That is *all* Byton has plead, and exactly what Dr. Breitfeld argued in his Motion.  (*See e.g.* Mot. 14 ("conclusory allegations will not suffice").)  Byton then argues that an existing, at-will employment relationship "*may* be actionable" as intentional interference with prospective economic advantage.  (Opp. 7 (emphasis added).)  But what Dr. Breitfeld actually argued was that "Plaintiffs allege Defendants interfered with their already existing relationships with their former employees, *but fail to identify any prospective business opportunity they lost as a result of Defendants' purported interference*." (Mot. at 8 (emphasis added).)  The California Supreme Court has plainly held: "a defendant is not subject to liability for intentional interference if the interference consists merely of extending a job offer that induces an employee to terminate his or her at-will employment."  *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1152-1153 (2004). But that is all Plaintiffs allege.

Byton also argues that its intentional and negligent interference with prospective advantage and intentional interference with contractual relations claims do not require identification of specific employee or contractual relationships subject to the interference.  (Opp. 9-10, 13-15.)  But courts that have allowed such claims to

proceed with unnamed individuals or contracts have done so where there were enough factual allegations to otherwise put the defendant on notice of the claim -- which is not the case here.  *See e.g. SunPower Corp. v. SolarCity*," 2012 WL 6160472, at *15 (N.D. Cal. Dec. 11, 2012).  Byton also fails to allege Dr. Breitfeld's actions caused any employee to do anything, or even to allege a valid contract in support of its intentional interference with contractual relations claim.

Byton's conversion and UCL claims are preempted, not because they allege confidential and proprietary information, as Byton argues (Opp. 20), but because they are wholly duplicative of Byton's CUTSA claim.  *See Silvaco Data Systems v. Intel Corp.*, 184 Cal. App. 4th 210, 240 (2010).  Byton's UCL claim is also impermissibly duplicative of its other causes of action.  *See Green Crush*, *LLC v. Paradise Splash I, Inc*., 2018 WL 4940825, at *6 (C.D. Cal., May 3, 2018).

Contrary to Byton's assertion (Opp. 5), Plaintiffs' failure to properly allege these claims deprives Dr. Bretifeld of fair notice.  Dr. Breitfeld respectfully requests that this Court dismiss Dr. Breitfeld's fourth, fifth, sixth, seventh and eighth claims for relief.

## II.   ARGUMENT

### A.   Plaintiffs Fail to Give Defendant Fair Notice of the Intentional and Negligent Interference with Prospective Economic Advantage Claims

#### 1.   Plaintiffs Fail to Allege a Lost Business Expectancy

Byton argues it has properly pled claims for intentional and negligent interference with prospective economic advantage because "inducing the termination of an at-will employment relation *may* be actionable" under the tort.  (Opp. 7 (quoting *Reeves*, 33 Cal. 4th at 1144) (emphasis added).)  But any relationship *may* be actionable, if properly pled.  Dr. Breitfeld never argued otherwise.

Plaintiffs' claims do not fail simply because they involve existing at-will employees.  Rather, as Dr. Breitfeld argued in his Motion, they fail because "Plaintiffs allege Defendants interfered with their already existing relationships with

their former employees, but fail to identify any prospective business opportunity they lost as a result of Defendants' purported interference." (Mot. at 8.) For example, as Dr. Breitfeld noted, "Plaintiffs do not allege BYTON would have entered into a written contract with any of the employees but for the Defendants' alleged interference." (*Id*.)[1]

Plaintiffs do not dispute that they must allege a lost business opportunity as a result of Defendant's purported interference. To the contrary, in each and every case Plaintiffs cite, the plaintiff in question alleged it lost a business opportunity as a result of the defendant's purported interference. *See e.g. O'Connor, v. Uber Techs, Inc*., 58 F. Supp. 3d 989, 994 (N.D. Cal. 2014) (defendants' interference caused lost expectancy of driver tips).[2]

Byton fails to distinguish *SOS Co., Inc. v. E-Collar Technologies, Inc*. (Opp. 7.) *SOS* did not say that interference with existing employee relationships could never be the basis of an intentional interference claim. (*Id*.) Rather, the *SOS* court found plaintiffs' allegations that defendants interfered with plaintiffs' existing employees insufficient because plaintiffs did not allege they had lost any prospective

---

[1] In another strawman attempt, Byton reframes Dr. Breitfeld's argument as stating that Dr. Breitfeld argued an interfered-with contract is a requirement of the tort. (Opp. 8, n. 7.) Dr. Breitfeld made no such claim anywhere in his Motion. (Mot. 1-24.) Dr. Breitfeld merely used the interfered-with contract as one example of how Plaintiffs could have alleged Defendants interfered with a prospective business advantage, but failed to do so. (*Id*. 8.); *see Youst v. Longo*, 43 Cal. 3d 64, 75 (1987) (thwarted contract can be basis for demonstrating lost business expectancy).

[2] None of Plaintiffs' remaining cases dispense with the requirement that a plaintiff allege a lost business expectancy. *See Cal-Cleve, Ltd. v. Wrag-time Air Freight, Inc*., 2005 WL 8157876, at *1 (C.D. Cal., June 1, 2005) (defendants interfered with expectancy of marketplace competition); *SMC Networks v. Hitron Techs., Inc*., 2013 WL 12114104, at *11 (C.D. Cal., Nov. 13, 2013) (defendant interfered with sales expectancy); *Popescu v. Apple, Inc.*, 1 Cal. App. 5th 39, 49 (2016) (defendants interfered with  plaintiff's job expectancy).

1  business opportunity due to purported interference.  2017 WL 5714716, at *9-10.  As

2  the *SOS* court put it, because "lost business opportunities do not appear to be the basis

3  of this claim; rather, the claim, as pled, seems to be that Defendants interfered with

4  [plaintiffs'] existing relationship with its employees," plaintiffs' claim failed as a

5  matter of law.  *Id*. at *10.

6       Indeed, in *Reeves v. Hanlon,* relied on by Plaintiff (Opp. 7), the court held, "a

7  defendant is *not* subject to liability for interference with prospective economic

8  advantage if the interference consists merely of extending a job offer that induces an

9  employee to terminate his or her at-will employment."  33 Cal. 4th at 1153 (emphasis

10  added).  *Reeves* found defendants liable for interfering with an at-will employment

11  relation because they engaged in "*unlawful* acts."  *Id*. at 1155. In that case, the

12  defendants had "mounted a campaign against the [plaintiffs'] firm involving

13  destruction of computer records, misuse of confidential information, and unethical

14  conduct," which caused employees to quit and "unfairly impaired [the] firm's ability

15  to retain its employees."  *Id*. at 1147.  As a result of defendants' actions in *Reeves*,

16  plaintiffs lost the business expectancy of clients and revenue.  *Id.  Reeves* did not

17  dispense with the requirement of business expectancy; it affirmed that essential

18  element.  *Id*. at 1146-47.

19       Plaintiffs do not satisfy the standard *Reeves* confirms; instead, they allege only

20  that Defendant interfered with existing employee relationships by soliciting

21  employees to work at Iconiq Motors North America, Inc. ("Iconiq").  (Compl. ¶¶ 42-

22  49.)  Plaintiffs do not claim any lost business expectancy as a result of Dr. Breitfeld's

23  purported interference.  (*Id*.)  These allegations are insufficient.  *See Celebrity Chefs*

24  *Tour, LLC v. Macy's, Inc*., 16 F. Supp. 3d 1141, 1158 (S.D. Cal. 2014) (dismissing

25  claim for interference with prospective economic advantage because plaintiff failed to

26  allege a "lost economic advantage would have been realized but for the defendant's

27  interference") (quotations and citations omitted).  The interference claims should be

28  dismissed.

## 2. <u>Plaintiffs Do Not Identify Any Disrupted Relationship</u>

Plaintiffs also fail to identify the specific employee relationships Defendant is alleged to have interfered with.  Plaintiffs argue they do not have to provide the names of the individual employees at issue, but courts that have allowed the claim to proceed without naming specific individuals have done so because the plaintiff provided enough "specific facts regarding with which [] relationship Defendants' conduct interfered" so as to put the defendant on notice of the claim.  *SunPower,* 2012 WL 6160472, at \*15 (N.D. Cal., Dec. 11, 2012).  For example, in *Ramona Manor Convalescent Hospital v. Care Enterprises,* the court held that an injured party's specific identity was not required to state a claim because the defendant, a holdover lessee, had knowledge of the relationship between the owner of nursing home and "a specific, albeit unnamed, new lessee" that he was alleged to have interfered with.  177 Cal. App. 3d 1120, 1133 (1986).

Plaintiffs' attempt to distinguish Dr. Breitfeld's authority on the grounds that those cases did not require a specific individual to be named thus fails.  (Opp. 10.) In *SunPower,* the court refused to uphold an interference claim where the plaintiff failed to identify "any specific [] relationship with which [the defendant] interfered, *nor alleged any facts* regarding how [the defendant] interfered with those [] relationships."  2012 WL 6160472, at \*15 (emphasis added).  Similarly, in *Westside Ctr. Associates v. Safeway Stores 23, Inc.*, the court dismissed an intentional interference claim where plaintiff failed to provide specific facts as to "an identifiable buyer" *or* to specify the "factual basis upon which to determine whether the plaintiff was likely to have actually received the expected benefit."  42 Cal. App. 4th 507, 527 (1996).  Here, Plaintiffs only allege that Dr. Breitfeld solicited unspecified at-will employees for employment, but fail to provide any facts as to how Dr. Breitfeld interfered with those relationships so as to allow him to deduce which relationships are at issue.  This is inadequate.

In all of Plaintiffs' Ninth Circuit authority, the plaintiff alleged facts sufficient

to put the defendant on notice of the relationship with which defendant was alleged to have interfered; the very thing Plaintiffs fail to do here.  For example, in *Qwest Communications Corp. v. Herakles, LLC*, the court allowed a claim for intentional interference with prospective economic advantage to proceed without naming names because plaintiff alleged defendant "had access to the list of prospective customers" he was alleged to have interfered with.  2008 WL 783347, at *11 (E.D. Cal., Mar. 20, 2008).[3]  Plaintiffs' other Ninth Circuit authority is similarly factually inapposite.[4]

Plaintiffs argue that Dr. Breitfeld must necessarily be aware of the "discrete, readily identifiable group of employees" who left Byton for Iconic.  (Opp. 9.)  But the employees are neither discrete nor readily identifiable.  Plaintiffs give no indication

---

[3]  After arguing that the Court should disregard Dr. Breitfeld's citations to *SOS* because it is a "non-binding, unpublished district court case," Plaintiffs turn around and ask this Court to rely on *Qwest*, 2008 WL 783347 – a non-binding, unpublished district court case.  (*Compare* Opp. 7 *with* Opp. 9.)  Byton cannot have it both ways: it cannot ask the Court to disregard Dr. Breitfeld's unpublished authority, and then ask the Court to rely on Byton's unpublished authority.  In fact, Byton relies on unpublished authority throughout its Opposition – 18 cases, by Dr. Breitfeld's count.  (*See* Opp. 8-9, 11-12, 14-15, 18-19, 21-24.)  By Plaintiffs' own logic, all of this authority (and presumably the arguments on which it is based) must be disregarded by this Court.  (*See* Opp. 7.)

[4] *See Sebastian Int'l, Inc. v. Russolillo*, 162 F. Supp. 2d 1198, 1204 (C.D. Cal. 2001) (interference with *contractual* relations claim allowed to stand where specific relations were not identified because plaintiff "provided Defendants with a representative list of salons and distributors with whom [plaintiff] had contractual relations); *TYR Sport, Inc. v. Warnaco Swimwear, Inc*., 679 F. Supp. 2d 1120, 1140 (C.D. Cal. 2009) (relying on Seventh Circuit authority to hold plaintiff was on notice of claim because the specific "economic expectancy" lost was alleged); *Transcription Commc'ns Corp. v. John Muir Health*, 2009 WL 666943, at *10 (N.D. Cal., Mar. 13, 2009) (allegations that "JMH had a contractual relationship with TCC, or, at least, was aware that JMH had a contractual relationship with a party other than Focus" was sufficiently particular to put defendant on notice of the claim); *Cheverez v. Plains All American Pipeline, LP*, 2016 WL 4771883, at *9 (C.D. Cal., Mar. 4, 2016) (specific relationships need not be identified because the complaint was "replete with examples that render its relationship with those parties plausible").

of how many employees they allege left Byton for Iconiq, or how many of that group allegedly did so as a result of anything Dr. Breitfeld purportedly did. *See e.g. R Power Biofuels, LLC v. Chemex LLC*, 2016 WL 6663002, at *17 (N.D. Cal., Nov. 11, 2016) (dismissing intentional interference with prospective economic advantage tort where plaintiff did not identify "specific companies" alleged to be interfered with and "from Plaintiff's allegations it was impossible to even tell how many such relationships existed"). Indeed, Plaintiffs fail to allege any facts that would allow Dr. Breitfeld to deduce what relationships are at issue. Plaintiffs do not allege a single action Dr. Breitfeld took to induce any employee to quit his employment. Nor do they allege any business expectancy they lost as a result of any of those actions. *See Amaretto Ranch Breedables, LLC v. Ozimals, Inc*., 2013 WL 3460707, at *7 (N.D. Cal., July 9, 2013) ("[T]o state a claim for intentional interference with prospective business advantage, it is essential that the plaintiff *allege facts* showing that the defendant interfered with the plaintiff's relationship with a particular individual.") (emphasis added).[5]

In any given industry, particularly a nascent and rapidly growing industry such as electric automobiles, employees frequently change jobs. Byton's attempt to hold Dr. Breitfeld liable for some unidentified harm as a result of an unknown group of people changing jobs must be categorically rejected. *See e.g. Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 255 (1968) ("The interests of the employee in his own mobility

---

[5] *See also Damabeh v. 7-Eleven, Inc*., 2013 WL 1915867, at *10 (N.D. Cal. May 8, 2013) ("to state a claim for intentional interference with prospective business advantage, it is essential that the Plaintiff *allege facts* showing that Defendant interfered with Plaintiff's relationship with a particular individual") (emphasis added); *AlterG, Inc. v. Boost Treadmills, LLC*, 388 F. Supp. 3d 1133, 1152 (N.D. Cal. 2019) (dismissing claim for intentional interference with prospective economic advantage where complaint failed to identify specific parties *or to allege any facts* suggesting the economic relationship in question "contain[ed] the probability of future economic benefit to [plaintiff]").

REPLY BRIEF IN SUPPORT OF CARSTEN BREITFELD'S MOTION TO DISMISS

and betterment are deemed paramount to the competitive interests of the employers, where neither the employee nor his new employer has committed any illegal act accompanying the employment change.").

Essentially, Byton argues that Dr. Breitfeld should just know what he did. (Opp. 2 (Byton does not have to identify specific relationships because "Breitfeld, as the party engaged in these activities, is in a better position than Byton to know the exact details of his misconduct.").) Plaintiffs provide no authority that this is the proper pleading standard for the tort. Defendant is aware of no such authority.

Contrary to Plaintiffs' claim (Opp. 2), Plaintiffs have not met the standards of notice pleading – Dr. Breitfeld is only on notice that Byton seeks to blame him for some unknown group of people changing jobs. This is not sufficient notice. *Damabeh,* 2013 WL 1915867, at *10 (dismissing interference claim for failure to identify specific employee relationships and rejecting claim that those relationships "may be uncovered through discovery"; "Plaintiff bears the burden of alleging a plausible claim for relief" under Rule 8).[6]

### 3.   Plaintiffs Fail to Allege Independently Wrongful Conduct

Byton also argues that it has alleged independently wrongful conduct because it alleges that Dr. Breitfeld's purported interference was (1) a breach of his fiduciary duties to Byton, (2) "interconnected with [Dr. Breitfeld's] larger goal" of misappropriating trade secrets, and (3) a violation of the UCL. (Opp. 11-12.) All three arguments fail.

First, while Byton is correct that a breach of fiduciary duty *may* constitute an independently wrongful act, Byton's allegations that Dr. Breitfeld breached his

---

[6] Dr. Breitfeld asked Plaintiffs to identify the specific relationships he was alleged to have interfered with during meet and confer. (Declaration of Teresa L. Huggins in support of Reply ¶ 2.). Plaintiffs refused to do so. (*Id*.) Plaintiffs have failed to offer any explanation why they cannot identify the specific employee relationships that Defendants purportedly interfered with, or provide facts that would put Dr. Breitfeld on notice of those relationships.

1   fiduciary duties by poaching its employees are insufficient here.  (Opp. 11.)  Under

2   California law, the "mere fact that [an] officer makes preparations to compete before

3   he resigns his office is not sufficient to constitute a breach of [fiduciary] duty," even

4   if such preparations include "offer[ing] employees of his specific corporation jobs

5   with a competing enterprise he is preparing to join."  *See Bancroft-Whitney Co. v.*

6   *Glen*, 64 Cal. 2d 327, 345-46 (1966).  Indeed, California law is clear*:* absent

7   allegations of unfair or deceptive means, "a defendant is not subject to liability for

8   intentional interference if the interference consists merely of extending a job offer

9   that induces an employee to terminate his or her at-will employment."  *Reeves*, 33

10  Cal. 4th at 1153 (claim requires allegations of wrongdoing beyond the interference

11  itself).  Plaintiffs do not make any such allegations here.

12        Plaintiffs try to end-run California law, citing to *SMC Networks v. Hitron*

13  *Technologies, Inc*. for the proposition that mere solicitation of employees is sufficient

14  to state a claim for breach of fiduciary duty, which is sufficient to satisfy the

15  independently wrongful prong of the tort.  (Opp. 11.)  But the fiduciary duty claim in

16  *SMC Networks* was decided under Delaware law.  2013 WL 12114104, at *8 ("Court

17  will apply Delaware law to the entirety of Plaintiff's breach of fiduciary duty

18  claim.").  Byton provides no on-point authority that merely soliciting a former

19  employer's employees, without a contractual obligation or additional allegations of

20  deceptive or unfair means, constitutes a breach of fiduciary duty sufficient to

21  constitute an independently wrongful act under the tort.  *See Bancroft*, 64 Cal. 2d at

22  354-47; *Reeves*, 33 Cal. 4th at 1153.

23        Second, Plaintiffs posit that Dr. Breitfeld's solicitation of employees is

24  "independently wrongful" because it is "interconnected" to his "larger goal" of

25  misappropriating their trade secrets, arguing that, "[a]fter all, the Byton employees

26  that Breitfeld lured to Iconiq also disclosed Byton's trade secrets and other

27  confidential information to Iconiq."  (Opp. 12.)  But these allegations refer to what

28  Byton's *employees* purportedly did, not any act by Dr. Breitfeld.  *See Korea Supply*

1    *Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1158 (2003) ("a plaintiff that

2    chooses to bring a claim for interference with prospective economic advantage has a

3    more rigorous pleading burden since it must show that the *defendant's* conduct was

4    independently wrongful") (emphasis added).  Moreover, where, as here, CUTSA is

5    alleged, misappropriation of trade secrets "cannot constitute an independently

6    wrongful act" as a matter of law.  *See Barker v. Insight Global, LLC*, 2017 WL

7    10504692, at *3-5 (N.D. Cal., Nov. 21, 2017) ("alleged misuse of confidential

8    information" could not constitute independently wrongful act for interference claim

9    because it was preempted by CUTSA).

10         Finally, Plaintiffs' UCL claim cannot be the independently wrongful act,

11   because Plaintiffs' UCL claim relies on the same preempted misappropriation of

12   trade secrets allegations.  *See id.*  Plaintiffs' UCL claim also impermissibly seeks

13   duplicative relief.  *See Green Crush*, 2018 WL 4940825, at *6 (dismissing UCL

14   claim as duplicative of other claims).  Byton cannot use its own insufficient UCL

15   allegations to satisfy the independently wrongful element of this tort.  *See UMG*

16   *Recordings, Inc. v. Global Eagle Entertainment, Inc.,* 117 F. Supp. 3d 1092, 1117

17   (C.D. Cal. 2015) (improperly pled fraud claim could not form basis of independently

18   wrongful conduct in claim for interference with prospective economic advantage).

19         Absent an independently wrongful act, Plaintiffs' interference claims fail as a

20   matter of law.

21   **B.   Plaintiffs Fail to Plead Intentional Interference with Contractual**

22   **Relations**

23        1.   Plaintiffs Fail to Allege Causation

24         Attempting to satisfy causation, Byton alleges Defendant was aware of Byton's

25   employment and confidentiality agreements with its employees, that Defendant

26   solicited Byton employees to work at Iconiq, and that Byton employees resigned

27   from Byton and disclosed its confidential information in breach of the agreements.

28   (Opp. 16.)  But Byton's allegations are merely correlative.  The tort requires a

1  plaintiff to allege that a defendant's actions *caused* the purported disruption of the

2  contractual relationship.

3  In *Fortinet, Inc. v. FireEye, Inc*., the court dismissed an intentional interference

4  with contractual relations claim where, as here, "Plaintiff provide[d] conclusory

5  allegations that Defendant 'solicited, induced and encouraged'" plaintiff's employees

6  to breach their contracts, but "provide[d] no factual allegations as to how."  2014 WL

7  4955087, at *9 (N.D. Cal., Sept. 30, 2014); *Nott v. IBM Corp.*, 2011 WL 13217659,

8  at *9 (C.D. Cal., Apr. 11, 2011) (dismissing intentional interference with contractual

9  relations claim where the plaintiff alleged the defendant "intentionally and

10  wrongfully interfered" with a contract between plaintiff and the third party, but failed

11  to "allege the nature of the acts that constituted the interference").[7]  As in *Fortinet*,

12  Plaintiffs allege Defendant solicited employees and that those employees

13  subsequently breached their contracts.  Plaintiffs fail to provide a single factual

14  allegation as to how Defendant's solicitation *caused* any employee to do anything.

15  Plaintiffs attempt to distinguish *Celebrity Chefs Tour, LLC v. Macy's, Inc.*

16  because the plaintiffs in that case made conclusory allegations "without providing

17  any background facts" (Opp. 16), but Plaintiffs' claims are similarly conclusory.  In

18  *Celebrity Chefs*, the court found allegations that a defendant had "intentionally

19  interfered" with certain contracts insufficient where plaintiff failed to identify

20  anywhere in the complaint "what acts [defendant] purportedly undertook to induce

21  third parties to breach their contracts with Plaintiffs, or why [defendant], rather than

22  other forces, was the cause of said breach(es) . . .  On the face of the Complaint, it is

23  just as possible that [the third party] decided on its own to refuse to return the

24  _____

25  [7] *See also Wynn v. National Broadcasting Co., Inc*., 234 F. Supp. 2d 1067, 1122
(C.D. Cal. 2002) ("The mere allegation that [] Defendants 'purposefully and
26  intentionally interfered' with a contract, without any factual support . . . does not
satisfy the requirements for stating a claim for tortious interference with contractual
27  relations.") (citations omitted).

28

REPLY BRIEF IN SUPPORT OF CARSTEN BREITFELD'S MOTION TO DISMISS

[assets]."  16 F. Supp. 3d at 1157.[8]  As in *Celebrity Chefs*, Plaintiffs do not allege any act Dr. Breitfeld undertook to induce any employee's contract breach; nor do Plaintiffs allege that Dr. Breitfeld, rather than some other reason, was the cause of the unnamed employees' purported breaches.

Byton's bewildering claim that the "allegations . . . leave little room for alternative theories of causation" (Opp. 17) is belied by the Complaint.  There are a myriad of reasons other than Defendant why Byton employees may have left the company: Byton may have been a lousy place to work, Byton may not have met its contractual obligations to its employees, or Byton may not have paid its employees compensation they were owed.  In any growing and competitive industry, people change jobs, and Dr. Breitfeld is not responsible for employees' decisions to leave their jobs, absent some showing of unlawful action.  *Reeves*, 33 Cal. 4th at 1149 ("[I]t has long been the public policy of our state that '[a] former employee has the right to engage in a competitive business for himself and to enter into competition with his former employer, even for the business of ... his former employer, provided such competition is fairly and legally conducted.'") (quotations and citations omitted).

Similarly, there are countless reasons why the employees may have breached their confidentiality agreements, assuming any such breach actually occurred.  Whether or not any former Byton employee breached an agreement with Byton, nothing in the Complaint indicates that the employees breached a contract because of

---

[8] *See also Dryden v. Tri-Valley Growers,* 65 Cal. App. 3d 990, 997 (1977) ("It has been repeatedly held that a plaintiff seeking to hold one liable for unjustifiably inducing another to breach a contract must allege that the contract would otherwise have been performed, and that it was breached and abandoned by reason of the defendant's wrongful act and that such act was the moving cause thereof."); *National Funding, Inc. v. Commercial Credit Counseling Services, Inc*., 2018 WL 6444899, at *5 (C.D. Cal., Nov. 6, 2018) (dismissing plaintiff's claim for intentional interference with contractual relations because plaintiff's "conclusory assertion that 'the Loan Agreements would not have been breached or disrupted but for Defendants' conduct" was insufficient to support the element of causation).

1   anything Dr. Breitfeld did.  The list of alternative theories of causation is endless and
2   nothing in the Complaint precludes any of them.  While Byton may want to use Dr.
3   Brietfeld as the scapegoat for all its woes, Byton does not state a cognizable claim for
4   interference with contract.

5           2.   <u>Plaintiffs Fail to Identify Any Specific Contractual Relationship</u>

6           Plaintiffs do not identify any specific contractual relationship with which
7   Defendant purportedly interfered.  Citing a litany of cases, Plaintiffs argue that
8   naming specific parties or agreements is not required.  (Opp. 13.)  But, similar to
9   claims for interference with prospective economic advantage, courts that have
10  allowed contractual interference claims to proceed absent allegations of named
11  parties or contracts have done so where the Complaint supplied enough facts to allow
12  the district court to determine what contractual rights were possessed and whether
13  they were interfered with.  *UMG Recordings*, 117 F. Supp. 3d at 1115; *Ramona*, 177
14  Cal. App. 3d at 1133 (allowing claim to proceed where defendant had knowledge of
15  "specific, albeit unnamed, lessee").

16          Plaintiffs try to distinguish *Green Crush* on the grounds that the plaintiffs in
17  that case purportedly failed to provide "any identifying information." (Opp. 15.)  But
18  the plaintiff in *Green Crush* provided just as much identifying information as
19  Plaintiffs here, if not more.

20          In *Green Crush*, the plaintiff sued five defendants, including one of plaintiff's
21  former managers and two former independent contractors, for purported interference
22  with confidentiality agreements plaintiff had purportedly signed with unnamed
23  employees.  2018 WL 4940825, at *9.  After the court dismissed the claim "for
24  failure to plead the identity of any specific third party with whom it contracted that
25  Defendants allegedly interfered," plaintiff filed a first amended complaint which
26  identified a confidentiality agreement it had with only one employee, Duran.  The
27  court held this was insufficient: "[b]esides Duran, Plaintiff has failed to plead the
28  identity of any of its employees with whom Defendants' allegedly interfered.  This

require[s] dismissal of the claim because 'to understand whether [the plaintiff's] performance was disrupted require[s] the district court to determine what contractual rights [it] possess[ed]." *Id*. (quotations and citations omitted.) [9]

The Complaint here is even more deficient than that in *Green Crush.* Plaintiffs not only allege Defendant interfered with multiple confidentiality agreements with unnamed employees, but also with an entirely separate second set of employment contracts, for which they also fail to identify any of the parties who signed those agreements, when those agreements were signed or the substance thereof. (Compl. ¶¶ 58-68.)

Nor does Byton provide any allegations that would otherwise allow the district court to understand what contractual rights were possessed so as to determine whether the employees' performance on the contract was disrupted. Byton fails to specify the number of contracts that were signed, or whether Dr. Bretifeld is alleged to have interfered with every contract of every departing employee or just some of them. (Compl. ¶ 59 ("*Most*, if not all, of the former employees . . . had entered into confidentiality agreements"); ¶ 63 ("*some* of the former employees had employment contracts") (emphasis added).) Nor does Byton allege a single action that Dr. Breitfeld took to cause any employee to breach any agreement. It is also not clear if Byton claims Dr. Breitfeld took the same purported steps to interfere with all the various contracts, or if Dr. Breitfeld is alleged to have interfered with each agreement in a unique way. (*Id*. ¶¶ 58-68.) Byton also fails to allege any damage it purportedly

---

[9] Likewise, in Dr. Breitfeld's remaining authority, the court required that the plaintiffs in question provide more facts than Plaintiffs here have provided. *See In re Centerstone Diamonds, Inc*., 2014 WL 1330186, at *6 (C.D. Cal. Apr. 2, 2014) (allegations that defendants interfered with "valid contractual relationships between Debtors and multiple customers and consignees," including a "Consignment Agreement with FCC," insufficient to state a claim); *UMG Recordings*, 117 F. Supp. 3d at 1115 ("To plead the claim adequately, counterclaimants must identify the third party or parties whom they contracted, and the nature and extent of their relationship with that party or parties.").

1    suffered. (*Id.*)

2       In short, Byton lumps an unspecified number of varying contracts together in a

3 hopeless mishmash of allegations, failing to allege who signed what when or the

4 substance of any of the agreements, and then attempts to hide behind Rule 8, arguing

5 that Dr. Breitfeld is "requesting discovery" merely by asking Byton to meet the

6 pleading standards of the tort. (Opp. 14.) Courts routinely reject such specious

7 claims. *See e.g. Calsoft Labs, Inc. v. Panchumarthi*, 2019 WL 5811300, at *4-5

8 (N.D. Cal., Nov. 7, 2019) (dismissing interference with contractual relations claim for

9 failure to identify specific contractual relations and rejecting argument that such

10 identification called for discovery; "Plaintiffs do not need discovery to learn which

11 clients and employees they have lost."). This Court should also reject these

12 hopelessly vague allegations.

13       3.   <u>The Agreements Alleged as the Basis of Plaintiffs' Interference Claims</u>

14          <u>Are Illegal in Violation of Business and Professions Code section 16600</u>

15       Ignoring Dr. Breitfeld's argument the alleged confidentiality agreements were

16 facially invalid under Section 16600, Byton argues the agreements do not violate

17 Section 16600 because Dr. Breitfeld fails to explain how the confidentiality or term

18 employment agreements "actually" restrained any employee from engaging in his or

19 her profession, trade or business. (Opp. 17.) The argument is irrelevant as a matter

20 of law. *See Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th 564, 578 (2009)

21 (invalidating overbroad confidentiality provision as facially invalid in violation of

22 Section 16600).

23       Byton next presents another strawman – that the agreements are valid because

24 "[e]mployment restrictions that serve to protect an employer's trade secrets,

25 *proprietary information, and confidential information* are valid in California." (Opp.

26 17 (emphasis in original; citation omitted).) But what Dr. Breitfeld actually argued

27 was that the agreements were overbroad because they preclude employees from

28 disclosing "trade secrets and other confidential and proprietary information . . .

1   *without limitation*." (Compl. ¶¶ 9, 59-62 (emphasis added).)  This is exactly the type

2   of broad contractual restraint that has been held void under section 16600.  *See*

3   *Dowell*, 179 Cal. App. 4th at 578 (clause violated section 16600, even though it was

4   "'tethered' to the use of confidential information," because "[c]onfidential

5   information' was broadly defined" in the agreement); *Kolani v. Gluska*, 64 Cal. App.

6   4th 402, 408 (1998) (invalidating agreement as violative of Section 16600 and

7   rejecting request to "rewrite the broad covenant not to compete into a narrow bar on

8   theft of confidential information").

9        Byton's argument that its confidentiality agreements are "limited" is therefore

10  belied by its own allegations.  (*Compare* Opp. 18 (agreements do not prohibit

11  disclosure of "any information" but are "limited") *with* Compl. ¶¶ 9, 62 (agreements

12  protect confidential and proprietary information "without limitation").  This is

13  particularly true, given that the alleged agreements apply indefinitely to the

14  employees' post-employment behavior.  *See Western Air Charter, Inc. v. Schembari*,

15  2017 WL 7240775, at *4 (C.D. Cal., Dec. 14, 2017) (agreement prohibiting employee

16  "from using 'Confidential Information to compete with [plaintiff] both during and

17  after [employee's] employment, in perpetuity," found to be facially invalid illegal

18  restraint on employee mobility in violation of Section 16600).

19       Finally, Byton argues that Section 16600 should not apply because Dr.

20  Breitfeld used "unfair or deceptive means to effectuate new employment."  (Opp. 20.)

21  In support of this assertion, Byton cites its own allegations that "solicitation of the

22  former Byton employees involved business interference, contract interference and a

23  breach of Dr. Breitfeld's fiduciary duty to Byton."  (*Id.*)  This conclusory and circular

24  argument is patently inadequate.

25       Byton does not cite a single factual allegation of any "unfair or deceptive

26  means" Dr. Breitfeld purportedly used.  Byton's other conclusory tort allegations do

27  not save this claim.  All of those torts are equally devoid of any factual allegations

28  that Dr. Breitfeld used unfair or deceptive means to do anything.  (Compl. ¶¶ 36-68.)

1  Byton's bare recitation of the labels of various causes of action does not rescue its

2  deficient claim.

3      Byton's overbroad confidentiality agreements are void under Section 16600.

4  Accordingly, they cannot be the basis of an action for interference with contractual

5  relations. *See Renaissance Realty v. Soriano*, 120 Cal. App. 3d Supp. 13, 18 (1981)

6  (contract that is illegal or against public policy "cannot be the subject of the tort of

7  interference with a business or contractual relationship").

8      **C.  Plaintiffs' Conversion and UCL Claims Are Impermissibly**

9          **Duplicative of Their Other Claims**

10         1.  CUTSA Preempts Plaintiffs' Conversion and UCL Claims

11     Byton does not address, and therefore concedes, Dr. Breitfeld's argument that

12  CUTSA preempts its claims for conversion and UCL insofar as those claims allege

13  trade secret misappropriation. *See Personal Elec. Transports, Inc. v. Office of U.S.*

14  *Tr.*, 313 Fed. Appx. 51, 52 (9th Cir. 2009) (party waived argument by failing to raise

15  it in opposition to motion to dismiss). Instead, Byton presents another strawman,

16  arguing its conversion claim is not preempted because "a conversion claim *may* be

17  premised on confidential information." (Opp. 20 (emphasis added).) But Dr.

18  Breitfeld did not argue that a conversion claim could never be premised on

19  confidential information. Instead, Dr. Breitfeld argued that claims that duplicate

20  CUTSA are preempted, regardless of whether the claims are labeled "trade secrets" or

21  include other confidential or proprietary information. (Mot. 18-20); *Silvaco*, 184 Cal.

22  App. 4th at 236 ("CUTSA provides the exclusive civil remedy for conduct falling

23  within its terms"); *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 987 (C.D.

24  Cal. 2011) (CUTSA "supersedes claims based on the misappropriation of confidential

25  information, whether or not that information meets the statutory definition of a trade

26  secret.").

27     The test is not what labels a plaintiff employs. Rather, common law tort claims

28  are displaced by CUTSA where, as here, they "do not genuinely allege 'alternative

17

1  legal theories' but are a transparent attempt to evade the strictures of CUTSA by

2  restating a trade secrets claim as something else." *Silvaco*, 184 Cal. App. 4th at 240.

3       Here, Byton's CUTSA claim is wholly redundant of its conversion and UCL

4  claims. Plaintiffs' CUTSA claim alleges that Defendants misappropriated Plaintiffs'

5  "trade-secret, proprietary and other confidential information." (Compl. ¶¶ 23, 25.)

6  These allegations are identical to Plaintiffs' conversion and UCL allegations. (*Id.* ¶

7  71 (Defendants wrongfully converted Byton's "trade-secret, proprietary and other

8  confidential information"); *id.* ¶ 74 (Defendants violated UCL by "misappropriat[ing]

9  Byton's trade-secret and other confidential information.").)

10      Plaintiffs cite *Terarecon, Inc. v. Fovia, Inc.*, 2006 WL 1867734, at *10 (N.D.

11 Cal., July 6, 2006) for the proposition that a conversion claim based on

12 misappropriation of proprietary materials is not superseded where a plaintiff does

13 "not incorporate by reference its allegation that its proprietary materials are trade

14 secrets in its proposed claim for conversion." (Opp. 21.) But Plaintiffs *do*

15 incorporate by reference their trade secret allegations in their purported claims for

16 conversion and violations of the UCL. (Compl. ¶¶ 69, 73 ("Byton incorporates by

17 reference as though fully set forth herein the allegation of the preceding paragraphs of

18 this complaint.") Thus, *Terarecon* proves Dr. Breitfeld's point: Byton's conversion

19 and UCL claims rely on the same allegations as its CUTSA claim and are therefore

20 preempted.

21      Byton's claim that Dr. Breitfeld ignores the "separate" allegations of employee

22 solicitation in the UCL claim (Opp. 23) is patently false. Dr. Breitfeld clearly

23 addressed these allegations in his Motion, stating that "[t]he fact that, in addition to

24 trade secret misappropriation, Plaintiffs' UCL claim also includes allegations of

25 Defendants' solicitation of Plaintiffs' employees is immaterial to this analysis."

26 (Mot. 20 (quoting *K.C. Multimedia, Inc. v. Bank of America Tech. & Operations,*

27 *Inc.,* 171 Cal. App. 4th 939, 958 (2009) (CUTSA supersedes any claim "based on the

28 same nucleus of facts as the misappropriation of trade secrets claim," even though the

1    superseded claim may seek "'something more' than trade secret relief"); *Mattel*, 782

2    F. Supp. 2d at 986 (explaining that, under California law, a claim based on

3    misappropriation may be superseded by CUTSA regardless of whether it "require[s]

4    proof of 'additional elements'")).

5         As Byton's conversion and UCL claims are wholly duplicative of its CUTSA

6    claim, they are preempted by CUTSA and are appropriately dismissed at the pleading

7    stage.  *See SunPower*, 2012 WL 6160472, at *15 (granting motion to dismiss

8    conversion claim as preempted by CUTSA and rejecting argument that dismissal at

9    the pleading stage was "premature").

10              2.  Plaintiffs' UCL Claim Impermissibly Seeks Duplicative Relief

11        Plaintiffs argue their UCL claim should survive even though it impermissibly

12   seeks damages because they have no adequate remedy at law.  (*Compare* Opp. 23

13   *with* Compl. ¶ 75 (seeking "damages in an amount to be proven at trial" for UCL

14   claim).)  But Byton's request for injunctive relief does not save its claim.  "[W]here

15   an equitable relief claim 'relies upon the same factual predicates as a plaintiff's legal

16   causes of action, it is not a true alternative theory of relief but rather is duplicative of

17   those legal causes of action," and should be dismissed.  *Zapata Fonseca v. Goya*

18   *Foods, Inc*., 2016 WL 4698942, at *7 (N.D. Cal., Sept. 8, 2016) (dismissing UCL

19   claim that "rel[ied] upon the same factual predicates as . . . plaintiff's legal causes of

20   action") (quoting *In re Ford Tailgate Litigation*, 2014 WL 1007066, at *5 (N.D. Cal.,

21   Mar. 12, 2014)); *Green Crush*, 2018 WL 4940825, at *6 (dismissing UCL claim

22   because "[t]he injunctive relief Plaintiff request[ed] in its prayer for its UCL claim

23   [was] identical to the injunctive relief requested" in its other claims; "[i]n light of the

24   duplicative nature of Plaintiff's UCL claim, Plaintiff has not pled that it has 'no

25   adequate remedy at law'").

26        Plaintiffs' UCL claim relies on the exact same factual predicate as their other

27   claims.  In support of their UCL claim, Plaintiffs allege that Defendant: (1) solicited

28   Byton's employees, and (2) misappropriated Byton's trade-secret and other

19

confidential information. (Compl. ¶ 74.) Plaintiffs seek the same redress for solicitation of Byton's employees in their breach of fiduciary duty and intentional interference and negligent interference with prospective economic advantage claims. (*Id*. ¶¶ 36-57.) They seek the same redress misappropriation of trade secrets in their CUTSA, UTSA, intentional interference with contractual relations and conversion claims. (*Id*. ¶¶ 20-35, 58-72.) Critically, Plaintiffs seek injunctive relief under both their CUTSA and UTSA claims. Plaintiffs' UCL claim is therefore duplicative of their CUTSA and UTSA claims in substance and in requested relief. (*Id*. ¶¶ 26, 40.). This is an additional basis for dismissal. *Green Crush,* 2018 WL 4940825, at *6 (dismissing UCL claim that sought duplicative injunctive relief).

Byton is incorrect that courts refuse to assess whether a plaintiff has an adequate remedy at law at the pleading stage. (Opp. 24.) The court in *Green Crush* made this assessment at the pleading stage, as have numerous other courts. 2018 WL 4940825, at *6; *Zapata*, 2016 WL 4698942, at *7; *Philips v. Ford Motor Co.*, 2015 WL 4111448, at *16-17 (N.D. Cal., July 7, 2015) (granting motion to dismiss where complaint failed to allege there was no adequate remedy at law) (collecting cases). Plaintiffs' UCL claim is wholly duplicative of their other claims. It should be dismissed.

## III.    CONCLUSION

For all of the foregoing reasons, Dr. Breitfeld respectfully requests that the Court dismiss the fourth, fifth, sixth, seventh and eighth causes of action of Plaintiffs' Complaint.

Dated: February 14, 2020                    BAKER MARQUART LLP

By:    /s/ Ryan G. Baker
Ryan G. Baker
Donald Pepperman
Scott M. Malzahn
Teresa L. Huggins
*Attorneys for Defendant Carsten Breitfeld*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REPLY BRIEF IN SUPPORT OF CARSTEN BREITFELD'S MOTION TO DISMISS