UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 19-10563-DMG (JEMx)** | Date | April 28, 2020 |
|---|---|---|---|

| Title | *Byton North America Co., et al. v. Carsten Breitfeld, et al.* | Page | 1 of 14 |
|---|---|---|---|

| Present: The Honorable | DOLLY M. GEE, UNITED STATES DISTRICT JUDGE |
|---|---|

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE DEFENDANT CARSTEN BREITFELD'S MOTION TO DISMISS [22]**

This matter is before the Court on Defendant Carsten Breitfeld's Motion to Dismiss ("MTD"). [Doc. # 22.] Breitfeld moves to dismiss the fourth, fifth, sixth, seventh, and eighth causes of action in the Complaint filed by Plaintiffs Byton North America Corporation ("Byton NA") and Byton Limited ("Byton Ltd.") (collectively, "Byton"). [Doc. # 1.] The motion is fully briefed. Opp. [Doc. # 24]; Reply [Doc. # 26]. For the following reasons, the Court **GRANTS** in part and **DENIES** in part the MTD.

## I.
## FACTUAL BACKGROUND

Byton and Defendant Iconiq Motors North America, Inc. ("Iconiq") are competitors in the electric vehicle industry.[1] Compl. at ¶ 1. Breitfeld was a co-founder of Byton Ltd., and served as its Chief Executive Officer, Chief Technology Officer, and Chairman of the Board. He also served as Chief Executive Officer, Chief Financial Officer, and Director of Byton NA. *Id.* at ¶ 12.

Plaintiffs allege that while holding these positions, Breitfeld began working for Iconiq and recruiting other high-level Byton employees to join him. *Id.* at ¶¶ 13, 14. Indeed, shortly after Breitfeld announced that he was working for Iconiq, a number of high-level Byton employees resigned and began working for Iconiq. *Id.* at ¶ 14. Plaintiffs contend that Breitfeld and the other former Byton employees then used Byton's confidential information and trade-secrets to create products at Iconiq that competed with Byton's. *Id.* at ¶ 16.

Plaintiffs assert that the circumstances surrounding Iconiq's hiring of Breitfeld demonstrate the misappropriation of Byton's trade secrets and other confidential information. *Id.*

---

[1] Iconiq did not join in Breitfeld's MTD. References to "Iconiq" include both Iconiq and its parent company TINC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 19-10563-DMG (JEMx)** | Date | April 28, 2020 |
| Title | *Byton North America Co., et al. v. Carsten Breitfeld, et al.* | Page | 2 of 14 |

at ¶¶ 18–19. They assert that, as of 2018, Iconiq was several years behind Byton in developing their electric vehicle, but after hiring Breitfeld, Iconiq quickly revealed a new concept car with features reminiscent of Byton vehicles.[2] *Id.* They further claim that Iconiq's depictions and descriptions of their products are "remarkably similar" to Byton's. *Id.* at ¶ 16.

## II.
## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may seek to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a pleading need not contain "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating the sufficiency of a complaint, courts must accept all factual allegations as true. *Id.* (citing *Twombly*, 550 U.S. at 555). Legal conclusions, in contrast, are not entitled to the assumption of truth. *Id.*

## III.
## DISCUSSION

Breitfeld does not seek to dismiss Plaintiffs' first three causes of action for misappropriation of trade secrets under the California Uniform Trade Secrets Act (CUTSA), misappropriation of trade secrets under the Federal Defend Trade Secrets Act, and breach of fiduciary duties. Instead, the MTD concerns only the fourth through eighth causes of action. These claims are for intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, intentional interference with contractual relations, conversion, and violation of California's Unfair Competition Law ("UCL"). *See* Compl. The Court discusses each of these claims in turn.

---

[2] These similarities include the design, software, and firmware of rotatable seats, the front console display, the user interface of the touchscreen display, the facial and voice recognition systems, the automotive personalization platform (including artificial intelligence and machine learning capabilities, cloud connectivity, and integration with mobile devices), the advanced driver assistance systems (including assisted driving, tailgating alert, parking spot detection, and route selection systems), the predictive maintenance system, and the multi-operational and multi-window-display systems for the dashboard display. Compl. at ¶ 19.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 19-10563-DMG (JEMx)** | Date | April 28, 2020 |
| Title | *Byton North America Co., et al. v. Carsten Breitfeld, et al.* | Page | 3 of 14 |

**A.    Interference with Prospective Economic Advantage Claims**

Plaintiffs' fourth and fifth causes of action are for intentional interference with prospective economic advantage and negligent interference with prospective economic advantage, respectively.  *Id*. at ¶¶ 41–57.  The elements of intentional interference with prospective economic advantage are:  "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of that relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant."  *Popescu v. Apple Inc.*, 1 Cal. App. 5th 39, 63 (2016) (internal quotations omitted).  Further, the plaintiff must plead that the "defendant's interference was wrongful by some measure beyond the fact of the interference itself."  *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393 (1995) (internal quotations omitted).

A claim for negligent interference with prospective economic advantage has the same elements except that, instead of an intentional act, element three requires that the defendant had knowledge that the relationship would be disrupted if the defendant failed to act with reasonable care, and that the defendant failed to act with reasonable care.  *Redfearn v. Trader Joe's Co.*, 20 Cal. App. 5th 989, 1005 (2018).  Because Breitfeld does not attack the third element with respect to either cause of action, however the Court's analysis of the two causes of action are the same for the purposes of this motion.  For ease of reference, the Court will refer to the causes of action collectively as the interference with prospective economic advantage, or "IPEA," claims.

Plaintiffs' theory regarding the IPEA claims is as follows.  They allege that Byton had existing at-will employment relationships with certain employees, and those relationships were likely to confer future economic benefits on Byton.  Compl. at ¶ 42.  Breitfeld was aware of these relationships, but nonetheless solicited Byton's employees to work at Iconiq while he was still employed at Byton.  *Id.* at ¶¶ 44–45.  The employees then resigned, which disrupted Byton's economic relationships and harmed Byton economically.  *Id.* at ¶¶ 47–48.

Breitfeld makes three arguments against Plaintiffs' IPEA claims.  He contends that Plaintiffs fail to:  (1) allege a prospective relationship with future, as opposed to an existing, economic benefit; (2) identify a specific disrupted relationship; and (3) allege independently wrongful conduct.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 19-10563-DMG (JEMx)** | Date | April 28, 2020 |
| Title | *Byton North America Co., et al. v. Carsten Breitfeld, et al.* | Page | 4 of 14 |

### 1.  Plaintiffs Have Identified an Economic Relationship with Future Benefit

Breitfeld first disputes, and then concedes, that IPEA claims can arise out of a defendant's interference with an *existing*, as opposed to a prospective, employment relationship. *Compare* MTD at 16 *with* Reply at 7-8.[3] He initially appears to rely on *SOS Co. Inc. v. E-Collar Technologies, Inc.*, 2017 WL 5714716 (C.D. Cal. Oct. 17, 2017), for the proposition that IPEA claims concern only future economic relationships. MTD at 16. To the extent that *SOS* supports that position, however, it flies in the face of *Reeves v. Hanlon*, a California Supreme Court decision that binds this Court on the issue. 33 Cal. 4th 1140, 1152 (2004) ("a plaintiff may recover damages for intentional interference with an at-will employment relation under the same California standard applicable to claims for intentional interference with prospective economic advantage"); *Lewis v. Tel. Employees Credit Union*, 87 F. 3d 1537, 1545 (9th Cir. 1996) ("When interpreting state law, federal courts are bound by decisions of the state's highest court."). Accordingly, the Court cannot grant the MTD solely because the IPEA arises out of Plaintiffs' pre-existing employment relationships.

Breitfeld also argues that Plaintiffs fail to identify any prospective "business opportunity" that they lost due to his purported interference with the employees' at-will employment relationships. Reply ay 8-9. But California courts do not speak about IPEA claims in terms of lost "business opportunity." They instead require only that the defendant disrupt an economic relationship between the plaintiff and a third party which probably would have benefitted the plaintiff economically in the future. *See Popescu*, 1 Cal. App. 5th at 63. Breitfeld appears to have taken the term "business opportunity" from *SOS*, which dismissed an IPEA claim because "lost business opportunities do not appear to be the basis of this claim; rather, the claim, as pled, seems to be that Defendants interfered with [the company's] existing relationship with its employees." *SOS Co.*, 2017 WL 5714716, at *10. But *SOS* does not cite any support for the specific proposition that a defendant's interference with at-will employees' contractual relationships *cannot* support an IPEA claim. Indeed, the only authority that *SOS* cites regarding the IPEA claim at issue was *Builders Corp. of Am. v. United States*, 148 F. Supp. 482, 487 n.1 (N.D. Cal. 1957). That decision, however, is unpersuasive for several reasons. First, it was reversed by the Ninth Circuit in *Builders Corp. of Am. v. United States*, 259 F.2d 766, 768 (9th Cir. 1958). Second, the district court's discussion of the differences between IPEA claims and claims for interference with contractual relations appears to be based only on treatises from more than half a century ago. And third, while the district court differentiated IPEA claims and claims for interference with contractual relations by claiming that the former involves a future contract that "would, with certainty, have been consummated but for the conduct of the tortfeasor," that

---

[3] All page references herein are to page numbers inserted by the CM/ECF system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 19-10563-DMG (JEMx)** | Date | April 28, 2020 |
|---|---|---|---|

| Title | *Byton North America Co., et al. v. Carsten Breitfeld, et al.* | Page | 5 of 14 |
|---|---|---|---|

case did not concern facts bearing any similarity to this case. *Builders Corp.*, 148 F. Supp. at 483 ("This is an action to recover damages . . . for the alleged loss of anticipated rental income from dwelling units constructed by plaintiffs adjacent to . . . a military installation of the United States."). Thus, *Builders Corp.* court had no occasion to consider whether an IPEA claim could lie in the absence of a likely future contract.

The Court therefore respectfully disagrees with *SOS*'s reasoning in light of the California Supreme Court's indication that "an interference with an at-will contract properly is viewed as an interference with a prospective economic advantage." *Reeves*, 33 Cal. 4th at 1152. Breitfeld cites a later passage from *Reeves*, in which the court states that "a defendant is not subject to liability for intentional interference if the interference consists merely of extending a job offer that induces an employee to terminate his or her at-will employment." *Id.* at 1153. Breitfeld's citation is accurate, but it is misleading without the proper context. In a vacuum, the passage appears to mean that extending a job offer to another company's employee cannot support an IPEA claim. But in taken in context,[4] the passage means that "*merely*" extending such a job offer is insufficient for IPEA liability. For the claim to lie, the defendant must *also* engage in an independently wrongful act. *See id.* In other words, simply extending a job offer does not rise to the level of IPEA unless the defendant does so in a manner than is "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1138 (2003). The Court discusses the wrongful act requirement further below.

---

[4] In full, the passage states that:

> Consistent with the decisions recognizing that an intentional interference with an at-will contract may be actionable, but mindful that an interference as such is primarily an interference with the future relation between the contracting parties, we hold that a plaintiff may recover damages for intentional interference with an at-will employment relation under the same California standard applicable to claims for intentional interference with prospective economic advantage. That is, to recover for a defendant's interference with an at-will employment relation, a plaintiff must plead and prove that the defendant engaged in an independently wrongful act—i.e., an act "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard"—that induced an at-will employee to leave the plaintiff. Under this standard, a defendant is not subject to liability for intentional interference if the interference consists merely of extending a job offer that induces an employee to terminate his or her at-will employment.

*Reeves*, 33 Cal. 4th at 1152–53 (internal quotations and page numbers omitted)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 19-10563-DMG (JEMx) | Date | April 28, 2020 |
|---|---|---|---|

| Title | *Byton North America Co., et al. v. Carsten Breitfeld, et al.* | Page | 6 of 14 |
|---|---|---|---|

*Reeves* does not prevent Plaintiffs from pleading the first element of an IPEA claim. They have adequately stated an economic relationship between themselves and their employees, with the probability of future economic benefit to themselves.

### 2. Plaintiffs Have Identified a Specific Economic Relationship

Breitfeld next argues that, even if interference with an existing at-will employment relationship can support an IPEA claim, Plaintiffs must identify a *specific* relationship with which Defendants allegedly interfered. MTD at 17. While Plaintiffs allege that Defendants interfered with their employer-employee relationships, they do not name these employees in their Complaint.

Breitfeld argues that omitting these employees' names is fatal to Plaintiffs' claims. In support of this proposition, Breitfeld cites several cases whose reasoning is not applicable here. For example, some of those decisions dismissed complaints because the allegations were not specific enough to provide a basis for the court to determine that the plaintiffs were likely to receive future economic benefit. *See Alter G, Inc. v. Boost Treadmills LLC*, 388 F.Supp.3d 1133, 1152 (N.D. Cal. 2019) ("Nowhere does the complaint identify these entities or allege any facts to explain their economic relationship with [plaintiff] . . . without any facts, it is impossible for the Court to determine whether it is reasonably probable that the prospective economic advantage would have been realized but for Defendants' interference"); *Green Crush LLC v. Paradise Splash I, Inc.*, 2018 WL 4940825, at *10 (C.D. Cal. May 3, 2018) ("Without pleading an existing relationship with an identifiable customer, vendor, or potential franchisee, Plaintiff provides no 'factual basis upon which to determine whether [it] was likely to have actually received the expected benefit.'"); *Damabeh v. 7-Eleven, Inc.*, 2013 WL 1915867, at *10 (N.D. Cal. May 8, 2013) ("Allegations that a defendant interfered with the plaintiff's relationship with an 'as yet unidentified' customer will not suffice"); *SunPower Corp. v. SolarCity Corp.*, 2012 WL 6160472, at *15 (N.D. Cal. Dec. 11, 2012) ("SunPower has not identified any specific customer relationship with which SolarCity interfered, nor alleged any facts regarding how SolarCity interfered with those customer relationships").

These cases all rely on *Westside Center Associates v. Safeway Stores 23, Inc.*, which dismissed plaintiff's IPEA claim for failure to provide "any factual basis upon which to determine whether the plaintiff was likely to have actually received the expected benefit." 42 Cal. App. 4th 507, 527 (1996). The court held that "[w]ithout an existing relationship with an identifiable buyer, [plaintiff]'s expectation of a future sale was at most a hope for an economic

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 19-10563-DMG (JEMx)** | Date | April 28, 2020 |
|---|---|---|---|

| Title | *Byton North America Co., et al. v. Carsten Breitfeld, et al.* | Page | 7 of 14 |
|---|---|---|---|

relationship and a desire for future benefit." *Id.* (internal quotations omitted).[5] In this case, however, Plaintiffs' expectation of a future economic benefit was based on far more than a "hope" or "desire" for an economic relationship—it was based on the continued employment of specific current employees.

Further, other courts have held that plaintiffs need not allege specific third parties in an IPEA claim. *See, e.g.*, *TYR Sport Inc. v. Warnaco Swimwear Inc.*, 679 F. Supp. 2d 1120, 1139–40 (C.D. Cal. 2009) ("The Federal Rules do not require that [a] complaint allege the specific third party or class of third parties with whom he claims to have had a valid business expectancy") (citing *Cook v. Winfrey*, 141 F. 3d 322, 328 (7th Cir. 1998)). Breitfeld also argues that the Complaint gives no indication as to how to identify or define the group of employees that left Byton for Iconiq. Reply at 11-12. But, at the pleading stage, plaintiffs need not provide specifics such as how many employees left for Iconiq, which departments they worked in, or their job titles. That sort of factual development occurs during discovery. *See TYR Sport*, 679 F. Supp. 2d at 1139 (distinguishing between pleading requirements and the burden of proof beyond the pleading stage). At this point in the litigation, Plaintiffs have adequately identified a specific relationship with a group of former employees, which eliminates any concern that Plaintiffs' future economic benefit is too speculative to support a claim.

### 3. Plaintiffs Have Pled Breitfeld's Independently Wrongful Conduct

Finally, Breitfeld argues that Plaintiffs did not properly allege that he engaged in any independently wrongful conduct. A defendant's act "is independently wrongful," for purposes of an IPEA claim, "if it is proscribed by some constitutional, statutory, regulatory, or common law, or other determinable legal standard." *Korea Supply*, 29 Cal. 4th at 1138. The defendant's conduct must be wrongful "by some measure beyond the fact of the interference itself." *Redfearn*, 20 Cal. App. 5th at 1006 (internal citation omitted).

Plaintiffs assert that Breitfeld's interference was independently wrongful in three ways because it was: (1) a breach of his fiduciary duties and duties of loyalty to Byton, (2) interconnected with his larger goal of misappropriating trade secrets, and (3) a violation of California's Unfair Competition Law ("UCL"). Opp. at 18–19.

---

[5] Reliance on *Westside* is further misplaced because it had proceeded past the pleading stage. *Sebastian Intern. Inc. v. Russolillo*, 128 F. Supp. 2d 630, 637 (C.D. Cal. 2001) ("*Westside* has proceeded past the pleading stage, and therefore its reasoning is inapposite here where the Court seeks merely to determine whether the claim has been adequately pled").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 19-10563-DMG (JEMx)** | Date | April 28, 2020 |
| Title | *Byton North America Co., et al. v. Carsten Breitfeld, et al.* | Page | 8 of 14 |

Plaintiffs first allege that Breitfeld owed a fiduciary duty to Byton NA as its director and executive officer, and breached that duty by, among other things, soliciting employees to leave the company and work with him at Iconiq. Compl. at ¶¶ 36–40. Breitfeld argues that the solicitation of employees is not a breach of a fiduciary duty, but the two cases that he cites do not support his position. The first, *Reeves*, is distinguishable because that case involved *former* employees offering jobs to employees of their former company, whereas here, Breitfeld allegedly offered Byton employees jobs at Iconiq while *still employed* at Byton. *See Reeves*, 33 Cal. 4th at 1145-47.

Breitfeld's selective quotation of the second case, *Bancroft-Whitney Co. v. Glen*, 64 Cal. 2d 327, 345–46 (1966), borders on the disingenuous. That case arose out of similar factual circumstances, but the court noted that "[t]here are only a few cases cited by the parties which involve the specific question whether an officer may offer employees of his corporation jobs with a competing enterprise he is preparing to join." *Bancroft-Whitney*, 64 Cal. 2d at 345–46. The decision's *following* two sentences then read: "The mere fact that the officer makes preparations to compete before he resigns his office is not sufficient to constitute a breach of duty. It is the nature of his preparations which is significant." *Id*. at 346. Breitfeld has quoted the case as follows: "Under California law, the 'mere fact that [an] officer makes preparations to compete before he resigns his office is not sufficient to constitute a breach of [fiduciary] duty,' even if such preparations include 'offer[ing] employees of his specific corporation jobs with a competing enterprise he is preparing to join.'" Reply at 14 (quoting *Bancroft-Whitney*, 64 Cal. 2d at 345–46). In other words, Breitfeld has spliced together two out-of-order portions of different sentences to give *Bancroft-Whitney* a favorable meaning that the case does not support.

Moreover, the footnote immediately following the language that Breitfeld cites directly contradicts Breitfeld's position. *See Bancroft-Whitney*, 64 Cal. 2d at 346 n.10 ("An employee is subject to liability if, before or after leaving the employment, he causes fellow employees to break their contracts with the employer."). Breitfeld's misrepresentation of California Supreme Court precedent does not change the law—his conduct, as alleged, constitutes a breach of his fiduciary duties to Byton. *See id.*

Since the alleged breach of Breitfeld's fiduciary duties is a sufficiently wrongful act to support an IPEA claim, the Court need not address the other two ways in which Plaintiffs claim that Breitfeld acted wrongfully. The Court **DENIES** the MTD as to Plaintiffs' fourth and fifth causes of action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 19-10563-DMG (JEMx)** | Date | April 28, 2020 |
|---|---|---|---|
| Title | *Byton North America Co., et al. v. Carsten Breitfeld, et al.* | Page | 9 of 14 |

### B. Intentional Interference with Contractual Relations

The elements of a claim for intentional interference with contractual relations are: "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Reeves*, 33 Cal. 4th at 1148.

Plaintiffs allege that the former employees who resigned after Breitfeld solicited them had entered into confidentiality agreements and term employment contracts with Byton. Compl. at ¶¶ 59, 63. Breitfeld was aware of these agreements by virtue of his direct contact with the employees and his service in executive management capacities at Byton. *Id.* at ¶¶ 60, 64. Breitfeld then caused the former employees to work for Iconiq before the end of their term, which violated their agreements with Byton, and caused Byton to suffer economic loss. *Id.* at ¶¶ 61, 65, 67. Breitfeld argues that Plaintiffs fail to identify any specific contract or adequately plead causation, and that the contracts themselves are illegal under California law.

#### 1. Plaintiffs Have Identified a Contract

Breitfeld first argues that Plaintiffs fail to identify a specific contract, the parties to that contract, and the substance of the contract. Although Plaintiffs do not attach any contracts to their Complaint or name the individual employees bound by those contracts, Plaintiffs plainly state throughout the Complaint that the group of employees who left to work for Byton had entered into term employment and confidentiality agreements.

Breitfeld cites to multiple cases that have dismissed an interference with contractual relations claim due to insufficient allegations about the contractual rights possessed by the parties. *See, e.g., Green Crush LLC*, 2018 WL 4940825 at *9; *UMG Recordings*, 117 F. Supp. 3d at 1115. In this case, however, Plaintiff's allegations are sufficient for the Court to determine what contractual rights are at issue. Plaintiffs described the contracts, and a specific, albeit unnamed, group of people who were parties to them. Further, Plaintiffs described the actions that they contend breached the rights at issue. Courts have found similar allegations sufficient to state a claim for interference with contractual relations. *See Unite Eurotherapy, Inc. v. Walgreen Co.*, 2017 WL 513008 at *2–3 (S.D. Cal. Feb. 7, 2017) (finding that plaintiff plead enough facts for the court to determine what contractual rights it possessed by alleging that one of its resellers was selling its products to defendants, which was a breach of their distribution agreement); *Qwest*, 2008 WL 783347 at *11 (finding it sufficient that plaintiff identified "third party customers" and pointed to a "discrete group of third parties" with which plaintiff had already

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 19-10563-DMG (JEMx)** | Date | April 28, 2020 |
| Title | *Byton North America Co., et al. v. Carsten Breitfeld, et al.* | Page | 10 of 14 |

contracted); *Epicor Software Corp. v. Alternative Technology Solutions, Inc.*, 2013 WL 2382262 at *4 (C.D. Cal. May 9, 2013) (finding that plaintiff was not required to attach copies of the specific contracts to its complaint to state a claim for interference with contractual relations).

Like the IPEA claim above, although Plaintiffs have not named the specific parties to the contracts or recited the contracts' terms, they have adequately alleged that valid employment and confidentiality agreements existed between them and their employees. That is sufficient to give Byton notice of the nature of the claim.

### 2. Plaintiffs Adequately Allege Causation

Breitfeld next argues that Plaintiffs have alleged causation in an impermissibly conclusory fashion and cites several cases in which courts held that a plaintiff did not adequately allege causation.[6] But these cases are distinguishable because Plaintiffs have done more than merely conclude that Breitfeld caused their injuries. They allege that, immediately after Breitfeld announced that he was working at Iconiq, numerous high-level employees followed him to Iconiq, and then Iconiq began making a "remarkably similar" car to the one Byton was producing. Compl. at ¶¶ 14, 16. They further allege that Breitfeld solicited the employees to breach their term agreements, and to disclose confidential information to Iconiq in violation of their confidentiality agreements. *Id.* at ¶¶ 38, 42, 61. While it may be possible that all of these events happened coincidentally, it is also plausible that they were interconnected and only took place because of Breitfeld's actions. Under such circumstances, the Court cannot rule in Breitfeld's favor at this stage. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible.").

---

[6] *See Dryden v. Tri-Valley Growers*, 65 Cal. App. 3d 990, 997–98 (1977) (finding that causation "was lacking as a matter of law," because it was demonstrated that the performance of the disputed contracts was abandoned many months prior to the alleged acts of the defendant); *National Funding, Inc. v. Commercial Credit Counseling Services, Inc.*, No. CV 18-6437-MWF (ASx), 2018 WL 6444899 at *5–6 (C.D. Cal. Nov. 6, 2018) (finding that plaintiff's statement that "the Loan Agreement would not have been breached or disrupted but for Defendants' above conduct," was conclusory, and dismissed the claim because plaintiff did not offer a factual basis for the assertion); *Nott v. IBM Corporation*, No. CV 10-07450 MMM (SHx), 2011 WL 13217659 at *9 (C.D. Cal. Apr. 11, 2011) (finding allegations insufficient because plaintiff did not allege "the nature of the acts that constituted interference, nor who took them"); *Wynn v. National Broadcasting Co., Inc.*, 234 F. Supp. 2d 1067, 1121–22 (C.D. Cal. 2002) (finding that alleged causation was insufficient because it was contrary to the facts alleged in the complaint); *Fortinet Inc. v. FireEye Inc.*, 2014 WL 4955087 (N.D. Cal. Sept. 30, 2014) (discussing intent, not causation).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 19-10563-DMG (JEMx)** | Date | April 28, 2020 |
| Title | *Byton North America Co., et al. v. Carsten Breitfeld, et al.* | Page | 11 of 14 |

### 3. Legality of the Agreements

Finally, Breitfeld argues that the agreements between Plaintiffs and their employees were illegal under California Business and Professions Code section 16600, which states in relevant part that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." While interference with contractual relations claims cannot lie without a valid contract, *Reeves*, 33 Cal. 4th at 1148, neither of the agreements at issue here run afoul of section 16600.

Breitfeld first argues that section 16600 invalidates the confidentiality agreements because they are overbroad. It appears that both sides agree that overbroad confidentiality agreements *can* be invalid. MTD at 23-24; Opp. at 24-25; *see also Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1338 (9th Cir. 1980)) ("[T]he applicable California law is that the employer will be able to restrain by contract only that conduct of the former employee that would have been subject to judicial restraint under the law of unfair competition, absent the contract"). Since the agreements themselves are not attached to the Complaint or a request for judicial notice, however, there is not enough information in the record at this stage for the Court to determine whether the confidentiality agreements at issue are, in fact, overbroad.

Breitfeld pieces together several allegations throughout the Complaint to argue that the agreements prevented the disclosure of all information "without limitation," and encompassed "all of Byton's confidential information." MTD at 24-25. But the broadest allegations in the Complaint refer not to the provisions in the confidentiality agreement, but to what Byton considers to be "trade secrets and other confidential and proprietary information." Compl. at ¶ 9. It is not clear from the Complaint's language that the confidentiality agreements are as broad as the Complaint's allegations. Without the ability to analyze the actual terms of the confidentiality agreements, it would be premature for the Court to analyze their validity under section 16600.

Breitfeld also contends that Plaintiffs' term employment agreements are illegal. But the only case Breitfeld cites for the proposition term agreements constitute an illegal restraint on trade concerns a contract with a restrictive *non-compete* agreement. *See Metro Traffic Control, Inc. v. Shadow Traffic Network*, 22 Cal. App. 4th 853, 860 (1994). Breitfeld cites no cases suggesting that California courts are as averse to term employment contracts as they are to covenants not to compete. To the contrary, term agreements are enforceable in California. *See Singh v. Southland Stone, U.S.A., Inc.*, 186 Cal. App. 4th 338, 355–56 (2010); Cal. Lab. Code §§ 2922, 2925.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 19-10563-DMG (JEMx)** | Date | April 28, 2020 |
| Title | *Byton North America Co., et al. v. Carsten Breitfeld, et al.* | Page | 12 of 14 |

Because Plaintiffs have adequately stated their interference with contractual relations claim, and because a full analysis of Plaintiffs' confidentiality agreements is premature without the ability to examine the provisions' language, the Court **DENIES** Breitfeld's MTD as to Plaintiffs' sixth cause of action.

**C.     Conversion**

Breitfeld argues that CUTSA preempts Plaintiffs' seventh cause of action for conversion. MTD at 27.  CUTSA's preemption provision lists certain remedies that the statute does not preempt, including contract remedies, criminal penalties, and civil remedies that are not based on the misappropriation of a trade secret.  Cal. Civ. Code § 3426.7.  Using that language, California courts have interpreted the statute to preempt civil remedies that are based on trade secret misappropriation.  *See K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.*, 171 Cal. App. 4th 939, 954 (2009).  The determination of whether CUTSA preempts a civil claim therefore rests on whether the claim is based on trade secret misappropriation.

To some extent, Plaintiffs' conversion claim is based on trade secret misappropriation. *See* Compl. at ¶ 71 (basing claim on Breitfeld's disclosure of "trade-secret, proprietary, and other confidential information").  Indeed, Plaintiffs do not argue that their trade-secret-based conversion claim survives CUTSA preemption.  Their only contention is that their conversion claim survives to the extent it arises from Breitfeld's disclosure of "proprietary, and other confidential information."  California courts have held that that CUTSA does not preempt claims that, "although related to a trade secret misappropriation, are independent and based on facts distinct from the facts that support the misappropriation claim." *Angelica Textine Services, Inc. v. Park*, 220 Cal. App. 4th 496, 506 (2013).  That case relied on an earlier decision which concluded that a claim survives CUTSA preemption if it "does not depend on the existence of a trade secret." *Silvaco Data Systems v. Intel Corp.*, 184 Cal. App. 4th 210, 241 (2010).  *Angelica Textine Services* ultimately determined that none of the plaintiff's claims were preempted by CUTSA because they had a "basis independent of any misappropriation of a trade secret." *Angelica Textine Services*, 220 Cal. App. 4th at 507.[7]

---

[7] The parties cite to a number of district court decisions that reach various holdings about the reach of CUTSA's preemption provision.  To the extent that those decisions run contrary to *Angelica Textine Services* and *Silvaco Data Systems*, the Court must disregard them.  *See In re Kirkland*, 915 F.2d 1236, 1239 (9th Cir. 1990) ("[I]n the absence of convincing evidence that the highest court of the state would decide differently . . . a federal court is obligated to follow the decisions of the state's intermediate courts.") (internal citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 19-10563-DMG (JEMx)** | Date | April 28, 2020 |
|---|---|---|---|
| Title | *Byton North America Co., et al. v. Carsten Breitfeld, et al.* | Page | 13 of 14 |

Under those guidelines, Plaintiffs have pleaded conversion with respect to confidential or proprietary property that does not rise to the level of a trade secret.[8] The elements of a conversion claim are: "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1066 (1998).[9] Plaintiffs allege that Breitfeld converted Byton's trade secrets and proprietary or confidential information by divulging that information to Iconiq when he began working there. Compl. at ¶ 71. The extent to which any particular piece of property or information constitutes a trade secret, as opposed to merely proprietary or confidential information, is a factual matter unfit for resolution at the pleading stage. Once the parties have conducted enough discovery to define the scope of information or property that Breitfeld divulged to Iconiq, the Court can determine whether CUTSA preempts a conversion claim based on that information or property.

Accordingly, the Court **GRANTS** the MTD as to Plaintiffs' seventh cause of action to the extent that the conversion claim is based on trade secret information. The Court **DENIES** the MTD as to Plaintiffs' seventh cause of action insofar as it arises from non-trade-secret information.

**D.    Violation of the California Unfair Competition Law**

Plaintiffs' eighth cause of action is for violation of the UCL. Breitfeld argues that Plaintiffs' UCL claim is preempted by CUTSA and fails because Plaintiffs have an adequate remedy at law.

---

[8] CUTSA defines a trade secret as information that: "(1) [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1. It is therefore possible for a company to consider certain information confidential without that information meeting the statutory definition of a trade secret. Whether Plaintiff can successfully demonstrate damages in such circumstances, however, is a matter not raised in the motion and therefore would be subject to proof.

[9] Some courts have expressed concern that because a conversion claim relies on stolen *property*, confidential and proprietary information does not qualify as property. *See Silvaco*, 184 Cal. App. 4th at 238–39. But the Ninth Circuit has held that in the context of a conversion claim, "property is a broad concept that includes every intangible benefit and prerogative susceptible of possession or disposition." *Kremen v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2003) (applying California law). A conversion claim based on non-trade-secret, confidential information may therefore proceed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 19-10563-DMG (JEMx)** | Date | April 28, 2020 |
| Title | *Byton North America Co., et al. v. Carsten Breitfeld, et al.* | Page | 14 of 14 |

The preemption analysis for the UCL claim turns on the same question as the one discussed above: whether the claim has a basis independent of the misappropriation of a trade secret. The answer is also the same—to the extent that Plaintiffs' UCL claim is derivative of their claim for misappropriation of trade secrets, it is preempted. But Plaintiffs also allege that Defendants misappropriated non-trade-secret confidential information, and breached Breitfeld's duty of loyalty and fiduciary duties. Compl. at ¶ 74. These are independent bases for a UCL violation. Thus, to the extent the UCL claim is derivative of these non-trade-secret-based claims, it is not preempted.

Breitfeld also contends that because Plaintiffs have an adequate remedy at law, they seek impermissible duplicative relief. *See Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1203 (N.D. Cal. 2016) ("A plaintiff may only seek equitable relief under California's UCL where she has no adequate remedy at law"). There appears to be an intra-circuit split on the issue of whether courts may allow UCL claims to proceed past the pleading stage when other adequate remedies exist. *See Eason v. Roman Catholic Bishop of San Diego*, 414 F. Supp. 3d 1276, 1282 (S.D. Cal. 2019) (citing cases taking conflicting positions). In the absence of controlling authority on this specific issue, the Court agrees with those courts that allow plaintiffs to plead UCL claims in the alternative, even when other adequate remedies may exist. Indeed, the Ninth Circuit's general rule is that plaintiffs may plead alternative claims, even if those claims are inconsistent. *See PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 858-59 (9th Cir. 2007) ("we allow pleadings in the alternative—even if the alternatives are mutually exclusive.").

The Court therefore **GRANTS** the MTD as to Plaintiffs' eighth cause of action to the extent it arises out of allegations of trade secret misappropriation, but **DENIES** the MTD as to Plaintiffs' eighth cause of action in all other respects.

## IV.
## CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Breitfeld's MTD. The Court also determines that Plaintiffs will not be able to cure the defects identified above regarding their seventh and eighth causes of action even if given the chance to amend their Complaint. The Court therefore **DENIES** leave to amend. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (courts should not deny leave to amend unless "the pleading could not possibly be cured by the allegation of other facts"). Breitfeld shall file his Answer to the Complaint no later than **May 19, 2020**.

**IT IS SO ORDERED**.