1   MAYER BROWN LLP
    JOHN NADOLENCO (SBN 181128)
2     *jnadolenco@mayerbrown.com*
    RUTH ZADIKANY (SBN 260288)
3     *rzadikany@mayerbrown.com*
    ALEXANDER VITRUK (SBN 315756)
4     *avitruk@mayerbrown.com*
    350 South Grand Avenue, 25th Floor
5   Los Angeles, CA  90071
    Telephone:  (213) 229-9500
6   Facsimile:   (213) 625-0248

7   Attorneys for Plaintiffs
    Byton North America Corporation and
8   Byton Limited

9

10              **UNITED STATES DISTRICT COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12                   **WESTERN DIVISION**

13

14   BYTON NORTH AMERICA                  Case No. 2-19-cv-10563-DMG-JEM
     CORPORATION, a Delaware
15   corporation; and BYTON LIMITED, a    **PLAINTIFFS BYTON NORTH**
     Hong Kong company,                   **AMERICA CORPORATION AND**
16                                        **BYTON LIMITED'S REPLY IN**
                    Plaintiffs,           **SUPPORT OF MOTION TO**
17                                        **DISMISS DEFENDANT CARSTEN**
              v.                          **BREITFELD'S COUNTERCLAIMS**
18                                        ***WITH PREJUDICE* FOR:**
     ICONIQ MOTORS NORTH
19   AMERICA, INC., a California          **(1) LACK OF SUBJECT MATTER**
     corporation; CARSTEN BREITFELD,      **JURISDICTION;**
20   an individual; and DOES 1 THROUGH
     25 INCLUSIVE,                        **(2) *FORUM NON CONVENIENS;***
21
                    Defendants.           **(3) FAILURE TO STATE A CLAIM;**
22
                                          **(4) LACK OF PERSONAL**
23                                        **JURISDICTION AS TO BYTON**
                                          **LIMITED**
24
                                          Assigned to Hon. Dolly M. Gee
25
                                          Date:   September 18, 2020
26                                        Time:   9:30 A.M.
                                          Dept:   8C
27

28

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION .................................................................1

II. BREITFELD HAS NOT MET HIS BURDEN TO SHOW THAT THE COURT HAS SUPPLEMENTAL JURISDICTION OVER HIS COUNTERCLAIMS .................................................................2

    A. Breitfeld's Seven Counterclaims Would Predominate Over Byton's DTSA Claim, Transforming The Litigation Into A Wage-And-Hour Case Based On The Interpretation Of An Employment Contract................3

    B. Breitfeld Cannot Show That His Employment Claims Are Interdependent On Byton's Trade Secret Claim. ..........................................5

        1. Breitfeld Fails To Show How The "Operative Facts" Of His Counterclaims For Unpaid Wages And Benefits Are "So Logically Connected" To The DTSA Claim For Trade Secret Misappropriation...................................................5

            a. The Operative Facts Necessary To Prove Byton's DTSA Claim Do Not Substantially Overlap With Those Necessary To Prove Breitfeld's Wage Claims. .......................6

            b. The Employment Contract Is Irrelevant To Byton's DTSA Claim, Which Will Also Require Different Evidence Than Breitfeld's Wage Claims. ...............................9

            c. There Is No "Loose Factual Connection" Here......................13

    C. Supplemental Jurisdiction Is Also Unavailable Under Section 1367(c).....14

III. BREITFELD FAILED TO MEET HIS HEAVY BURDEN TO PROVE THE *MANDATORY* FORUM SELECTION CLAUSE IS UNENFORCEABLE.........16

    A. Breitfeld—Not Byton—Bears The Heavy Burden Of Proof To Show That The Mandatory Forum Selection Clause Should Not Be Enforced. ..16

    B. Breitfeld Fails To Demonstrate "Gravely Difficult, Inconvenient, And Dangerous" Circumstances In Hong Kong. ................................................17

    C. Breitfeld Admitted That Each of His Counterclaims Is "Based Upon," "Arise[s] Out Of," And Is "Governed By" The Employment Contract. ....19

    D. Breitfeld Cannot Reasonably Argue That Byton NA Is Not Covered By The Forum-Selection Clause.........................................................................21

    E. Byton Waived Nothing By Bringing Suit Against Breitfeld And Iconiq In California For Their Theft of Byton Trade Secrets In California..........22

# TABLE OF CONTENTS
(continued)

**Page**

IV.    BREITFELD HAS FAILED TO MEET HIS BURDEN TO SHOW THAT THIS COURT HAS PERSONAL JURISDICTION OVER BYTON LIMITED ............................................................................................23

V.    BREITFELD'S OPPOSITION CONFIRMS THAT HE IS UNABLE TO STATE ANY CLAIM AGAINST BYTON NA ....................................24

VI.    EACH OF BREITFELD'S COUNTERCLAIMS MUST BE DISMISSED BECAUSE THEY ARE GOVERNED BY HONG KONG LAW ......................25

VII.   CONCLUSION.................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amba Mktg. Sys., Inc. v. Jobar Int'l., Inc.*,
   551 F.2d 784 (9th Cir. 1977) ...................................................................... 23

*Bromlow v. D & M Carriers, LLC*,
   438 F. Supp. 3d 1021 (N.D. Cal. 2020) ........................................................ 21

*Capri Trading Corp. v. Bank Bumiputra Malaysia Berhad*,
   812 F.Supp. 1041 (N.D. Cal. 1993) .............................................................. 19

*Castillo v. J.P. Morgan Chase Bank, N.A.*,
   2020 WL 496072 (N.D. Cal. 2020) ............................................................... 12

*Comer v. Micor, Inc.*,
   436 F.3d 1098 (9th Cir. 2006) ...................................................................... 22

*In re Comty. Bank of N. Virginia Mortg. Lending Practices Litig.*,
   911 F.3d 666 (3d. Cir. 2018) ..................................................................... 7, 8

*Contemporary Services Corp. v. Hartman*,
   2008 WL 3049891 (C.D. Cal. 2008) ......................................................... 4, 14

*Democracy Council of California v. WRN Ltd., PLC*,
   2010 WL 3834035 (C.D. Cal. 2010) .............................................................. 19

*Electro-Mech. Corp. v. Riter Eng'g Co.*,
   2011 WL 2118704 (D. Utah 2011) ................................................................ 22

*Fighter's Market, Inc. v. Champion Courage LLC*,
   207 F.Supp.3d 1145 (S.D. Cal. 2016) ........................................................... 23

*Gerritsen v. Warner Bros. Entm't Inc.*,
   116 F. Supp. 3d 1104 (C.D. Cal. 2015) ......................................................... 25

*Graduation Solutions LLC v. Luya Enterprise Inc., et al.*,
   CV 19-1382-DMG ................................................................................. 20, 21

*Grupo Salinas Inc. v. JR Salinas Wheels & Tires, Inc.*,
   2017 WL 292339 (C.D. Cal. 2017) ....................................................... *passim*

-iii-

*Gutierrez v. Advanced Medical Optics, Inc.*,
  640 F.3d 1025 (9th Cir. 2011) ...................................................................... 20

*Hales v. Winn-Dixie Stores, Inc.*,
  500 F.2d 836 (4th Cir. 1974) ........................................................... 7, 10, 13

*Hart v. Clayton-Parker & Assocs., Inc.*,
  869 F. Supp. 774 (D. Ariz. 1994) .......................................................... 5, 13

*HB Gen. Corp. v. Manchester Partners L.P.*,
  95 F.3d 1185 (3d Cir. 1996) ..................................................................... 12

*Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.*,
  485 F.3d 450 (9th Cir. 2007) .................................................................... 24

*Jewel Systems, Inc. v. Centinel Group, Inc.*,
  2014 WL 4704815 (S.D. Cal. 2014) .................................................. 7, 10, 13

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) .................................................................................. 5, 9

*Kuba v. 1–A Agric. Ass'n*,
  387 F.3d 850 (9th Cir. 2004) .................................................................... 13

*LaCross v. Knight Transportation, Inc.*,
  95 F. Supp. 3d 1199 (C.D. Cal. 2015) ...................................................... 20

*Lagunas v. SPS Technologies*,
  LLC, 2019 WL 949523 (C.D. Cal. Feb. 27, 2019) .................................... 12

*Lou v. Ma Labs.*,
  2013 WL 3989425 (N.D. Cal. Aug. 2, 2013) ....................................... *passim*

*Lyon v. Whisman*,
  45 F.3d 758 (3rd Cir. 1995) ................................................................. *passim*

*Manetti–Farrow, Inc. v. Gucci America, Inc.*,
  858 F.2d 509 (9th Cir. 1988) .................................................................... 20

*Mattel, Inc. v. MGA Entm't, Inc.*,
  705 F.3d 1108 (9th Cir. 2013) ......................................................... 5, 7, 13

*McDonnell Douglas Corp. v. Islamic Republic of Iran*,
  758 F.2d 341 (8th Cir. 1985) ............................................................. 18, 19

*MGA Entm't, Inc. v. Hartford Ins. Grp.*,
2012 WL 12894053 (C.D. Cal. Jan. 27, 2012) ............................................................ 24

*Miller v. Ladd*,
2019 WL 10695883 (N.D. Cal. July 29, 2009) ..................................................... 12, 13

*Moore v. Pflug Packaging & Fulfillment, Inc.*,
2018 WL 2430903 (N.D. Cal. 2018) (*see* Opp. ) ........................................................ 6

*N. Am. Specialty Ins. Co. v. Debis Fin. Servs. Inc.*,
513 F.3d 466 (5th Cir. 2007) ...................................................................................... 22

*Nedlloyd Lines B.V. v. Superior Court*,
3 Cal.4th 459 (1992) ................................................................................................... 25

*Picard v. Bay Area Reg'l Transit Dist.*,
823 F. Supp. 1519 (N.D. Cal. 1993) ........................................................................... 15

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981) ................................................................................................ 20, 21

*Pochiro v. Prudential Ins. Co. of Am.*,
827 F.2d 1246 ........................................................................................................ 8, 9, 10

*Raiser v. City of Murrieta*,
2018 WL 5961301 (C.D. Cal. 2018) ........................................................................... 15

*Ranza v. Nike, Inc.*,
793 F3d 1059 (9th Cir. 2015) ..................................................................................... 20

*Rowen v. Soundview Commc'ns, Inc.*,
2015 WL 899294 (N.D. Cal. Mar. 2, 2015) ............................................................... 25

*S & J Rentals, Inc. v. Hilti, Inc.*,
294 F. Supp. 3d 978 (E.D. Cal. 2018) ................................................................... 16, 21

*Sonora Diamond Corp. v. Superior Court*,
83 Cal. App. 4th 523 (2000) ....................................................................................... 23

*Stremor Corp. v. Wirtz*,
2014 WL 6872891 (D. Ariz. 2014) ................................................................... 4, 7, 14

*Sun v. Kao*,
170 F. Supp. 3d 1321 (W.D. Wash. 2016) ............................................................ 19, 20

*TK Prod., LLC v. Buckley*,
   2016 WL 7013470 (D. Or. 2016) ................................................................ 19

*Trans-Tec Asia v. M/V Harmony Container*,
   518 F.3d 1120 (9th Cir. 2008) ................................................................... 25

*Turner v. Thorworks Indus., Inc.*,
   2006 WL 829142 (E.D. Cal. Mar. 28, 2006) ............................................... 22

*United States v. King Features Entm't, Inc.*,
   843 F.2d 394 (9th Cir. 1988) ..................................................................... 22

*In re W. States Wholesale Natural Gas Antitrust Litig.*,
   715 F.3d 716 (9th Cir. 2013) ..................................................................... 23

*Willcox v. Lloyds TSB Bank, PLC*,
   2016 WL 593458 (D. Haw. Feb. 11, 2016) .......................................... 15, 25

*Yei A. Sun v. Advanced China Healthcare, Inc.*,
   901 F.3d 1081 (9th Cir. 2018) .............................................................*passim*

**Statutes**

28 U.S.C. § 1367 ................................................................... 3, 4, 5, 8, 13, 14

Cal. Labor Code § 2924 ............................................................................. 19

**Other Authorities**

Fed. R. Civ. P. 12 ...................................................................................... 24

Fed. R. Civ. P. 16 ...................................................................................... 10

Fed. R. Civ. P. 26 ...................................................................................... 10

**Constitution**

United States Constitution Article III ................................................. 4, 5, 14

1

## I.  INTRODUCTION

2       Nothing in Defendant Carsten Breitfeld's ("Breitfeld") opposition to Plaintiffs

3   Byton North America Corporation ("Byton NA") and Byton Limited's (jointly, "Byton")

4   motion to dismiss Breitfeld's Counterclaims changes the reality that this Court does not

5   have supplemental jurisdiction over Breitfeld's state-law Counterclaims because they

6   have nothing to do with Byton Limited and Byton NA's Second Cause of Action for

7   Misappropriation of Trade Secrets under the Federal Defend Trade Secrets Act, 18

8   U.S.C. § 1836, et seq. ("DTSA claim"). Each Counterclaim admittedly "arise[s] out of

9   the Employment Contract" (Counterclaims ¶ 13) and was brought "to obtain the

10  compensation to which [Breitfeld] is entitled pursuant to the Employment Contract" (*id.*

11  at ¶ 5; *id.* at ¶ 85) and, as a result, should be adjudicated *in Hong Kong under Hong Kong*

12  *law*, given the mandatory forum-selection clause and choice-of-law provision in the

13  parties' Employment Contract. *See* Declaration of Matt Barter ("Barter Decl."), Ex. B.

14      Tellingly, Breitfeld does not even *attempt* to distinguish the key authorities cited in

15  Byton's motion and, instead cites decisions that have no bearing here. Thus, Breitfeld has

16  failed to meet his respective burdens on each of Byton's three jurisdictional motions:

17          1.   Breitfeld has failed to prove that the Court has supplemental jurisdiction

18               over his state law claims, as those claims concern a private employment

19               contract that has nothing to do with Byton Limited or Byton NA's federal

20               claim for trade secret misappropriation;

21          2.   Breitfeld has failed to prove the  "extraordinary circumstances" that would

22               prevent the Court from enforcing the parties' agreed upon forum-selection

23               clause "to submit to the exclusive jurisdiction of the Hong Kong courts and

24               tribunals;" and

25          3.   Breitfeld does not come close to showing that this Court may exercise

26               personal jurisdiction over Byton Limited, a Hong Kong company with no

27               connection to California.

28

Thus, the Court should dismiss the Counterclaims for those reasons. But there are still other reasons to dismiss. The Court can—and should—dismiss all of Breitfeld's Counterclaims because they are brought under California law, yet the Employment Contract from which they admittedly arise *mandates* they be "governed by the laws of Hong Kong."

The opposition also confirms that Breitfeld has failed to properly allege any wrongdoing by Byton NA. Though Breitfeld incorrectly states that Byton NA "fail[ed] to compensate [him]," the Employment Contract and Secondment Letter (*see* Counterclaims Exs. B, C) that the Court can consider in ruling on Byton NA's motion make clear that *Byton Limited*—not Byton NA—had any obligation to compensate him.

Next, Breitfeld claims that the new security law in Hong Kong would lead to unspecified "procedural challenges" in Hong Kong. *See* Opp. 14:13. But he does not—and cannot—explain what that means or how the national security law could possibly impact a private dispute about employment issues that would be brought in the highly specialized Hong Kong Labour Tribunal. *See* Barter Decl. Ex. C. That forum would certainly be more welcoming than the original one *Breitfeld agreed to* when he first commenced employment with Byton Limited when he expressly agreed to have any employment disputes "governed by the laws and regulations of PRC [People's Republic of China]." Counterclaims Ex. A at 2, 6.

In short, the Court should dismiss the Counterclaims in favor of the agreed-upon forum.

## II. BREITFELD HAS NOT MET HIS BURDEN TO SHOW THAT THE COURT HAS SUPPLEMENTAL JURISDICTION OVER HIS COUNTERCLAIMS

As an initial matter, Breitfeld does not dispute that he bears the burden of proof and persuasion to show how each of his state law claims falls within the jurisdiction of this Court. *See* Mot. at 7-8 (citing to *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). He also does not dispute that, in matters involving federal question jurisdiction, the Ninth Circuit and other courts have consistently held that they do not have supplemental jurisdiction over *state law claims for non-payment under a private contract* when those claims are "separately maintainable and determinable without any reference to

the facts alleged or contentions stated" in the federal statutory claim. *See* Mot. at 7-10 (citing to *Hales v. Winn-Dixie Stores, Inc.,* 500 F.2d 836, 847-48 (4th Cir. 1974), *Jewel Systems, Inc. v. Centinel Group, Inc.,* 2014 WL 4704815 *5-6 (S.D. Cal. 2014), and related cases). And Breitfeld does not dispute that supplemental jurisdiction is unavailable where "the only common fact is the parties' previous employment relationship." *See* Mot. at 7-10 (citing to *Grupo Salinas Inc. v. JR Salinas Wheels & Tires, Inc.,* 2017 WL 292339 *3 (C.D. Cal. 2017), *Lyon v. Whisman,* 45 F.3d 758, 762-63 (3rd Cir. 1995), and related cases).

Since Breitfeld's Counterclaims, like the claims in those cases, (i) are "separately maintainable" state law claims for non-payment under a private contract, and (ii) the only connection between the state law claims and the federal claim(s) is the employment relationship between the parties, the Court should dismiss Breitfeld's Counterclaims.

## A. Breitfeld's Seven Counterclaims Would Predominate Over Byton's DTSA Claim, Transforming The Litigation Into A Wage-And-Hour Case Based On The Interpretation Of An Employment Contract.

Instead of addressing the authorities cited in Byton's motion, Breitfeld misstates the law, suggesting that the Court should analyze the relationship between his seven state law Counterclaims and *all of Byton's claims*, not just the federal statutory DTSA claim. *See* Opp. at 6:22-23 ("[T]wo sets of claims"); 7:3 ("[B]oth set of claims"); 7:25 ("breach of fiduciary duty"); 8:2 ("Byton's DTSA and other misappropriation claims"); 8:15-16 (comparing Breitfeld's "obligations with respect to employees" and "fiduciary duties" to "contractual relationship"); 9:11 ("Byton's claims"); 9:14 ("[I]nitial claims"); 9:15-17 ("[R]elationship between the claims . . . both sets of claims"); 10:5 ("[A]ll the parties' interrelated claims"); 12:10-11 ("Byton . . . chose to bring its UCL claim here"); 12:18 ("[B]oth sets of claims").[1]

That is absolutely wrong. The legal inquiry is whether Breitfeld can show supplemental jurisdiction over his seven state law Counterclaims only in relation to Byton's *DTSA claim*, since that is the only claim subject to the Court's "original jurisdiction" under 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are *so related to claims in the action within such original jurisdiction* that they

---

[1] Breitfeld does the same in his declaration at ¶¶ 17-18.

form part of the same case or controversy under Article III of the United States Constitution") (emphasis added). Byton Limited and Byton NA's *other state law claims* are not subject to the Court's "original jurisdiction." The Court only has *supplemental jurisdiction* over them, as Breitfeld conceded in his removal papers as well as in his Counterclaims at ¶ 10.

Breitfeld nonetheless insists on comparing his claims to *all* of Byton's "claims," including "breach of fiduciary duty" and "other misappropriation claims." Opp. at 6:22-23, 7:3, 7:25, 8:2, 8:15-16, 9:11, 9:14, 9:15-17, 10:5, 12:10-11, 12:18.[2] He does so undoubtedly to pretend that his seven state law Counterclaims for alleged non-payment of wages under an employment contract would *not* substantially predominate over Byton's sole federal statutory claim for trade secret misappropriation. But they certainly would, transforming the litigation into a wage-hour case based on the interpretation of an employment contract governed by Hong Kong law. *See Contemporary Services Corp. v. Hartman,* 2008 WL 3049891 *5-6 (C.D. Cal. 2008) (denying supplemental jurisdiction where "the nine state law claims and counterclaims, *which derive largely from Defendant's employment contract* . . . [would] substantially predominate over Plaintiffs' sole federal claim and constitute the 'real body' of the case") (emphasis added). *See also Stremor Corp. v. Wirtz,* 2014 WL 6872891 *2-3 (D. Ariz. 2014) (denying supplemental jurisdiction over 14 counterclaims "based on state law and employment-related agreements," because they would "predominate over" the two "narrow" federal claims" for copyright infringement). Indeed, Breitfeld simply ignores *Hartman* and *Wirtz*, which make clear that multiple state law claims arising from an employment agreement would substantially predominate over one (or even two, in the case of *Wirtz*) narrow federal claims. Accordingly, Breitfeld's seven state law Counterclaims arise from his employment agreement and also would substantially predominate over

---

[2] Breitfeld's mischaracterization of law is not an innocent mistake but a doubling down on the same jurisdictional sleight of hand he attempted in his Counterclaims at ¶ 10 (analyzing "each of Plaintiffs' claims" under 28 U.S.C. § 1367) and ¶ 11 ("The Court has supplemental subject matter jurisdiction over Breitfeld's counterclaims pursuant to 28 U.S.C. § 1367, which 'form part of the same case or controversy' *as the claims asserted in the Complaint. As with Plaintiffs' claims*, Breitfeld's counterclaim for breach of contract and his other counterclaims . . .") (emphasis added); *see also id.* at ¶ 13.

Byton's narrow claim for trade secret misappropriation.

### B.   Breitfeld Cannot Show That His Employment Claims Are Interdependent On Byton's Trade Secret Claim.

Breitfeld has failed to meet his burden to show how each of his seven Counterclaims for unpaid wages and benefits are "so related" to Byton's DTSA claim against Breitfeld and co-defendant ICONIQ Motors North America, Inc. ("Iconiq") that "they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *see Kokkonen,* 511 U.S. at 377 (burden lies with party asserting jurisdiction). The bottom line is that his Counterclaims allege violations of his Employment Contract: that Byton Limited constructively terminated him and failed to pay him his wages and other benefits. In their DTSA claim, however, Byton NA and Byton Limited allege that Breitfeld and Iconiq stole and used *post-termination* Byton trade secrets for their own benefit. *See* Compl. ¶¶ 28-35. There is no factual interdependence between Breitfeld's Counterclaims and Byton's DTSA claim. It is, thus, not surprising that Breitfeld *did not even attempt to address* Byton's dispositive authorities.

### 1.   Breitfeld Fails To Show How The "Operative Facts" Of His Counterclaims For Unpaid Wages And Benefits Are "So Logically Connected" To The DTSA Claim For Trade Secret Misappropriation.

To establish supplemental jurisdiction under 28 U.S.C. § 1367(a), Breitfeld admits that he must demonstrate a "logical relationship" between his Counterclaims and Byton's DTSA claim. *See* Opp. at 6:12-14 (citing to *Pochiro v. Prudential Ins. Co. of Am.,* 827 F.2d 1246, 1249) (9th Cir. 1987) (emphasis added). "A logical relationship exists when the counterclaim arises from the same aggregate set of operative facts as the initial claim . . ." *Mattel, Inc. v. MGA Entm't, Inc.,* 705 F.3d 1108, 1110-11 (9th Cir. 2013) ("That both Mattel and MGA claimed they stole each other's trade secrets isn't enough to render MGA's counterclaim compulsory. . . . MGA's claim of trade-secret misappropriation was not logically related to Mattel's counterclaim"). In other words, "courts should consider whether the facts necessary to prove the claim and counterclaim substantially overlap." *Hart v. Clayton-Parker & Assocs., Inc.,* 869 F. Supp. 774, 776 (D. Ariz. 1994) (citation omitted).

-5-

Breitfeld represents that "here, two sets of claims center on the performance of employment duties and subsequent employee departure" (Opp. at 6:22-24), and that "[b]oth sets of claims arise from Breitfeld's performance as an officer and director of Byton and the circumstances of his departure – and not a mere employer-employee relationship, as Byton wrongly asserts" (Opp. at 7:16-19). That is just not the case.

### a. The Operative Facts Necessary To Prove Byton's DTSA Claim Do Not Substantially Overlap With Those Necessary To Prove Breitfeld's Wage Claims.

Byton's DTSA claim narrowly concerns Breitfeld and Iconiq "(a) acquiring Byton's trade secrets, (b) disclosing the information contained in Byton's trade secrets to Iconiq, and (c) using Byton's trade secrets for [Breitfeld and Iconiq's] benefit." *See* Compl. ¶ 33; *see also* 18 U.S.C. § 1836, *et seq*. Byton's DTSA claim against Breitfeld and Iconiq has nothing to do with Breitfeld's "[job] performance" (that is not even an element under DTSA). Thus, Breitfeld's reliance on *Moore v. Pflug Packaging & Fulfillment, Inc.,* 2018 WL 2430903 at *4 (N.D. Cal. 2018) (*see* Opp. at 7:5-8 and 7:19-20)—where a CFO's "job performance" was obviously "fundamental" to his claims for *discrimination*, in which the CFO alleged he "could perform the essential functions of the position he held"—is misplaced.[3] And the only "circumstance[] of [Breitfeld's] departure" at issue was his theft and misappropriation of Byton trade secrets for Iconiq's benefit, which continued long after Breitfeld terminated his employment at Byton. *See* Compl. at 5:13-15, ¶¶ 33-35.[4]

---

[3] The *Moore* court distinguished the *Grupo Salinas* decision cited by Byton on this very ground. *See* 2018 WL 2430903 at *4 ("Logically, evidence regarding Moore's performance failures as CFO is relevant to the discrimination claims asserted in the FAC"). Since Breitfeld's job performance is irrelevant to Byton's DTSA claim *as a matter of law*, this case is similar to *Grupo Salinas,* not *Moore*. *Cf. Grupo Salinas,* 2017 WL 2972339 at * 3 (rejecting supplemental jurisdiction where "[t]he only area of overlap between the[ ] claims [was] the existence of an employment relationship").

[4] As explained in Byton's motion, the DTSA claim *primarily* concerns Breitfeld's post-employment conduct, particularly due to Iconiq's involvement. *See* Mot. at 1:2, 1:21-22, 16:21. Breitfeld does not dispute this but merely highlights that he began stealing Byton's trade secrets while he was still employed by Byton NA and Byton Limited, as is often the case in trade secret-related matters. *See* Opp. at 7:21-25. Breitfeld does not explain the legal significance of when he *began* his wrongful conduct, and his fixation serves only to underscore the reality that "[t]he only area of overlap between" his seven state law claims and Byton DTSA claim was "the existence of an employment relationship." *Grupo Salinas,* 2017 WL 2972339 at * 3.

-6-

Breitfeld's Counterclaims are a world apart from Byton's DTSA claim in that they seek "to obtain [ ] compensation . . . pursuant to the Employment Contract." Counterclaims ¶ 5; *see id.* at ¶ 13 ("Breitfeld's counterclaims are similarly based upon and arise out of the Employment Contract"). Breitfeld has pled that the Court should exercise supplemental jurisdiction due to his "prior employment" at Byton NA and Byton Limited. *Id.* at ¶¶ 10, 11. And significantly, he admitted that "[a]t all relevant times, Breitfeld's employment with Counterdefendants was governed by the Employment Contract." *Id.* at ¶ 85. Thus, Breitfeld's allegations contradict his current claim that his Counterclaims involve anything more than non-payment under an employment agreement. Supplemental jurisdiction is unavailable in such circumstances. *See Hales,* 500 F.2d at 847-48 ("separately maintainable" claims for non-payment under a private contract are not entitled to supplemental jurisdiction); *Jewel Systems,* 2014 WL 4704815 at *5-6 ("[N]on-payment of various notes and security agreements plainly do not derive from the operative facts underlying [federal] claims for conversion of its database and code, and related claims").

Indeed, even a cursory review of each Counterclaim reveals that the only "circumstances of [Breitfeld's] departure" (Opp. at 7:16-19) were that, under the terms of the Employment Contract, he was allegedly constructively terminated by Byton Limited and not paid. Counterclaims ¶¶ 42-89. Such "circumstances" have no factual interdependence with the "very narrow, well-defined factual issues" concerning Byton's DTSA claim against Breitfeld, *i.e.*, whether Breitfeld stole Byton NA and Byton Limited trade secrets and used them for Iconiq's benefit. *See Lyon,* 45 F.3d at 763; *Mattel,* 705 F.3d at 1110-11. This Court should reject Breitfeld's attempt to link his wage claims to Byton's trade-secret claims. *See Lyon,* 45 F.3d at 763 ("District courts have resisted expanding supplemental jurisdiction based merely on employment contract"); *see also In re Comty. Bank of N. Virginia Mortg. Lending Practices Litig.,* 911 F.3d 666, 672 (3d. Cir. 2018) (state law claim sounding in contract that is "not factually interdependent" with federal claim is not entitled to supplemental jurisdiction); *Stremor Corp. v. Wirtz,* 2014 WL 6872891 *2-3 (D. Ariz. 2014) (employment and contract-based state law counterclaims do not form part of same case or

controversy as federal copyright infringement claim).

Breitfeld attempts to distinguish between his contractual and "non-contractual" Counterclaims (*see* Opp. at 9:10-14), but that is a distinction without a difference. As noted, Breitfeld has admitted that each of his Counterclaims arises from alleged non-payment under the Employment Contract. *See* Counterclaims ¶¶ 4, 5, 13, 20, 25, 35, 85. Since "[a]t all relevant times, Breitfeld's employment with Counterdefendants was governed by the Employment Contract" (Counterclaims ¶ 85), each Counterclaim necessarily "sounds in contract." *See In re Comty. Bank of N. Virginia Mortg. Lending Practices Litig.,* 911 F.3d at 672. In any event, each "non-contractual" Counterclaim indisputably arises from the parties' "previous employment relationship" (*Grupo Salinas,* 2017 WL 2972339 at * 3), and courts have rejected both contractual and non-contractual claims that were "based merely on an employment contract." *Lyon,* 45 F.3d at 763; *Lou v. Ma Labs.,* 2013 WL 3989425 at *2 (N.D. Cal. Aug. 2, 2013) (holding that commonality of "employment" is "too tenuous" to confer supplemental jurisdiction).

Breitfeld's authorities also are inapposite. He mostly relies on *Pochiro,* 827 F.2d 1246 (*see* Opp. at 6:9-7:4). First of all, *Pochiro* did not involve one narrow federal statutory claim.[5] The *Pochiro* court analyzed whether a former employee of Prudential Insurance Company's claims for defamation, abuse of process, breach of employment contract, and intentional interference with business relationship should have been raised in Prudential's prior Arizona state court action against Pochiro "for breach of employment contract, unfair competition, and intentional interference with business relations." *Id.* at 1250. (The Opposition at 6:25 misstates that Prudential sued Pochiro for "misappropriation of trade secrets." There was no such cause of action. *In fact, there was no mention of "trade secret" in the opinion*.) Pochiro also "admit[ed] that the judicial resolution of Prudential's claims would have a 'pervasive' effect on [his] claims and might even 'eliminate' them entirely." *Id.* at 1251. The court also observed that Pochiro's "claim that [he] was defamed centers around statements allegedly made by

---

[5] The basis for removal in *Pochiro* was diversity jurisdiction. The *Pochiro* court thus compared *two overlapping sets of state court claims*. Here, only Byton's narrow DTSA claim may be analyzed in relation to the Counterclaims under 28 U.S.C. § 1367.

Prudential in relation to [his] use of Prudential's confidential records." *Id.* As the *Pochiro* court stated, "Not only do the facts necessary to prove the two claims substantially overlap, but the collateral estoppel effect of Prudential's victory in the first action would preclude the Pochiros from denying the truth of Prudential's statements." *Id.* Stated differently, if Prudential were to prove that Pochiro used its confidential records to solicit business, then Pochiro could not deny the truth of Prudential's statement that he was a "crook." *Id.* at 1248.

This case is completely different. Here, "the facts necessary to prove" Byton's DTSA claim and Breitfeld's unpaid compensation claims do not overlap at all, much less "substantially" (*id.* at 1251). Byton is suing Breitfeld and Iconiq because they misappropriated Byton's trade secrets, while Breitfeld is trying to countersue Byton for not paying him under a private contract. Breitfeld also fails to show how Byton NA or Byton Limited prevailing in their DTSA claim would have a "collateral estoppel effect" on any of his seven state law claims for nonpayment under the Employment Contract. *Id.*

Instead, Breitfeld vaguely states that "should the Court determine that Breitfeld misappropriated Byton's information, as Byton alleges, Breitfeld's counterclaim for compensation owed under the [Employment] Contract requiring him to maintain that same information *could be* moot." (Opp. at 8:21-23) (emphasis added). Notably evasive, Breitfeld tellingly cannot explain why that would be the case (*cf. Pochiro,* 827 F.2d at 1251), does not identify which "counterclaim" *could* fail, and does not cite any provision in the Employment Contract. *See Kokkonen,* 511 U.S. at 377 (burden lies with party asserting jurisdiction). The statement is also contradicted by Breitfeld's First Affirmative Defense to Byton's Complaint, which states that "Byton shall pay Defendant the full entitlements due under the [Employment] [C]ontract *if the contract is terminated or ends for no matter what reason . . .*" *See* ECF No. 33 at 8-9 (emphasis added).

> **b.    The Employment Contract Is Irrelevant To Byton's DTSA Claim, Which Will Also Require Different Evidence Than Breitfeld's Wage Claims.**

For its part, Byton does not mention the Employment Contract in its DTSA claim,

1   because it is irrelevant to that claim.[6] As noted, the "facts necessary to prove" (*Pochiro*, 827

2   F.2d at 1251) the DTSA claim are derived from a federal statute, 18 U.S.C. § 1836, et seq.,

3   which narrowly requires Byton to prove that Breitfeld and Iconiq (i) took Byton's trade

4   secrets, (ii) disclosed them to Iconiq, and (iii) used them for Breitfeld and Iconiq's benefit.

5   *See* Compl. ¶ 33. Breitfeld tellingly does not identify facts necessary to prove *any* of his

6   Counterclaims, although he does not dispute that each of them arise from alleged non-

7   payment under the Employment Contract. *See* Counterclaims ¶¶ 5, 35, 85. Supplemental

8   jurisdiction is not available in such circumstances. *Hales*, 500 F.2d at 847-48; *Jewel Systems*,

9   2014 WL 4704815 at *5-6; *Lou*, 2013 WL 3989425 at *2; *Grupo Salinas*, 2017 WL

10  2972339 at *3; *Lyon*, 45 F.3d at 762-63.

11       Next, Breitfeld asserts that the Employment Contract "sets forth in detail Breitfeld's

12  obligations" regarding "trade secrets," citing to ¶¶ 6-8 of the amended agreement. *See* Opp.

13  at 7:27-8:1. But Paragraphs 6 and 8 of the amended Employment Contract do not concern

14  trade secrets, and Paragraph 7 simply requires Breitfeld to "keep in strict confidence," and

15  not "divulge . . . to any unauthorized person," any "trade secret[s]" of Byton Limited. Barter

16  Decl. Ex. B at ¶¶ 6-8. Still, Byton does not bring its claims under that provision; instead, it

17  proceeds based solely on a federal statute. *Compare* Compl. ¶¶ 28-35 to Barter Decl. Ex. B

18  at ¶ 7. Not surprisingly, courts have rejected supplemental jurisdiction over an alleged

19  breach of a confidentiality agreement that is not squarely relevant to a claim of unpaid

20  compensation. *See Lou*, 2013 WL 3989425 at *2 ("The allegations that plaintiff Lou

21  breached a confidentiality agreement by retaining unspecified documents or converting Ma

22  Labs' property [were] wholly irrelevant to the question of whether the company's

23  employment practices violate[d] the FLSA").

24       Breitfeld also argues that "[i]n response to Breitfeld's prior correspondence related to

25  compensation due Breitfeld under the [Employment] Contract, Byton claimed Breitfeld

26  ───────────────
    [6] Breitfeld accuses Byton Limited and Byton NA of "tortuously" not mentioning the
27  Employment Contract in the DTSA claim (Opp. at 8:7), but fails to explain how the
    Employment Contract is consequential to Byton's DTSA claim. It is clearly not and that
28  is why it is not mentioned in Byton's DTSA claim. Breitfeld conveniently fails to note
    that *he also did not mention the Employment Contract* in his demurrer (*see* ECF No. 20 at
    2-6) or in "Breitfeld's position" in the Joint Rule 16(b)/26(f) Report (ECF No. 25 at 4-5).

breached the [Employment] Contract through misappropriation of trade secrets or confidential information . . ." Opp. at 8:3-6 (citing to Breitfeld Decl. ¶ 15, Ex. C). Exhibit C to the Breitfeld Declaration is an April 17, 2019 letter from Byton's counsel to Breitfeld's Hong Kong counsel. Though that letter discusses other breaches by Breitfeld of his employment obligations—like improperly "promoting the products of our client's competitor"—the letter does not mention "trade secret" nor "misappropriation."[7] To be sure, Byton can pursue employment claims of its own against Breitfeld. But it would do so in Hong Kong, as required by the parties' agreement, not in this Court.

Breitfeld next claims that his "reliance on the [Employment] Contract in his defense against Byton is further proof that his claims are compulsory." *See* Opp. at 8:25-26. But his affirmative defenses actually highlight the *irrelevance* of the Employment Contract to Byton's DTSA claim. His First Affirmative Defense ("Contrary to the Parties' Written Agreement") is not directed at the DTSA claim but specifies: "Byton shall pay [Breitfeld] the full entitlements due under the [Employment] [C]ontract *if the contract is terminated or ends for no matter what reason . . ." See* ECF No. 33 at 8-9 (emphasis added). And the Second Affirmative Defense of "Offset" merely requests that "any [] recovery [by Byton] must be offset against amounts Plaintiffs owe or are found to owe to [Breitfeld] by virtue of Plaintiffs' conduct and breaches of their contractual obligations to Defendant." *Id.* at 9. Tellingly, Breitfeld cites to no authority establishing supplemental jurisdiction through an "offset" defense. Indeed, such a ruling would contravene the substantial case law rejecting supplemental jurisdiction where "the only common fact is the parties' previous employment relationship." *Grupo Salinas,* 2017 WL 2972339 at *3; *Lou,* 2013 WL 3989425 at *2-3 ("Defendants argue that the common transaction is plaintiff Lou's employment at Ma Labs, but this strand is too tenuous"); *Lyon,* 45 F.3d at 762-63. Breitfeld instead cites only to cases permitting supplemental jurisdiction "where state law 'counterclaims rely on essentially the same facts as does its defense' to

---

[7] The term "confidential information" is referenced in a different section of the letter enumerating "Dr. Breitfeld's ongoing obligations to Byton" such as "return of company property and removal of company data from devices," "restrictive covenants," and "intellectual property," and demanding that Breitfeld confirm "that he has not breached and does not intend to breach any of these obligations." *See* Breitfeld Decl. Ex. C.

claims within such original jurisdiction." *See* Opp. at 9:3-6 (citing to *HB Gen. Corp. v. Manchester Partners L.P.*, 95 F.3d 1185, 1190 (3d Cir. 1996)). That is not the case here.

Finally, Breitfeld argues that the Court should exercise supplemental jurisdiction because his Counterclaims would involve the same "witnesses and evidence" as Byton's DTSA claim (Opp. at 9:15-10:1), citing to *Lagunas v. SPS Technologies,* LLC, 2019 WL 949523 at *4 (C.D. Cal. Feb. 27, 2019) and *Miller v. Ladd,* 2019 WL 10695883 at *2 (N.D. Cal. July 29, 2009).

For starters, those distinguishable cases do not stand for that proposition. The *Lagunas* court evaluated a plaintiff's challenge to removal and found supplemental jurisdiction because both plaintiff's state-law claims and federal claims arise "out of a cohesive narrative: defendant's conduct towards plaintiff in his capacity as an employee." 2019 WL 949523 at *3 (citation omitted). Thus, the *Lagunas* held that "the evidence relevant to [plaintiff's] state and federal claims overlaps substantially" because "the resolution of both sets of claims will involve testimony about [plaintiff's] job responsibilities, the hours she worked, the hours for which she was paid, the amounts she was paid, [defendant's] timekeeping practices, and the events leading up to the termination of her employment." *Id.* at *4.

But no such "cohesive narrative" exists here because Byton's DTSA claim concerns only *Breitfeld and Iconiq's* theft and use of Byton's trade secrets, not Byton's conduct to-ward Breitfeld "in his capacity as an employee." *Id.* While Breitfeld's wage-and-hour Coun-terclaims may require such testimony, Byton's DTSA claim for trade secret misappropria-tion will not. Indeed, the Counterclaims and the DTSA claim will almost certainly involve different witnesses. Byton will be focusing on witnesses at *Iconiq*, while Breitfeld will focus on witnesses at *Byton*. *See Castillo v. J.P. Morgan Chase Bank, N.A.,* 2020 WL 496072 *4 (N.D. Cal. 2020) (supplemental jurisdiction is unavailable where, as here, "counterclaims will require proof of different facts, involve different witnesses, and apply different law").

*Miller* is even more off-base because it only involved federal and state law *disability claims* that *all* arose from defendant restaurant and bar "turn[ing] away [plaintiff] because of

1   the presence of her 'service dog.'" *See* 2009 WL 10695883 at *1.[8]

2       In sum, Breitfeld has not—and cannot—show that "the facts necessary to prove"

3   Byton's DTSA claim and *any* of his state law Counterclaims "substantially overlap." *Hart,*

4   869 F. Supp. at 776; *Mattel,* 705 F.3d at 1110-11 ("MGA's claim of trade-secret

5   misappropriation was not logically related to Mattel's counterclaim"). The Court does not

6   have supplemental jurisdiction over Breitfeld's state law claims because they are "separately

7   maintainable and determinable without any reference to the facts alleged or contentions

8   stated" in Byton's DTSA claim (as Breitfeld also admits in his First Affirmative Defense).

9   *See Hales,* 500 F.2d at 847-48; *Jewel Systems*, 2014 WL 4704815 at *5-6. Moreover, the

10  Court does not have supplemental jurisdiction over the Counterclaims since their only link to

11  the DTSA claim is the "parties' previous employment relationship." *Grupo Salinas,* 2017

12  WL 2972339 at *3; *Lou,* 2013 WL 3989425 at *2-3; *Lyon,* 45 F.3d at 762-63.

13              **c.    There Is No "Loose Factual Connection" Here.**

14      Breitfeld cites to three inapposite decisions in support of the proposition that "[a]

15  court should exercise supplemental jurisdiction over counterclaims where there is a 'loose

16  factual connection' between them." *See* Opp. at 10:8-19. But even Breitfeld's parenthetical

17  descriptions of those cases reveal that they involved *factually interdependent* claims. *Id.*

18      Here, there is no factual interdependence between Breitfeld's Counterclaims and

19  Byton's DTSA claim other than the parties' employment relationship. As the Ninth Circuit

20  has explained with respect to permissive counterclaims, "[n]onfederal claims are part of the

21  same 'case' as federal claims when they derive from a *common nucleus of operative fact* and

22  are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding."

23  *Kuba v. 1–A Agric. Ass'n,* 387 F.3d 850, 855 (9th Cir. 2004) (emphasis added) (citations

24  omitted). With that in mind, Ninth Circuit courts have denied supplemental jurisdiction over

25  state law counterclaims whose key factual link to any federal claim is merely the parties'

26  employment relationship:

27          The common nucleus of operative fact is absent – *there is not even a loose*

28  ───────────────
[8] The Ohio and Illinois district court decisions cited by Breitfeld on page 7:8-15 of his
Opposition also miss the mark. Neither of them even involved a Section 1367 analysis.

> *factual connection* between the allegation that Ma Labs did not fully compensate its workers for their labor and the assertion that plaintiff Lou took unspecified proprietary information in violation of the company's confidentiality agreement. *The mere fact that the parties were once linked by an employer-employee relationship is insufficient* when the claims would stir such different issues and rely on such divergent facts and evidence.

*Lou,* 2013 WL 3989425 at \*3. *See also Grupo Salinas,* 2017 WL 2972339 at \*3 (denying supplemental jurisdiction because "[t]he key facts for Grupo Salinas's claims involve JR Salinas's use of the trademarks; the key facts for Leticia's and Juan's counterclaims involve the details of the parties' employment relationship."). In such circumstances, "it would be charitable to characterize the relationship of the federal and state claims as involving even a 'loose' nexus. Thus, Article III bars federal jurisdiction." *Lyon,* 45 F.3d at 763 (listing the "variety of federal statutory settings" and myriad cases where "[d]istrict courts have resisted expanding supplemental jurisdiction based merely on employment contract").

Those authorities are directly on point here. There is not a sufficient connection between Byton's trade-secret claim and Breitfeld's employment claims to justify supplemental jurisdiction under Section 1367(a). Since supplemental jurisdiction is lacking under Section 1367(a), the Court need not read any further. *See Grupo Salinas,* 2017 WL 2972339 at \*4, fn. 1 ("Because the Court finds that it lacks supplemental jurisdiction, it need not address the parties' arguments as to whether it should decline supplemental jurisdiction").

### C.  Supplemental Jurisdiction Is Also Unavailable Under Section 1367(c).

The Counterclaims may separately be dismissed under Section 1367(c), however, as detailed in Byton's Motion at pages 10-12, despite Breitfeld's claims to the contrary.

First, Breitfeld ignores the *Hartman* and *Wirtz* decisions which illustrate how multiple state law claims arising from an employment contract would substantially predominate over a single narrow federal claim under Section 1367(c)(2) (*see supra* § II.A). Breitfeld's seven (7) state law Counterclaims for alleged unpaid compensation under the Employment Contract would not only bring the total number of state law claims in the case to fourteen (14), they would substantially predominate over Byton's sole federal claim for trade secret misappropriation, transforming the litigation into a wage-hour case based on the

-14-

interpretation of an employment contract governed by Hong Kong law. *Id.* Breitfeld otherwise cites to a single case (*Picard v. Bay Area Reg'l Transit Dist.,* 823 F. Supp. 1519, 1527 (N.D. Cal. 1993)) in which plaintiffs' federal constitutional claims were "based on the *same conduct* [alleged pre-condemnation delay by a government authority] that forms the basis of their state law taking claim." *Id.* (emphasis added). Here, since the Counterclaims are based on different "conduct" than trade secret misappropriation, *Picard* is inapposite.

Second, Breitfeld has no response to Byton's argument about the complications intro-duced by requiring this Court and jury to interpret, enforce and/or apply Hong Kong law. *See* Barter Decl. Ex. B; Mot. at 11:15-12:1; Opposition at 12:5-6 ("[T]o the extent Hong Kong law governs . . .") Breitfeld claims that the court in *Willcox v. Lloyds TSB Bank, PLC,* 2016 WL 593458, at *6 (D. Haw. Feb. 11, 2016) held that "Hong Kong law . . . is virtually identical to California law and not complex" (Opp. at 12:7), but the *Willcox* court said no such thing. It merely noted that Hong Kong law "follows English common law" with regard to a "breach of an implied term" claim. *Id.* at *14. That hardly means the Hong Kong law applicable to Breitfeld's employment claims is the same as California's—certainly Breitfeld has not shown that.

Third, Breitfeld states that "discovery has begun" (Opp. at 13:3) but fails to mention that he and Byton have not exchanged any discovery requests. Thus, the case is still "in the early stage of litigation," such that declining jurisdiction is "particularly appropriate." *Raiser v. City of Murrieta*, 2018 WL 5961301, at *10 (C.D. Cal. 2018).

Finally, Breitfeld tries to back out of the *mandatory* Hong Kong forum selection clause and the *mandatory* Hong Kong choice of law provision that *he freely signed*. Barter Decl. Ex. B. As explained below, every one of his arguments for doing so fails. But for purposes of subject matter jurisdiction, the bottom line is that each Counterclaim arises from the parties' "employment" relationship, which Breitfeld admitted "at all relevant times . . . was governed by the Employment Contract." Counterclaims ¶ 85; *see id.* at ¶¶ 5, 13. Since each Counterclaim arises under, relies upon, and is admittedly "governed by the Employment Contract," it follows that each Counterclaim must be brought in Hong Kong,

-15-

1    just as the parties intended when they signed the Employment Contract, and just as Breitfeld

2    acknowledged in his April 15, 2019 letter. *See* Barter Decl. Exs. B, C.

## III.   BREITFELD FAILED TO MEET HIS HEAVY BURDEN TO PROVE THE *MANDATORY* FORUM SELECTION CLAUSE IS UNENFORCEABLE

4           Breitfeld's primary allegation in his Counterclaims as to why his claims should *not*

5    be heard in Hong Kong *under the mandatory Hong Kong forum selection clause in the*

6    *Employment Contract* had been that "Counterdefendants [Byton NA and Byton Limited]

7    have waived any . . . choice of forum provisions by bringing suit in this forum . . ." *See*

8    Counterclaims at ¶ 40; *id.* at ¶¶ 13, 38. Now realizing that position is meritless, Breitfeld

9    relegates it in favor of a number of other newly minted arguments. Each fails.

### A.   Breitfeld—Not Byton—Bears The Heavy Burden Of Proof To Show That The Mandatory Forum Selection Clause Should Not Be Enforced.

12          To start, Breitfeld has the law wrong. He says Byton "bears the burden of proving that

13   Hong Kong is an adequate alternative forum to California" (Opp. at 13:20-21). But because

14   the *mandatory* forum selection clause is in his Employment Contract (*see* Barter Decl. Ex. B

15   at § 9), it is *Breitfeld* who "must bear the burden of showing why the [C]ourt should not

16   transfer the case to the forum to which the parties agreed." *See Yei A. Sun v. Advanced China*

17   *Healthcare, Inc.,* 901 F.3d 1081, 1088 (9th Cir. 2018) (citation omitted). To meet that burden,

18   he must make "a strong showing that: (1) the clause is invalid due to 'fraud or overreaching,'

19   (2) 'enforcement would contravene a strong public policy of the forum in which suit is

20   brought, whether declared by statute or by judicial decision,' or (3) 'trial in the contractual

21   forum will be so gravely difficult and inconvenient that [the litigant] will for all practical

22   purposes be deprived of his day in court.' " *Id.* (citation omitted). Indeed, *" '[o]nly under*

23   *extraordinary circumstances unrelated to the convenience of the parties' should a motion to*

24   *enforce a forum-selection clause be denied." Id.* (emphasis added) (citation and internal

25   quotations omitted). Breitfeld has failed to demonstrate any "extraordinary circumstances" to

26   set aside the forum selection clause in an agreement that he otherwise seeks to enforce. *Id.*[9]

---

[9] *See also S & J Rentals, Inc. v. Hilti, Inc.,* 294 F. Supp. 3d 978, 990 (E.D. Cal. 2018)
("[R]efraining from enforcing the forum selection and choice of law clauses undercuts
the fundamental principle of freedom of contract").

-16-

**B.     Breitfeld Fails To Demonstrate "Gravely Difficult, Inconvenient, And Dangerous" Circumstances In Hong Kong.**

Breitfeld seeks to exploit recent news in Hong Kong in an attempt to paint a dire picture of the Hong Kong legal system. The National Security Law recently introduced by China (by means of a variation of the Basic Law in Hong Kong) makes *treason, secession, subversion, and sedition* unlawful in Hong Kong. While that law may be unpopular in certain sections of Hong Kong's society, it does not—and cannot—possibly be considered to impact the status of claims for nonpayment under an employment agreement in the Hong Kong Labour Tribunal.

As Breitfeld recognized in his April 15, 2019 letter, his claims "for entitlements owed to him under his Employment Agreement" can only be brought in "the Hong Kong Labour Tribunal." *See* Barter Decl. Ex. C. This Tribunal only has jurisdiction to consider specific labor law claims, including "[a] claim for a sum of money" arising from an employment contract. *See* Vitruk Decl. Ex. A at 1-2; S-2. Not only, therefore, are Breitfeld's claims clearly *not* of a type that could fall within the new National Security Law, but the court that would consider Breitfeld's claims has no jurisdiction to hear claims arising from the National Security Law. In other words, there is no intersection whatsoever between the Labour Tribunal and other Hong Kong courts, or between Breitfeld's claims under the Employment Contract and the National Security Law.

Breitfeld nonetheless claims that "the current volatile environment in Hong Kong would jeopardize [his] ability to have his claims efficiently and fairly adjudicated" (Opp. at 14:3-4), and that he would face unspecified "procedural challenges" in Hong Kong (*id.* at 14:13). But he offers zero legal or factual support for his sensational claims. Breitfeld cannot satisfy his burden of showing "extraordinary circumstances" through mere conjecture. *Sun,* 901 F.3d at 1088.

Breitfeld also speculates that "[t]he distinction between the PRC and Hong Kong legal systems has blurred under the current National Security law, and Hong Kong now is not the same forum the parties agreed to . . ." (*id.* at 14:6-8). Again, Breitfeld puts forward no evidence for this extraordinary statement. It is pure conjecture and must be insufficient to satisfy Breitfeld's burden. *Sun*, 901 F.3d at 1088. Breitfeld also fails to show how any

-17-

"blurr[ing]" of national security laws may impact his claims in the Labour Tribunal. In any case (and most compellingly), it is extraordinary that Breitfeld should now attempt to make this point given that his original Employment Contract was governed by PRC law and it was only after the subsequent variation that the parties agreed to change the mandatory forum to that of Hong Kong. Barter Decl. Ex. A.

Finally, Breitfeld pretends that Hong Kong is not safe (Opp. at 14:1), including because of COVID-19 (*id.* at 14:16-17). Again, he provides zero evidentiary support—which isn't surprising given that published reports make clear that California has also had its share of civil unrest of late and that Hong Kong has better controlled its COVID-19 outbreak. Indeed, Breitfeld resides in the most infected county (Los Angeles County), in the most infected state (California), in the most infected country (U.S.), in the entire world. *See* Breitfeld Decl. ¶ 2. It is also well known that crime rates in Hong Kong are much lower than in Los Angeles.[10]

Breitfeld also cites to *McDonnell Douglas Corp. v. Islamic Republic of Iran,* 758 F.2d 341, 346 (8th Cir. 1985), in an attempt to analogize Iran just after the Islamic Revolution to present-day Hong Kong. The analogy is ludicrous. The Islamic Revolution of 1979 was followed by "*the recent escalation of the war between Iran and Iraq, the bombing of Tehran by the Iraqi Air Force, Iraq's threat to shoot down all commercial planes over Iran, and the suspension of flights to Iran, by several commercial airlines,* which would make it gravely difficult, inconvenient and dangerous for McDonnell Douglas to litigate its dispute with Iran in the Islamic Court of the First Instance in Tehran." *Id.* at 346 (emphasis added). These findings were made on a robust evidentiary record. *Id.* at 345-46.

Nothing like that exists here. Hong Kong remains one of the safest places in the world, and Breitfeld fails to meet his burden to prove that bringing his claims in the Labour Tribunal—as he agreed to do—would be "gravely difficult, inconvenient and dangerous." *Id.* at 346.[11]

---

[10] Byton Limited would have a stronger argument that litigating in the U.S. would be unsafe in light of the civil unrest, shootings, and astronomical COVID-19 infection rate.

[11] To the contrary, federal courts have routinely found Hong Kong to be a suitable alternative forum. *See Democracy Council of California v. WRN Ltd., PLC,* 2010 WL

Since Breitfeld fails to meet this burden, any private or public interest factors are essentially irrelevant. *Sun,* 901 F.3d at 1088 ("While a court may consider factors relating to the *public* interest . . . those factors will rarely defeat a transfer") (emphasis added); *Democracy Council of California,* 2010 WL 3834035 *6. But if the Court were to reach them, it should give substantial weight to Breitfeld's own written acknowledgment that his employment claims belong in the Hong Kong Labour Tribunal. *See* Barter Decl. Ex. C.

### C.   Breitfeld Admitted That Each of His Counterclaims Is "Based Upon," "Arise[s] Out Of," And Is "Governed By" The Employment Contract.

Breitfeld also argues that his "state statutory counterclaims" do not arise out of his Employment Contract and are thus not subject to the forum-selection clause (Opp. at 15:4-5). But Breitfeld prefaced his Counterclaims by stating: "Breitfeld now brings these counterclaims to obtain the compensation to which he is entitled pursuant to the Employment Contract." *Id.* ¶ 5. His Seventh Counterclaim for Violation of California Labor Code § 2924, admits that "[a]t all relevant times, Breitfeld's employment with [Byton Limited and Byton NA] was governed by the Employment Contract." Counterclaims at ¶ 85. And he admitted that "Breitfeld's counterclaims are [ ] *based upon and arise out of* the Employment Contract*." Id.* ¶ 13 (emphasis added). Thus, by Breitfeld's own admissions, each Counterclaim "arises under" his Employment Contract and is therefore subject to the Hong Kong forum selection clause.

The case cited by Breitfeld—*TK Prod., LLC v. Buckley,* 2016 WL 7013470, at *1 (D. Or. 2016) proves the point. The *Buckley* court recognized that a broad forum-selection clause like the one here "may apply regardless of whether the claim 'require[s] that the contract at issue be interpreted.'" *Id.* (citing to *Sun v. Kao,* 170 F. Supp. 3d 1321, 1324 (W.D. Wash. 2016)). But even if the forum-selection clause in the Employment Contract were "narrow," it would still cover all of the Counterclaims because each of them "relates in some way to rights and duties enumerated in the … contract." *Id.* (citing to *Manetti–Farrow, Inc. v. Gucci*

---

3834035 *6 (C.D. Cal. 2010) ("Without presenting any viable argument as to the existence of fraud or undue influence, the inability to have a fair 'day in court' in Hong Kong, or a compelling policy for keeping this case in California, DCC is bound by the Agreement and must litigate this case in Hong Kong"); *see also Capri Trading Corp. v. Bank Bumiputra Malaysia Berhad,* 812 F.Supp. 1041, 1044 (N.D. Cal. 1993).

-19-

*America, Inc.,* 858 F.2d 509, 513 (9th Cir. 1988)). Indeed, each Counterclaim is based on the theory that, under the terms of the Employment Contract, Breitfeld was allegedly terminated by Byton Limited and not properly paid. Counterclaims ¶¶ 42-89.[12]

Breitfeld also argues that "Byton must establish that Hong Kong is able to provide Breitfeld with 'a sufficient remedy,'" citing to *Gutierrez v. Advanced Medical Optics, Inc.,* 640 F.3d 1025, 1029 (9th Cir. 2011). That is wrong. Unlike here, *Gutierrez* did not involve a mandatory forum-selection clause. *Cf. Sun*, 901 F.3d at 1088 (party resisting mandatory forum selection clause bears the burden). Moreover, it is irrelevant that a foreign court may apply substantive law less favorable to plaintiff unless "the remedy provided . . . is so clearly inadequate or unsatisfactory that it is *no* remedy at all." *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254 (1981) (fact that Scotland does not recognize products liability claim did not constitute "no remedy" because negligence recovery possible); *Ranza v. Nike, Inc.,* 793 F3d 1059, 1078 (9th Cir. 2015) (holding that Netherlands was an adequate forum since "some remedy" provided, although it was less generous than under U.S. law).

Here, Hong Kong provides a more-than-adequate remedy for Breitfeld because this is a classic action for "a sum of money" in the Hong Kong Labour Tribunal. *See* Vitruk Decl. Ex. A at 1-2; S-2. Breitfeld recognized as much when he wrote to Byton that, "by application of Hong Kong laws," he intended to "bring a claim in the Hong Kong Labour Tribunal for his entitlements owed to him under his Employment Agreement." Barter Decl. Ex. C. In that letter, he even itemized the alleged "entitlements" in the same way that he now does in his Counterclaims at ¶ 35. *Id.* That Hong Kong law may not recognize California statutory causes of action or remedies is irrelevant to this analysis. *See Ranza,* 793 F3d at 1078. The decision cited by Breitfeld—*Graduation Solutions LLC v. Luya Enterprise Inc., et al.,* CV 19-1382-DMG (JPRx) at pp. 6-7 (C.D. Cal. 2020)—is distinguishable because, as this Court noted, the plaintiff "would be precluded from pleading trade secret misappropriation in China, since the alleged confidentiality agreement and alleged contents of the trade secrets

---

[12] *See also LaCross v. Knight Transportation, Inc.,* 95 F. Supp. 3d 1199, 1207 (C.D. Cal. 2015) (California Labor Code claims within scope of forum selection clause).

were communicated orally." *Id.* In other words, the plaintiff had "no remedy at all." *Cf.*

*Piper*, 454 U.S. at 254. Here that is not the case.

Breitfeld similarly argues that "the Labor Code makes it illegal to require employees who reside and work primarily in California to agree to a provision that requires them to settle labor disputes outside of California." *See* Opp. at 13:26. This statement is irrelevant because (i) Breitfeld did not work for Byton Limited in California (*id.* at ¶¶ 36-39); (ii) Breitfeld's Counterclaims are governed by Hong Kong law under the Employment Contract, not the California Labor Code (Barter Decl. Ex. B at ¶ 9); and (iii) Breitfeld may pursue a remedy through the Hong Kong Labour Tribunal, as noted.[13]

### D.  Breitfeld Cannot Reasonably Argue That Byton NA Is Not Covered By The Forum-Selection Clause.

As the Opposition admits at 25:13-14, "Byton NA attempts to [ ] enforce the [Employment] Contract's forum selection clause." Indeed, a ruling on Byton's motion to dismiss for *forum non conveniens* should cover Byton NA for at least two reasons.[14] First, since every Counterclaim admittedly arises out of the Employment Contract (*see id.* at ¶¶ 5, 13, 85), as stated in Byton's motion, every Counterclaim (including each one asserted against Byton NA) is subject to the mandatory Hong Kong forum selection clause.

Second, Breitfeld goes back and forth in his Counterclaims as to whether Byton NA is an agent of Byton Limited or not (Counterclaims at ¶ 9—alleging that the entities were "agent[s]" of one other but that they also "act[ed] individually"); pleads zero facts regarding "alter ego"; and separates Byton NA from Byton Limited only when it suits him (*id.* at ¶¶ 8, 12, 28-29). In his Opposition, however, Breitfeld takes a definitive position, claiming that Byton is both an "alter ego" and an "agent" of Byton Limited, and is "liable for breach of the

---

[13] *See also S & J Rentals,* 294 F. Supp. 3d at 990 (distinguishing *Van Slyke* decision cited by Breitfeld). And even if California has a greater interest in deciding the Counterclaims, that is "insufficient" to meet Breitfeld's burden to show "extraordinary circumstances." *Bromlow v. D & M Carriers, LLC,* 438 F. Supp. 3d 1021, 1031 (N.D. Cal. 2020).

[14] Separately, because Byton NA was not a signatory to the Employment Contract and is not alleged to have done anything wrong, it should be dismissed without leave to amend on those grounds. *See infra* § V. It should also be dismissed without leave to amend for lack of supplemental jurisdiction. *See supra* § II.

[Employment] Contract." *See* Opp. at 25:9-10; *see also* Breitfeld Decl. ¶¶ 8-11.[15] Because of those definitive (albeit incorrect) claims in his Opposition, and in his declaration under oath, Breitfeld cannot now reverse course and pretend Byton NA and Byton Limited are not one and the same. *See Comer v. Micor, Inc*., 436 F.3d 1098, 1101 (9th Cir. 2006) ("Equitable estoppel 'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes'") (citation omitted); *Turner v. Thorworks Indus., Inc.,* 2006 WL 829142, at *4 (E.D. Cal. Mar. 28, 2006) (subjecting nonsignatory to forum selection clause on equitable estoppel grounds). Indeed, the basis for equitable estoppel could not be any clearer. *Id.* Thus, the Court should dismiss each Counterclaim on *forum non conveniens* grounds.

### E.   Byton Waived Nothing By Bringing Suit Against Breitfeld And Iconiq In California For Their Theft of Byton Trade Secrets In California.

"Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." *United States v. King Features Entm't, Inc.,* 843 F.2d 394, 399 (9th Cir. 1988). Breitfeld does not dispute that Byton Limited and Byton NA *had to sue* Breitfeld and Iconiq, both California residents, *in California*, because they misappropriated their trade secrets and wrongfully solicited their former employees *in California*. Compl. ¶ 8. Byton did not have the right to bring suit in Hong Kong. *Id.*

Moreover, Byton Limited and Byton did not bring a suit arising from the Employment Contract. [ ]. Breitfeld fails to demonstrate otherwise. He cites to two totally irrelevant decisions (*see* Opp. at 17:6-11). *N. Am. Specialty Ins. Co. v. Debis Fin. Servs. Inc.,* 513 F.3d 466, 470 (5th Cir. 2007) concerned whether an insurer waived a defense of unseaworthiness under Louisiana law, and did not involve a forum selection clause. *Electro-Mech. Corp. v. Riter Eng'g Co.,* 2011 WL 2118704, at *3 (D. Utah 2011) held that, under Virginia law, a conversion claim arose from a sales representative agreement because *plaintiff had overpaid defendant under that agreement, and then sought to recover the excess funds by way of its*

---

[15] As noted, Breitfeld has also pled that "[a]t all relevant times, Breitfeld's employment with Counterdefendants [Byton Limited and Byton NA] was governed by the Employment Contract" (Counterclaims ¶ 85), and that Byton NA "waived" the "choice of law" and "choice of forum provisions" (*id.* at 40).

*conversion claim.* Such circumstances are absent here. Byton NA and Byton Limited's claims do not arise from the Employment Contract.

## IV.   BREITFELD HAS FAILED TO MEET HIS BURDEN TO SHOW THAT THIS COURT HAS PERSONAL JURISDICTION OVER BYTON LIMITED

Breitfeld's primary theory as to why this Court has personal jurisdiction over Byton Limited is that it is indistinguishable from Byton NA, its California subsidiary. *See* Opp. at 19:16-20:23. He claims that Byton Limited and Byton NA are agents and/or alter egos of one another. *Id.* Breitfeld bears the burden to prove that theory. *In re W. States Wholesale Natural Gas Antitrust Litig.,* 715 F.3d 716, 741 (9th Cir. 2013). He must "come forward with facts" supporting personal jurisdiction. *Amba Mktg. Sys., Inc. v. Jobar Int'l., Inc.,* 551 F.2d 784, 787 (9th Cir. 1977). "[F]ormulaic assertions" cannot suffice to establish alter ego liability. *See, e.g., Fighter's Market, Inc. v. Champion Courage LLC,* 207 F.Supp.3d 1145, 1151 (S.D. Cal. 2016). And to prove agency, Breitfeld must demonstrate that Byton Limited "exercises such a degree of control over its subsidiary corporation that the subsidiary can legitimately be described as *only a means through which the parent acts, or nothing more than an incorporated department of the parent . . .*" *See Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 541–42 (2000) (emphasis added).

Breitfeld fails to meet those burdens. Instead of requesting jurisdictional discovery or submitting any evidence, he relies on a self-serving declaration that asserts formulaic, conclusory, and baseless statements such as, "Byton NA had no independent governance" and "Byton NA had no independent management structure." *See* Breitfeld Decl. ¶¶ 8, 9. But notwithstanding his evidentiary objections to the Barter Declaration, Breitfeld fails to disprove that (i) Byton Limited and Byton NA had different business models and maintained separate financial books and records, and bank accounts (Barter Decl. ¶¶ 7, 8, 12); (ii) Byton Limited did not exercise any *day-to-day* control over the business decisions or activities of Byton NA (*id.* ¶¶ 16-19); and (iii) only a single director overlapped between them (*id.* ¶ 19). Byton Limited and Byton NA are not and were not alter egos or agents of one another.

Breitfeld's attempt to bootstrap Byton Limited to *Byton NA's* contacts in California (Opp. at 20:24-22:24) should also be rejected (*see Holland Am. Line Inc. v. Wärtsilä N. Am.,*

-23-

*Inc.*, 485 F.3d 450, 459 (9th Cir. 2007)), especially since Breitfeld served *Byton NA's* interests in California. *See* Barter Decl. ¶¶ 36-39, Exs. B, D; *see also* Breitfeld Decl. ¶ 7.

## V.   BREITFELD'S OPPOSITION CONFIRMS THAT HE IS UNABLE TO STATE ANY CLAIM AGAINST BYTON NA

In opposition to Byton's Rule 12(b)(6) motion to dismiss for failure to state a claim, Breitfeld does not dispute that Byton NA was not a signatory to the Employment Contract. *See* Opp. at 25:2-14. Since each of the Counterclaims admittedly "arise[s] out of the Employment Contract" (Counterclaims ¶ 13; *see id.* at ¶¶ 5, 10, 11, 85), Byton NA should be dismissed from the Counterclaims on that ground alone.

Breitfeld's opposition also confirms that he does not allege any wrongdoing against Byton NA. He *argues* that "Byton NA is liable *for failure to compensate Breitfeld* for his work out of Byton NA's offices as Byton CEO and director" (Opp. at 25:2-3) (emphasis added), but does not *plead* that Byton NA failed to compensate him. He only pleads that *Byton Limited* failed to compensate him. Counterclaims ¶¶ 35-36 (pp. 25-26), and for good reason. As shown by the Secondment Letter attached as Ex. C to the Counterclaims, when Breitfeld was seconded to Byton NA to serve as its CEO, he agreed to "remain employed by Byton Limited . . . during the secondment and [his] current terms of employment shall remain unchanged, except as set out in this [secondment] letter." *Id.*, Ex. C. The secondment letter did not alter the terms of the Employment Contract *or Breitfeld's compensation structure. Id.* Even Breitfeld's judicially noticeable declaration at ¶ 11 (filed in support of his entire opposition) confirms that *Byton Limited* was responsible for his compensation, not Byton NA.

Finally, Breitfeld has failed to plead any *facts* showing that Byton NA is Byton Limited's "alter ego" or "agent" (*see* Opp. at 25:9-10). He cites to a ruling on a motion for summary judgment that analyzed a robust evidentiary record (*MGA Entm't, Inc. v. Hartford Ins. Grp.,* 2012 WL 12894053 (C.D. Cal. Jan. 27, 2012)). Breitfeld has merely alleged that "each and every Counterdefendant was the agent . . . of each other" and yet also "act[ed] individually," and pled no facts regarding "alter ego." *See* Counterclaims ¶ 9. Courts routinely dismiss claims based on such conclusory allegations. *See Gerritsen v. Warner Bros. Entm't Inc.,* 116 F. Supp. 3d 1104, 1136 (C.D. Cal. 2015).

-24-

## VI.   EACH OF BREITFELD'S COUNTERCLAIMS MUST BE DISMISSED BECAUSE THEY ARE GOVERNED BY HONG KONG LAW

Breitfeld does not—and cannot—dispute that *each* of his state law Counterclaims "arise[s] out of the Employment Contract" (Counterclaims ¶ 13; *see id.* at ¶¶ 5, 10, 11, 85). Since the Employment Contract contains a mandatory Hong Kong choice of law provision, it follows that each Counterclaim must be brought under Hong Kong law. *See Nedlloyd Lines B.V. v. Superior Court,* 3 Cal.4th 459, 470-71 (1992) (enforcing Hong Kong choice of law provision to each cause of action "arising from or related to that agreement").

Only "[a]bsent a strong showing that it should be set aside, the parties' choice of law provision, as part of a 'freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power ... should be given full effect.'" *Trans-Tec Asia v. M/V Harmony Container,* 518 F.3d 1120, 1126 (9th Cir. 2008). Breitfeld fails to make any "showing," much less a "strong" one, that the mandatory Hong Kong choice of law provision in his Employment Contract should be set aside. Courts in the Ninth Circuit "have generally agreed that the choice-of-law analysis is irrelevant to determining if the enforcement of a forum selection clause contravenes a strong public policy." *Rowen v. Soundview Commc'ns, Inc.,* 2015 WL 899294, at *4 (N.D. Cal. Mar. 2, 2015).[16] Even in the *Willcox,* 2016 WL 593458 decision cited at Opp. 12:7-8, the court had dismissed plaintiff's contract-related California state law claims precisely because of a Hong Kong forum selection clause. *See* 2016 WL 593458 at *1.

## VII.   CONCLUSION

Based on the foregoing and the argument made in Byton's original motion papers, and since amendment would be futile, Byton Limited and Byton NA request that the Court grant each of their motions to dismiss Breitfeld's Counterclaims *with prejudice.*

Dated:  September 4, 2020                    MAYER BROWN LLP

By: /s/ John Nadolenco
    John Nadolenco
Attorneys for Plaintiffs Byton North America Corporation and Byton Limited

---

[16] The *Van Slyke* decision (concerning narrow issue of class action waivers) and *Application Group* decision (concerning narrow issue of a covenant not to compete) to which he cites are factually and legally inapposite. *See* Opp. at 24:21-24.